# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:24-CV-21226-RAR

**EDWIN A. HERNANDEZ and EGLA CORP.**,

*Plaintiffs,*

v.

**STINGRAY GROUP INC. f/k/a STINGRAY DIGITAL GROUP, INC., STINGRAY MUSIC USA, INC., MOOD MEDIA LLC f/k/a MOOD MEDIA CORPORATION, AT&T ENTERPRISES, LLC f/k/a AT&T CORP., MILLICOM INTERNATIONAL SERVICES, LLC, and BLUE STREAM COMMUNICATIONS dba BLUE STREAM FIBER**,

*Defendants.*
_____/

**JURY TRIAL DEMANDED**

## PLAINTIFFS' REPLY IN FURTHER SUPPORT OF RENEWED MOTION FOR PRELIMINARY INJUNCTION

**TABLE OF CONTENTS**

**PAGE**

I. INTRODUCTION ...............................................................................................................1

II. THE COURT SHOULD GRANT PLAINTIFFS A PRELIMINARY
INJUNCTION TO PREVENT FURTHER HARM TO THEIR BUSINESS ......................2

    A. Plaintiffs are Likely to Succeed on the Merits of Their Claims Against
Defendants ..............................................................................................................2

    B. Absent an Injunction, Plaintiffs Will Suffer Irreparable Harm...............................6

    C. The Balance of Harms Favors Plaintiffs.................................................................8

    D. An Injunction is in the Public Interest ....................................................................8

    E. Dr. Hernandez has Standing ...................................................................................9

III. CONCLUSION..................................................................................................................10

i

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abbott Laboratories v. Diamedix Corp.*,
   47 F. 3d 1128 (Fed. Cir. 1995) ................................................................................................10

*Alfred E. Mann Found. for SCI. v. Cochlear Corp.*,
   604 F. 3d 1354 (Fed. Cir. 2010) ...........................................................................................9, 10

*Aspex Eyewear, Inc. v. Miracle Optics, Inc.*,
   434 F.3d 1336 (Fed. Cir. 2006) ............................................................................................9, 10

*Carroll v. TheStreet.com, Inc.*,
   No. 11-CV-81173, 2014 WL 5474061 (S.D. Fla. July 10, 2014) ..............................................5

*Fin-S Tech, LLC v. Surf Hardware Int'l-USA, Inc.*,
   No. 13-CV-80645, 2014 WL 12461349 (S.D. Fla. Jan. 7, 2014) ..............................................7

*Garcia v. Dep't of Bus. & Pro. Regul., Div. of Real Est.*,
   988 So. 2d 1199 (Fla. Dist. Ct. App. 2008) ...............................................................................5

*High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*,
   49 F.3d 1551 (Fed. Cir. 1995) ....................................................................................................7

*La Potencia, LLC v. Chandler*,
   Case No. 22-cv-80417, 2024 WL 1908628 (S.D. Fla. Apr. 30, 2024) ...............................6, 7, 8

*Lance Holding Co. v. Ashe*,
   533 So. 2d 929 (Fla. 5th DCA 1988) .........................................................................................6

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
   572 U.S. 118 (2014) .................................................................................................................10

*Major League Baseball v. Morsani*,
   790 So. 2d 1071 (Fla. 2001) .......................................................................................................5

*Medimport S.R.L. v. Cabreja*,
   929 F. Supp. 2d 1302 (S.D. Fla. 2013) ....................................................................................10

*MOTDGD Ltd. v. Playwire, LLC*,
   No. 0:20-CV-60199-WPD, 2020 WL 5763464 (S.D. Fla. Aug. 26, 2020) .............................10

*R Palace Surfside, LLC v. Anamar Ventures, Inc.*,
   No. 23-CV-22884, 2023 WL 8476591 (S.D. Fla. Oct. 27, 2023) ..............................................9

*Safety-Kleen Sys., Inc. v. Hennkens*,
  301 F.3d 931 (8th Cir. 2002) ...................................................................................................7

**Statutes**

18 U.S.C. § 1836(d) .......................................................................................................................6

35 U.S.C. § 100(d) .........................................................................................................................9

35 U.S.C. § 261 .............................................................................................................................9

35 U.S.C. § 281 .............................................................................................................................9

35 U.S.C. § 282 .............................................................................................................................3

## I.  INTRODUCTION

Since Dr. Hernandez filed his original complaint as a *pro per* plaintiff, he and Plaintiff EGLA Corp. (collectively, "Plaintiffs") have diligently and persistently moved to obtain preliminary injunctive relief to stop Defendants Stingray Group Inc. f/k/a Stingray Digital Group, Inc., Stingray Music USA, Inc., and Mood Media LLC f/k/a Mood Media Corporation, AT&T Enterprises, LLC f/k/a AT&T Corp., Millicom International Services, LLC, Blue Stream Communications, LLC dba Blue Stream Fiber's (collectively, "Defendants") misuse of Plaintiffs' trade secrets and patented technology. Plaintiffs have demonstrated that the relevant factors for preliminary injunctive relief weigh in their favor: Plaintiffs are likely to succeed on the merits of their claims against Defendants; the balance of harms weighs in favor of granting an injunction; and an injunction is in the public interest. Ultimately, the Court should grant Plaintiffs a preliminary injunction against Defendants because Defendants' misappropriation of Plaintiffs' trade secrets, infringement of Plaintiffs' patents, and continuous breaches of the NDA will otherwise continue to cause irreparable injury to Plaintiffs' business interests.

Defendants' arguments against a preliminary injunction all fail. For example, Defendants' retort that their platform predates Plaintiffs' trade secrets and patents is unsupported. Defendants' attack on Plaintiffs' claim charts ignores detailed explanations of elements found in the infringing platform, including the use of rendered webpages and a video. Defendants' waiver argument is based on a fraudulent agreement that expressly excludes Plaintiffs' claims. Finally, Defendants' statute of limitations argument ignores that Plaintiffs' claims should be equitably tolled. Therefore, as described further below, the Court should grant Plaintiffs a preliminary injunction.

## II. THE COURT SHOULD GRANT PLAINTIFFS A PRELIMINARY INJUNCTION TO PREVENT FURTHER HARM TO THEIR BUSINESS

### A. Plaintiffs are Likely to Succeed on the Merits of Their Claims Against Defendants

#### i. Defendants Infringed Plaintiffs' Patents

Plaintiffs are likely to succeed on the merits of their patent infringement claims against Defendants. Plaintiffs' patent infringement claim charts ("Claim Charts") show how Defendants infringed the Asserted Patents. Dkt. 89 at 8; Dkt. 90 ¶ 16, Exs. M-O; Dkt. 82 ¶¶ 142-189.[1]

Defendants' arguments against infringement all fail. First, Defendants wrongly state that "there is no dispute that Stingray developed and commercialized its [accused] technology before Plaintiffs filed their initial provisional patent application on December 22, 2014." Dkt. 149 at 13 (citing Dkt. 82 ¶ 79). This is untrue. While Plaintiffs allege that "Judge Payne's order [discloses] that Stingray had two versions of their technology," including the accused OSE2 platform that was developed *after-Fall 2014*, in the Music Choice litigation Stingray's counsel stated that "[p]rior to March 2015, Stingray did not offer or provide any music video TV channels to MVPDs that are accused of infringing the patents-in-suit." Dkt. 82 ¶ 79; Dkt. 82-18 at MC-EGLA-000815. Thus, it remains unclear when the accused OSE2 was developed and put in use. Tellingly, Defendants did not provide an affidavit setting forth when accused OSE2 streaming platform was developed.

Second, Defendants incorrectly assert that Plaintiffs' Claim Charts do not identify how the accused UbiquiCAST OSE2 allegedly practices "temporal sequence of screen captures" that "illustrates a dynamic change of at least a portion of content over time." Dkt. 149 at 13-14. Defendants ignore the substantive explanation that the accused OSE2 server uses software "GalaxieStillPicGenerator" to capture screen images of rendered webpages, and the captured

---

[1] Unless otherwise indicated, the cited page numbers refer to the ECF page numbers.

2

screens are used to generate a video. Dkt. Nos. 82-25 at 5 (element 1[d]); Dkt. 90 ¶ 16, Exs. M-O. Defendants' argument that the Claim Chart for claim 1 of the '441 Patent does not "identify any 'video' in any alleged user interface" is similarly untrue. Dkt. 149 at 14. The Claim Chart refers to document MC-EGLA-000033, which explicitly identifies the use of a video in Stingray's system: "The Stingray Music Method transmits a data packet (*e.g.,* an HTML or XML file) comprising a **video image specification**…while the audio data…is being transmitted…" Dkt. 82-19 at 12. The still image shown in the chart is a video capture of one frame of the video.[2]

Third, Defendants' invalidity attack on the patents is baseless. Defendants' only address 3 claims of the '074 patent and 1 claim of the '441 patent, and ignore 21 additional claims in the '074 patent, and 38 claims of the '002 and '441 patents. Dkt. 82-24, 82-25 and 82-26; Dkt. 90 ¶ 16, Exs. M-O. Thus, the validity of 59 out of 63 claims is undisputed. *See* 35 U.S.C. § 282 ("Each claim of a patent…shall be presumed valid independently of the validity of other claims…").

Fourth, Defendants' prior art patent to Ludvig fails to disclose all elements of the claimed invention. For example, the '074 patent requires a request for at least one media stream, where the media stream includes a plurality of multimedia items. Dkt. 82-24 (element 1(a)). The use of more than one multimedia item is only applicable for web formats. For example, HTTP live Streaming or DASH, where one movie or video file is split into small segments or a plurality of multimedia items. Dkt. 82-1, col. 8, lines 13-17 ("The various multimedia items can be used 608 to assemble the media stream in a format corresponding with the request (e.g. HLS, HTTP/RTSP, RTSP stream).") In contrast, Ludvig uses a real-time MPEG feed for playback, not a web format. Dkt.

---

[2] Contrary to Defendants' assertion, the image in Exhibit C can be either a static image or a static video image. Dkt. 149 at 14. Plaintiffs also allege that the Customer Defendants (AT&T, Millicom, and Blue Stream) use the infringing platform, which is an infringement, and sufficiently alleges joint, indirect and willful infringement, which, in any event, need not be shown here to grant the instant motion. *See* Dkt. 162 at Section IV.D.

149, Ex. F, col. 2, lines 42-47 ("The iWGP does not require a Web browser for presentation by a receiving client. The program is interactive because along a stream of MPEG still images, or image pages,..."). Ludvig also does not "creat[e] a custom hypertext transfer markup language (HTML) user interface that includes video" for each of the media files, as claimed in the '441 patent because it uses only a MPEG format and does not operate on media files of any kind.[3] This alone establishes that Plaintiffs will succeed on the merits of their patent infringement claims.

### ii.     Defendants Misappropriated Plaintiffs' Trade Secrets

Plaintiffs are also likely to succeed on the merits of their trade secret misappropriation claims. Plaintiffs have identified trade secrets that were later patented and 35 trade secrets that have not been patented. Plaintiffs' Claim Charts show how Defendants misappropriated Plaintiffs' trade secrets before they were patented.

Defendants' arguments that Plaintiffs will not succeed on their misappropriation claims do not pass muster.  First, contrary to Defendants' mischaracterization, Plaintiffs do not "mere[ly] allege that Stingray took possession of Dr. Hernandez's servers back in 2014." Dkt. 149 at 9. Plaintiffs explain Defendants' use of Plaintiffs' trade secrets. Dkt. 89 at 8; Dkt. 90, Exs. M-O. By way of example, Dr. Hernandez explained that one of his trade secrets involves use of .PNG images as backgrounds in rendered video content. Dkt. 90, ¶ 18, Ex. Q. This methodology was not disclosed by any patent application or disclosure and is only found in Dr. Hernandez's source code and server implementation. *Id*. Stingray implemented a directory inside the Ubiquicast OSE2 server that stored backgrounds and used the .PNG images in accordance with Plaintiffs' trade secrets in the rendering and broadcasting of video streams to subscribers in a Cable TV or Satellite operator. *Id.* Defendants misconstrue the claimed trade secret—the method and code for rendering

---

[3] These non-limiting distinctions are among many that distinguish the claims of the patents.

of .PNG images on remote servers (not websites) that host the client and broadcast streams over a unicast or a multicast signal in a cable TV network—to contrive a failing argument that no protection exists because .PNG images "have been in common use since at least 1997." Dkt. 149 at 10.

Second, Plaintiffs' misappropriation claims are not time-barred. Plaintiffs' misappropriation claims under the DTSA and FUTSA and Plaintiffs' other state law claims are subject to equitable tolling based on Stingray and Mood Media's repeated denials, misrepresentations, and threats. *See Garcia v. Dep't of Bus. & Pro. Regul., Div. of Real Est.*, 988 So. 2d 1199, 1200 (Fla. Dist. Ct. App. 2008) ("… the doctrine of equitable tolling is applied when a party 'has been misled or lulled into inaction, has in some extraordinary way been prevented from asserting his rights, or has timely asserted his rights mistakenly in the wrong forum.'"); *Carroll v. TheStreet.com, Inc.*, No. 11-CV-81173, 2014 WL 5474061, at *6 (S.D. Fla. July 10, 2014) (same); *Major League Baseball v. Morsani*, 790 So. 2d 1071, 1077, fn. 11 (Fla. 2001) ("equitable tolling involves no misconduct on the part of the defendant, [and] may delay the running of the limitations period based on the plaintiff's blameless ignorance and the lack of prejudice to the defendant.").[4] Before Plaintiffs discovered the trouble tickets on www.trello.com, around April 2021, Dkt. 82 ¶¶ 91-93, Mood Media and Stingray repeatedly, unequivocally, and falsely represented to Plaintiffs that "none of your information has been jeopardized, as Stingray has not been made aware of any material information, or used your services in any way if not

---

[4] Defendants are also equitably estopped from raising a statute of limitations defense because Defendants' misled Dr. Hernandez to believe that his trade secrets had not been misappropriated. *See Morsani*, 790 So. 2d at 1076 ("The doctrine of estoppel is applicable in all cases where one, by word, act or conduct, willfully caused another to believe in the existence of a certain state of things, and thereby induces him to act on this belief injuriously to himself, or to alter his own previous condition to his injury."); *Carroll*, 2014 WL 5474061, at *8 (equitable estoppel "arises when "one party lulls another party into a disadvantageous legal position").

through MOOD," Dkt. 82-11 at 7, and that "STINGRAY DIGITAL has no knowledge of, nor involvement on, the specifics of MOOD MEDIA's content delivery technology - EGLA's or otherwise - nor has the intention of acquiring or learning such technology," Dkt. 82-13 at 3. Plaintiffs relied on these misrepresentations. The DTSA has a three-year statute of limitations. 18 U.S.C. § 1836(d). Given Defendants' misrepresentations, Plaintiffs' misappropriation claims were equitably tolled until Plaintiffs discovered the misappropriation, which was around April 20, 2021, just under three years before Plaintiffs brought this lawsuit. Therefore, Plaintiffs are likely to succeed on the merits of their trade secret misappropriation claims.

### iii. Mood Media Breached the NDA[5]

By disclosing Dr. Hernandez's trade secrets to Stingray, Mood Media breached its NDA with Plaintiffs. Dkt. 89 at 9-10; Dkt. 82 ¶ 194. Mood Media incorrectly contends that, as an affiliate of DMX, Plaintiffs' settlement agreement released Mood Media of all claims against it. Dkt. 149 at 17-18. The settlement agreement was precured by fraud and is thus voidable. Dkt. 82 ¶¶ 71, 73; *Lance Holding Co. v. Ashe*, 533 So. 2d 929 (Fla. 5th DCA 1988). Even if the release were applicable to Plaintiffs' other claims (it is not), the settlement agreement expressly excludes from EGLA's release "any claims, demands or causes of action which arise against DMX as a result of its breach…" Dkt. 149-2 at 2. Therefore, Plaintiffs are likely to succeed on the merits of their breach of contract claim.

### B.   Absent an Injunction, Plaintiffs Will Suffer Irreparable Harm

As set forth in their motion, Plaintiffs have lost business to Stingray in the past and will continue to lose business opportunities to Stingray if Stingray is allowed to continue misappropriating Plaintiffs' trade secrets and infringing Plaintiffs' patents. Dkt. 89 at 10-12; Dkt.

---

[5] *See also* Dkt. 162 at Section IV.C for further response to Defendants' waiver argument.

90 ¶¶ 3-5. In the Eleventh Circuit, "the loss of customers and goodwill is an irreparable injury." *La Potencia, LLC v. Chandler*, Case No. 22-cv-80417, 2024 WL 1908628, *20 (S.D. Fla. Apr. 30, 2024) (quoting *Ferrero v. Associated Materials Inc.*, 923 F.2d 1441, 1449 (11th Cir. 1991)). Here, as in *La Potencia*, 2024 WL 1908628, at *20, Defendants' have not indicated that they will cease misappropriating Plaintiffs' trade secrets or infringing Plaintiffs' patents, which supports a finding that the harm to Plaintiffs is irreparable.[6]

Second, under Plaintiffs' NDA with DMX, Stingray's predecessor-in-interest, DMX agreed that disclosing Plaintiffs' confidential information constituted irreparable harm. Dkt. 89 at 11-12. As DMX's successor-in-interest, Stingray should be bound by the NDA. See *Fin-S Tech, LLC v. Surf Hardware Int'l-USA, Inc.*, No. 13-CV-80645, 2014 WL 12461349, at *4 (S.D. Fla. Jan. 7, 2014) (holding NDA extended to signatory's successor in interest). Even if Stingray is not bound by the terms of the NDA (which it is), the NDA provides evidence of the irreparable harm that resulted from Defendants' disclosure of Plaintiffs' trade secrets.

Further, Defendants' patent portfolio is being licensed for ATSC 3.0 Smart TVs, and automobile devices, including CarPlay devices. Absent an injunction, the value of Plaintiffs' patent portfolio will continue to erode as Plaintiffs have to compete in ongoing negotiations with other unauthorized users of their technology.

Defendants are wrong that Plaintiffs' delay in bringing this lawsuit weighs against a finding

---

[6] Contrary to Defendants' assertion, Plaintiffs' offer to license Stingray does not undercut Plaintiffs' irreparable harm. Dkt. 149 at 21. Unlike the patent owner in *High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.,* 49 F.3d 1551, 1556 (Fed. Cir. 1995) who did not practice the patents or compete with the defendant, here Plaintiffs' business will incur the risk of lost sales or goodwill in the market, particularly competing against Stingray who is using Plaintiffs' patented technology and trade secrets. *Id.* ("Because [plaintiff] does not compete with [defendant] or have licensees who could be injured by competition from [defendant], [plaintiff] does not run the risk of losses of sales or goodwill in the market.").

of irreparable harm. Courts determine whether a delay is unreasonable on a case-by-case basis based on the specific facts of the given case. *See Safety-Kleen Sys., Inc. v. Hennkens,* 301 F.3d 931, 936 (8th Cir. 2002). Here, Plaintiffs brought their claims against Defendants upon discovery of those claims. Any delay in bringing this lawsuit was due to Defendants' actively preventing Plaintiffs from discovering Plaintiffs' claims against Defendants.[7] The Court should not give credence to Defendants' attempts to use their own bad acts to further preclude Plaintiffs from legitimately seeking relief.

### C.     The Balance of Harms Favors Plaintiffs

Should the Court deny Plaintiffs' motion for a preliminary injunction, Plaintiffs will face irreparable injury in the form of lost evidence, licensing revenue, goodwill, and misappropriated trade secrets. In contrast, Defendants are being asked only to cease using Plaintiffs' trade secrets and patented technology in the OSE2 platform. Defendants fail to identify that an injunction would cause them any specific harm or affect any of their customers. At most, Defendants speculate that "one or more of [them] are likely to suffer irreparable harm." Dkt. 149 at 23. Defendants also have substantial resources in comparison to Plaintiffs. Dkt. 90, Ex. C. Thus, the threatened injury to Plaintiffs outweighs any actual harm a narrowly tailored injunction might cause Defendants.

### D.     An Injunction is in the Public Interest

An injunction is in the public interest here because, contrary to Defendants' contention, Plaintiffs have lost business to Stingray in the past and likely will lose other business opportunities to Stingray in the absence of an injunction. Dkt. 90 ¶ 4. As this Court recently noted, a preliminary

---

[7] Plaintiffs also were unable to bring suit due to financial constraints, including fighting infringement of Plaintiffs' patent rights against other infringers, including Verizon, and in June of 2023, AT&T, and overcoming the adverse impact of COVID-19 on Plaintiffs' business. Dkt. 90 ¶ 6, Exs. D, E.

injunction affirmatively serves the public interest by protecting businesses from those who misappropriate their trade secrets or infringe their patents. *See La Potencia, LLC*, 2024 WL 1908628, at *21 (citing *Vas Aero Services, LLC v. Arroyo*, 860 F. Supp. 2d 1349, 1363 (S.D. Fla. 2012)). Therefore an injunction here is in the public interest.

Therefore, the factors supporting a preliminary injunction weigh in favor of Plaintiffs and the Court should grant Plaintiffs a preliminary injunction against Defendants as described in their motion and further explained herein.[8]

### E.     Dr. Hernandez has Standing[9]

Contrary to Defendants' assertion that the Court should deny Plaintiffs' motion because Dr. Hernandez lacked standing to bring this lawsuit, Dr. Hernandez did and Plaintiffs do have standing to assert the pleaded causes of action against Defendants. *See* Supp. Hernandez Decl. ¶ 4. Dr. Hernandez is the owner of the at-issue trade secrets and patents and EGLA is the exclusive licensee of the at-issue technology. *Id.*; Dkt. 82 at 20. Defendants have not shown any transfer of ownership of Dr. Hernandez's technology from Dr. Hernandez to EGLA Corp. Absent a transfer of ownership, Dr. Hernandez retained standing to sue in his name.[10] *Alfred E. Mann Found. for SCI. v. Cochlear Corp.*, 604 F. 3d 1354, 1361 (Fed. Cir. 2010); *Aspex Eyewear, Inc. v. Miracle Optics, Inc.*, 434 F.3d 1336, 1344 (Fed. Cir. 2006). Dr. Hernandez's ownership in his technology

---

[8] Contrary to Defendants' assertions, courts routinely grant injunctive relief without the posting of a bond. *See, e.g.*, *R Palace Surfside, LLC v. Anamar Ventures, Inc*., No. 23-CV-22884, 2023 WL 8476591, at *7 (S.D. Fla. Oct. 27, 2023) (holding that courts retain extensive discretion on the amount of a bond and may elect to require no bond at all).

[9] *See also* Plaintiffs' opposition to Defendants' motion to dismiss (Dkt. 162) at Section III for details on Dr. Hernandez's standing. Defendants raised many of the same issues in their motion.

[10] The patents-in-suit also list Dr. Hernandez as the "Applicant" and "Inventor," and do not reflect any assignment. Dkt. 82-1, 82-2 and 82-3. Consistent with this showing, the SAC alleges that "Dr. Hernandez is the owner of all rights, title and interests to the [Asserted] Patent[s], including the right to bring this suit for injunctive relief and damages." *Id*. at ¶¶ 144, 160, 176; *see also* 35 U.S.C. § 281 ("[a] patentee shall have remedy by civil action for infringement of his patent."); 35 U.S.C. § 100(d) ("patentee" is the patentee to whom the patent was issued and successors).

is affirmed by the fact that the license between Dr. Hernandez and EGLA was oral. Supp. Hernandez Decl. ¶ 4. Oral agreements are not valid assignments of intellectual property rights. *See Aspex Eyewear,* 434 F.3d at 1339 ("although 'a license may be written, verbal, or implied, if the license is to be considered a virtual assignment to assert standing, it must be in writing.'") (citing *Enzo APA & Son v. Geapag A.G.,* 134 F.3d 1090, 1093 (Fed. Cir. 1998); *see also* 35 U.S.C. § 261 (patent applications and patents "shall be assignable in law by an instrument in writing.").

As the owner of the patents-in-suit, Dr. Hernandez retains the right to sue for infringement, even if he exclusively licenses his patents. *See* Supp. Hernandez Decl. ¶ 4; *Alfred E. Mann Foun. for SCI.*, 604 F. 3d at 1360 (patent owner who retained ownership of patents-in-suit after granting exclusive license had standing to sue); *Aspex Eyewear,* 434 F.3d at 1344 (same); *Abbott Laboratories v. Diamedix Corp.,* 47 F. 3d 1128, 1332 (Fed. Cir. 1995) (patent owner retained rights sufficient to preclude the exclusive license agreement from being deemed a virtual assignment of the patents-in-suit). Further, determining ownership of disputed trade secrets does not implicate subject matter jurisdiction or a standing inquiry. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 n.4 (2014)).

Similarly, Defendants' argument that Plaintiffs do not have standing to bring claims against Defendants for breach of contract is moot. *See, e.g.*, *MOTDGD Ltd. v. Playwire, LLC*, No. 0:20-CV-60199-WPD, 2020 WL 5763464, at *2 (S.D. Fla. Aug. 26, 2020) (granting plaintiff leave to amend after dismissing breach of contract claim for lack of standing). For example, in *Medimport S.R.L. v. Cabreja*, 929 F. Supp. 2d 1302 (S.D. Fla. 2013), the magistrate judge found that the plaintiff did not have standing because he was not party to the at-issue contract and recommended that the court grant the plaintiff an opportunity to re-plead its contract and fraud claims. *See id.* at 1316. Dr. Hernandez has already amended his complaint to add EGLA, which was a party to the contracts in this claim and undisputably has standing to sue Defendants for breach of the contracts.

### III.  CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court enter a temporary restraining order and preliminary injunction in the form submitted herewith.

DATED: September 26, 2024         Respectfully submitted,

/s/*Elio F. Martinez, Jr.*
Elio F. Martinez, Jr.
Florida Bar No. 501158
Elio.martinez@gray-robinson.com
Francesca Russo
Florida Bar No. 174912
Francesca.russo@gray-robinson.com
**GRAY|ROBINSON, P.A.**
333 S.E. 2nd Avenue, Suite 3200
Miami, FL 33131
Tel: (305) 416-6880
Fax: (305) 416-6887

- And -

*/s/ Stanley M. Gibson*
Stanley M. Gibson (*pro hac vice motion forthcoming*)
sgibson@jmbm.com
Gregory S. Cordrey (*pro hac vice motion forthcoming*)
gcordrey@jmbm.com
Lena Streisand (*pro hac vice motion forthcoming*)
lstreisand@jmbm.com
Celine Ohanian (*pro hac vice motion forthcoming*)
cohanian@jmbm.com
**JEFFER MANGELS BUTLER & MITCHELL LLP**
1900 Avenue of the Stars, 7th Fl.
Los Angeles, CA 90067
Tel: (310) 203-8080
Fax: (310) 203-0567

*Attorneys for Plaintiffs*