# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. 24-cv-21226-RUIZ/TORRES

EDWIN A. HERNANDEZ and
EGLA CORP.,

     *Plaintiffs*,

v.

STINGRAY GROUP INC., et al.,

     *Defendants*.

_____/

## REPORT AND RECOMMENDATION ON
## DEFENDANTS' MOTION TO DISMISS

     The motion pending before the Court is Defendants' ("Stingray," "Stingray Canaeda," "Millicom," "AT&T," "Mood Media," and "Blue Stream") Motion to Dismiss Plaintiffs' ("EGLA Corp." and "Dr. Hernandez") Second Amended Complaint. [D.E. 148]. Plaintiffs filed their response [D.E. 162], and Defendants filed their reply. [D.E. 179]. The Motion, therefore, is ripe for disposition.[1] After careful review of the briefing and relevant authorities, and for the reasons set forth below, we recommend that Defendants' Motion be **GRANTED in part** and **DENIED in part**.

---

[1] On September 18, 2024, this Motion was referred to Magistrate Judge Lauren Fleischer Louis for a Report and Recommendation. [D.E. 155]. On October 22, 2024, Magistrate Judge Louis entered an Order of Recusal [D.E. 183], and the case was reassigned to the Undersigned Magistrate Judge for all further, referred proceedings.

## I.    BACKGROUND

This case arises out of Defendants' purportedly improper use of Plaintiffs' audio and video technology. Specifically, Plaintiffs allege that Dr. Hernandez developed "technology to deliver audio and video content using cloud-based platforms and mobile applications using secure remote servers." [D.E. 82 at ¶ 2]. Some of this technology resulted in three U.S. patents ("the Asserted Patents"). [*Id*.]. And prior to the technology accruing into the Asserted Patents, Dr. Hernandez avers that the technology also constituted trade secrets (some of which remain protected as such for non-patented, proprietary information).

In 2013, EGLA negotiated an agreement with Mood Media's predecessor, DMX, to license Dr. Hernandez's secret technology under numerous confidentiality conditions. But Plaintiffs allege that, at the time that term sheet was negotiated, Plaintiffs were unaware that Stingray, a larger corporation, was on the brink of acquiring DMX/Mood Media. The license agreements were then executed.  But later, when Dr. Hernandez discovered that Stingray – a non-party to the license agreements – acquired Mood Media in March of 2014, Dr. Hernandez feared that Stingray would engage in unauthorized use of his technology. Consequently, in April 2014, Dr. Hernandez emailed the Department of Homeland Security to report his concern that Stingray potentially had unauthorized access to Dr. Hernandez's servers.

In response, Dr. Hernandez received an email from Stingray that Stingray did not have "knowledge of, nor involvement on, the specifics of Mood Media's content

delivery technology—EGLA's or otherwise—nor has the intention of acquiring or learning such technology." [*Id.* at ¶ 66].  Nothing came of this but in the meantime Dr. Hernandez sought to protect his technology through s U.S. patent applications that successfully culminated in the three system/method patents in suit here.

After seven years passed by, in 2021 Dr. Hernandez purportedly discovered that Stingray had in fact been using his technology and trade secrets as he had feared. Specifically, on April 11, 2021, Dr. Hernandez discovered a website (Trello.com), in which Stingray allegedly used Dr. Hernandez's source code to create its own version of Dr. Hernandez's server (Ubiquicast OSE2). Plaintiffs also allege that Stingray's value and revenue increased dramatically right around the time Stingray began employing Dr. Hernandez's technology.  But, again, no further action was taken for an additional three years.

Then, in 2024 (fourteen years after Dr. Hernandez learned of Stingray's connection to DMX/Mood Media) Plaintiffs filed this action, which now hinges on the now-Second Amended Complaint that asserts the following claims:

- Count I: Violation of Defend Trade Secrets Act (against Stingray and Mood Media);

- Count II: Violation of Florida Uniform Trade Secret Act (against Stingray and Mood Media);

- Count III: Infringement of Patent No. 10,123,074 (against all Defendants except Stingray Music USA and Mood Media);

- Count IV: Infringement of Patent No. 10,524,002 (against all Defendants except Stingray Music USA and Mood Media);

- Count V: Infringement of Patent No. 11,140,441 (against all Defendants except Stingray Music USA and Mood Media);

- Count VI: Breach of Contract (against Mood Media);

- Count VII: Unjust Enrichment (against Stingray and Mood Media);

- Count VIII: Common Law Fraud (against Stingray and Mood Media); and

- Count IX: Unfair Competition under FDUPTA (against Stingray and Mood Media).

In the pending Motion, Defendants seek to dismiss the entirety of the operative Complaint under several theories. Primarily, Defendants assert that each claim should be dismissed under the respective statutes of limitation. Further, Defendants assert that several of the claims should be dismissed pursuant to the independent tort doctrine; preemption; lack of standing; lack of personal jurisdiction; failure to state a claim; and failure to satisfy heightened pleading requirements.

## II.    APPLICABLE LAW AND PRINCIPLES

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a claim for failure to state a claim upon which relief can be granted.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Conclusory statements, assertions or labels will not survive a 12(b)(6) motion to dismiss.  *Id*.  "A

4

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.; *see also Edwards v. Prime, Inc*., 602 F.3d 1276, 1291 (11th Cir. 2010) (setting forth the plausibility standard). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (citation omitted). Additionally:

> Although it must accept well-pled facts as true, the court is not required to accept a plaintiff's legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). In evaluating the sufficiency of a plaintiff's pleadings, we make reasonable inferences in Plaintiff's favor, "but we are not required to draw plaintiff's inference." *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005). Similarly, "unwarranted deductions of fact" in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations. *Id*.; *see also Iqbal*, 556 U.S. at 681 (stating conclusory allegations are "not entitled to be assumed true").

*Sinaltrainal v. Coca-Cola*, 578 F.3d 1252, 1260 (11th Cir. 2009), *abrogated on other grounds by Mohamad v. Palestinian Auth*., 566 U.S. 449, 453 n.2 (2012). The Eleventh Circuit has endorsed "a 'two-pronged approach' in applying these principles: 1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *American Dental Ass'n v. Cigna Corp*., 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679).

### III.   ANALYSIS

Defendants assert numerous categories of arguments to dismiss Plaintiffs' operative Complaint on several fronts. The Court will address those arguments in the following order: (1) personal jurisdiction over Stingray; (2) statute of limitations; (3) Dr. Hernandez's standing; (4) release of certain claims against Mood Media; (5) FUTSA preemption; (6) failure to state patent infringement; (7) failure to allege fraud; (8) failure to allege breach of contract; and (9) failure to allege a FDUPTA violation.

### A.   *Personal Jurisdiction Over Stingray Canada*

Stingray Group, Inc. ("Stingray Canada") is headquartered in Canada. And according to Defendants (but with no supporting affidavits or declarations), Stingray Canada does not conduct any business in Florida. Thus, in Defendants' view, Plaintiffs have not established this Court's personal jurisdiction over Stingray Canada.

Plaintiffs levy several arguments in response. First, Plaintiffs argue that Florida's long-arm statute confers jurisdiction because (allegedly) Stingray Canada has committed tortious acts within Florida, including trade secret misappropriation, patent infringement, and other deceptive acts and practices. Further, Plaintiffs argue that due process is satisfied because Stingray Canada, via its provision of relevant services to AT&T, Millicom, and Blue Stream (among other activities), has sufficiently availed itself to Florida, and Plaintiffs' lawsuit arises from or relates to

those activities. Plaintiffs also argue that Stingray Canada is a successor in interest to the contracts relevant to this case.

To determine personal jurisdiction, "[f]irst we must determine whether the Florida long-arm statute provides a basis for personal jurisdiction." *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626 (11th Cir. 1996). "If so, then we must determine whether sufficient minimum contacts exist between the defendants and the forum state so as to satisfy 'traditional notions of fair play and substantial justice' under the Due Process Clause of the Fourteenth Amendment." *Id.* (quoting *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 256 (11th Cir. 1996)).

### 1.   *Florida's Long-Arm Statutes*

Florida's "long-arm statute extends personal jurisdiction to those who '[c]ommit[ ] a tortious act within th[e] state.'" *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1216 (11th Cir. 1999) (quoting Fla. Stat. § 48.193(1)(b)). Moreover, "Florida statute § 48.193(1)(g) permits Florida courts to have jurisdiction over a non-resident when that party, 'breach[es] a contract in this state by failing to perform acts required by the contract to be performed in this state.'" *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1250 (11th Cir. 2000). At this stage, a motion to dismiss for "lack of personal jurisdiction under Florida's Long–Arm Statute does not require a full-scale inquiry into whether the defendant committed a tort." *Brennan v. Roman Cath. Diocese of Syracuse New York, Inc.*, 322 F. App'x 852, 855 (11th Cir. 2009) (citing *Future Technology Today, Inc.*, 218 F.3d at 1250). Rather, "when a plaintiff alleges a claim, and the record is in dispute as to the accuracy of the claim, we can construe

the facts in the light most favorable to the plaintiff and hold that the alleged claim satisfies Florida's Long–Arm Statute." *Id.*

Here, Plaintiffs allege that Stingray Canada provided services in Florida that constituted unfair and deceptive trade practices, misappropriated Plaintiffs' trade secrets, infringed on Plaintiffs' patents, and breached contracts. Further, as the Court will discuss *infra*, those allegations are plausible. Accordingly, Plaintiffs' "contract and tort claims satisf[y] Florida's Long–Arm Statute because an arguable basis for personal jurisdiction exists under § 48.193(1)(b) of the Florida Long–Arm Statute for [Plaintiffs'] … tort claims and under § 48.193(1)(g) for [Plaintiffs'] breach of contract claim." *Brennan*, 322 F. App'x at 855; *see also Future Tech. Today, Inc.*, 218 F.3d at 1250 ("The plaintiff has alleged the conversion, and the record is in dispute as to the truth of the accusation, therefore the Court will construe the facts in the light most favorable to the plaintiff and hold that the alleged conversion satisfies Florida's statute on long-arm jurisdiction."); *Posner*, 178 F.3d at 1217 ("Posner's allegations, if true, are sufficient to support his claim that Salem intentionally interfered with his contract with Essex by preventing Essex from paying his claims under the policies covering his damaged property in Florida. Jurisdiction exists because the Struth Affidavit fails to counter these assertions with anything more than conclusory denials of contacts with the state of Florida."); *North Am. Philips Corp. v. Am. Vending Sales, Inc.*, 35 F.3d 1576 (Fed. Cir. 1994) ("To sell an infringing article to a buyer in [a particular state] is to commit a tort there.").

### 2.    *Due Process*

"Having determined that the reach of the Florida long-arm statute extends to [Stingray Canada], we next engage in a two-part inquiry in order to determine whether that reach comports with due process." *Sculptchair, Inc.*, 94 F.3d at 630. The first component is whether Stingray Canada has established sufficient "'minimum contacts' with the state of Florida." *Id*. Next, "we must decide whether the exercise of this jurisdiction … would offend 'traditional notions of fair play and substantial justice.'" *Id*. (quoting *Robinson*, 74 F.3d at 258).

As to minimum contacts, Plaintiffs have argued that Stingray Canada offers relevant products and services to Florida customers (products which infringe and misappropriate Plaintiffs' proprietary information); has communicated with Dr. Hernandez regarding the relevant claims; and is a successor in interest to the agreements between Plaintiffs and DMX/Mood Media. We agree with Plaintiffs that these allegations, taken together and accepted as true, establish that Stingray Canada has sufficient minimum contacts with Florida such that personal jurisdiction may be exercised as to the relevant claims—especially where Stingray Canada offered no affidavits or evidence in their Motion to rebut these allegations, and did not even address personal jurisdiction in their Reply.[2] *See Spectra Chrome, LLC v. Happy*

---

[2] Stingray Canada has offered no evidence to belie Plaintiffs' allegations that Stingray Canada has engaged in minimum contacts with Florida.  This alone is arguably fatal to its position. *See Deltona Transformer Corp. v. Noco Co.*, No. 619CV308ORL41LRH, 2019 WL 5390476, at *7 (M.D. Fla. Sept. 16, 2019), *report and recommendation adopted*, 2019 WL 5558818 (M.D. Fla. Oct. 29, 2019) ("In sum, the Defendant has failed to present any evidence or persuasive argument contradicting the Plaintiff's allegations supporting the application of § 48.193(1)(a)(2). Therefore, the undersigned

*Jack's Reflections in Chrome, Inc.*, No. 8:11-CV-23-T-23MAP, 2011 WL 1337508, at *2 (M.D. Fla. Apr. 7, 2011) ("Under Section 48.193 and the 'minimum contacts' analysis, the defendant's allegedly contacting the plaintiff's customers in Florida provides a sufficient basis for personal jurisdiction over the tortious interference claim. Furthermore, to the extent that the information posted online about the plaintiff was both 'accessible in Florida and accessed in Florida,' personal jurisdiction is appropriate under Section 48.193 and in accord with Internet Solutions. Thus, the defendant's alleged tortious conduct, which the defendant purposefully and intentionally directed at a Florida corporation, supports jurisdiction under both Section 48.193 and the 'minimum contacts' analysis."); *New Lenox Indus., Inc. v. Fenton*, 510 F. Supp. 2d 893, 904–05 (M.D. Fla. 2007) ("A number of courts have recognized that where a defendant's tortious conduct is intentionally and purposefully directed at a resident of the forum, the minimum contacts requirement is met, and the defendant should anticipate being haled into court in that forum. In this case, Plaintiff alleges that Defendants committed one or more intentional torts and breached a contract against Plaintiff who was injured in Florida. Accordingly,

---

finds that specific personal jurisdiction is proper under § 48.193(1)(a)(2)."); *Gamecraft, LLC v. Vector Putting, LLC*, No. 6:12-CV-51-ORL-28KRS, 2012 WL 1581045, at *2 (M.D. Fla. May 4, 2012) ("Plaintiffs allege that such solicitations included false and misleading statements and were made with the intent to damage or destroy Plaintiffs' business relationships. Defendants have not submitted any evidence to contradict Plaintiffs' affidavits and allegations. Accordingly, Plaintiffs have met their burden of establishing a basis for personal jurisdiction under Florida's long-arm statute.").

under the three-part test enumerated above, because Defendants' contacts with Florida relate to Plaintiff's cause of action and the Defendants purposefully directed their conduct toward a Florida resident, the Defendants reasonably should have anticipated being haled into court here."); *Stone v. Shafran*, 641 F. Supp. 3d 1344, 1361 (S.D. Fla. 2022) ("Defendant Shafran, acting on behalf of TMT, negotiated a business deal with Plaintiff Butler, the CEO of a Florida company. Defendants should have reasonably understood that any dispute arising from that deal may be adjudicated in a Florida court.").

Taking as true Plaintiffs' allegations, Stingray Canada, having committed actions or practices that would breach its contract, infringe on Plaintiffs' patents, and/or would otherwise result in unfair and deceptive practices, should have reasonably anticipated being haled into court in Florida to resolve these related disputes. Thus, we find that, based on the limited record provided to us, Stingray Canada has established sufficient minimum contacts with Florida.

We also find that exercise of personal jurisdiction comports with fair play and substantial justice. As Plaintiffs point out, Defendants make no effort in their Motion and Reply to demonstrate how or why fair play or substantial justice would be offended. Further, as Plaintiffs highlight, Florida has an interest in adjudicating a dispute involving an entity that "deliberately provides its goods and services to Florida residents." [D.E. 162 at 25]. *See New Lenox Indus., Inc.*, 510 F. Supp. 2d at 904, n.44 ("A number of courts have recognized that where a defendant's tortious conduct is intentionally and purposefully directed at a resident of the forum, the

minimum contacts requirement is met, and the defendant should anticipate being haled into court in that forum.").

Accordingly, as to personal jurisdiction, we recommend that Defendants' Motion be denied.[3]  Stingray can, of course, press its jurisdiction defense at or before trial if warranted.  *See* Fed. R. Civ. P. 12(b) and 12(i).

### B.   *Statute of Limitations*

Next, Defendants seek to dismiss Counts 1, 2, 6, 7, 8, and 9 on grounds that they are time barred. As to each count, Defendants assert the same underlying premise: Plaintiffs became aware of any potential misappropriation of their technology in April 2014, yet did not file this action until April of 2024. In support, Defendants point to Dr. Hernandez's April 14, 2024 email to Homeland Security (which is attached as an exhibit to the operative Complaint). In that email, Dr. Hernandez represented that Plaintiffs had "notified Stingray Media … that they are illegally using our software and technology … and have access to ou[r] trade secrets …." [D.E. 82-18]. Plainly, Defendants argue, Plaintiffs became aware of any misappropriation over ten years prior to filing suit, and therefore their claims for

---

[3] While the Federal Circuit offers a slightly different test as to personal jurisdiction for patent infringement claims, we need not separately apply that test, as a separate analysis would offer no material differences; any nuances are already encompassed by the Court's analysis. *Atmos Nation, LLC v. BnB Enter., LLC,* No. 16-62083-CIV, 2017 WL 3763949, at *4 (S.D. Fla. Apr. 24, 2017) (citing *Avocent Huntsville Corp. v. Aten Int'l Co.,* 552 F.3d 1324, 1332 (Fed. Cir. 2008)) ("To establish that there is specific jurisdiction over a defendant in a patent action, the Federal Circuit has announced three requirements: (1) that the defendant purposefully directed its activities at residents of the forum, (2) that the claim arises out of or relates to those activities, and (3) that the assertion of personal jurisdiction is reasonable and fair.").

violation of the Defend Trade Secrets Act, violation of the Florida Uniform Trade Secret Act, breach of contract, unjust enrichment, fraud, and violation of FDUPTA are all time barred.

In response, Plaintiffs argue that the doctrine of equitable tolling undermines the application of any statutes of limitation. To that end, Plaintiffs argue that, after Dr. Hernandez discovered misappropriation and reported it to Homeland Security, Dr. Hernandez was assured by Stingray that Plaintiffs' trade secrets were not being misappropriated, and that Mood Media had not breached its contract with Plaintiffs. In support, Plaintiffs point to an April 2024 email from Stingray in which Stingray assured Dr. Hernandez that "none of your information had been jeopardized, as Stingray has not been made aware of any material information, or used your services in any way if not through Mood." [D.E. 82-11 at 6]. Further, Plaintiffs provide an email from April 14, 2024, in which Stingray represents that "Stingray Digital has no knowledge of, nor involvement on, the specifics of Mood Media's content delivery technology—EGLA's or otherwise—not has the intention of acquiring or learning such technology." [D.E. 82-13 at 2]. Accordingly, Plaintiffs conclude that, while they had initial suspicions in April 2014 that misappropriation was afoot, those suspicions were lulled into inaction by Defendants' representations – at least until April of 2021.

We agree with Plaintiffs that, drawing all reasonable inferences in their favor, dismissal at this stage under the statutes of limitation would be premature. "The doctrine of equitable tolling allows a court to toll the statute of limitations until such a time that the court determines would have been fair for the statute of limitations

to begin running on the plaintiff's claims." *Arce v. Garcia*, 434 F.3d 1254, 1261 (11th Cir. 2006). Moreover, "[w]hile it is true that [the Eleventh Circuit has] dismissed complaints under Rule 12(b)(6) on statute of limitations grounds, [the Eleventh Circuit has] made it clear that dismissal on such grounds is 'appropriate only if it is apparent from the face of the complaint that the claim is time-barred' and '*only if it appears beyond a doubt that [a plaintiff] can prove no set of facts that toll the statute*.'" *Sec'y of Lab. v. Labbe*, 319 F. App'x 761, 764 (11th Cir. 2008) (emphasis added) (quoting *Tello v. Dean Witter Reynolds*, Inc., 410 F.3d 1275, 1283 (11th Cir. 2005)).

Here, if Plaintiffs were in fact meaningfully assured by Stingray and Mood Media that in no way, shape, or form were any contracts breached, patents infringed, or trade secrets misappropriated, there certainly exists a prima facie basis for equitable estoppel based on Defendants' representations. And to be clear, we need not find at this stage that equitable tolling squarely applies. Rather, drawing all reasonable inferences in favor of Plaintiffs, we need only find that (before meaningful discovery has been taken and evidence can be considered), Defendants have not shown that, as a matter of law, the claims are time barred. *See Giraldo v. Drummond Co., Inc.*, No. 2:09-CV-1041-RDP, 2012 WL 12897083, at *2 (N.D. Ala. Mar. 5, 2012) ("Since circumstances can be envisioned to justify Plaintiffs' delay in filing suit, the motion for dismissal, as it relates to claims being barred by the statute of limitations, is due to be denied without prejudice. However, Plaintiffs are cautioned, as they were on January 17, 2012, to remain mindful of Mr. Tracy's probable use of the statute of limitations as an affirmative defense at a later stage, and during discovery

appropriately consider the propriety of asserting equitable tolling."); *Sec'y of Lab.*, 319 F. App'x at 764 ("In addition, as to those violations that may be time-barred, we cannot conclude beyond a doubt that the Secretary can prove no set of facts that toll the statute. The allegation in the complaint that the defendants submitted 'Receipts for Payment of Back Wages' knowing that they were false is sufficient to suggest equitable tolling."); *Chavez v. Credit Nation Auto Sales, Inc.*, 966 F. Supp. 2d 1335, 1349 (N.D. Ga. 2013) ("If credited, Plaintiff's testimony tends to show that Plaintiff attempted to exhaust her administrative remedies in a timely manner, but was thwarted by the EEOC, one of the circumstances that would warrant the application of equitable tolling to the statute of limitations in this case. However, on the state of the record and at this stage of the litigation, the undersigned is reluctant to find that the limitations period should be equitably tolled. … Rather than trying to determine whether Plaintiff's presentation at this stage definitively shows that equitable tolling applies, the undersigned finds that the better approach is to allow the parties to engage in discovery concerning Plaintiff's efforts to exhaust her administrative remedies. Then, if appropriate, the parties may ask the Court to revisit this issue with a more fully developed record."); *In re Takata Airbag Prods. Liab. Litig.*, No. 14-24009-CV, 2016 WL 5848843, at *9 (S.D. Fla. Sept. 21, 2016) (denying motion to dismiss for violation of statute of limitations because the plaintiff alleged sufficient facts "to implicate tolling of the statute of limitations"); *In re Chiquita Brands Int'l, Inc. Alien Tort Statute and S'holder Derivative Litig.*, 690 F. Supp. 2d 1296, 1307 (S.D. Fla. 2010) ("Whether the limitations period should be tolled is a factual question

which cannot be resolved on a motion to dismiss.... Plaintiffs have pled sufficient facts to raise a question of equitable tolling based upon fraudulent concealment.*"); 100079 Canada, Inc. v. Stiefel Lab'ys, Inc.*, No. 11-22389-CIV, 2011 WL 13116079, at *11 (S.D. Fla. Nov. 30, 2011) ("Here, MacKay argues that he could not have discovered his causes of action until after the related class action lawsuit was filed due to the Stiefel Defendants' alleged misrepresentations and concealment. He does not, however, specifically plead that discovery of his claims was tolled because of such concealment. Nevertheless, for purposes of this motion to dismiss, the Court finds that MacKay has done enough. Importantly, the Complaint does contain allegations of purported concealment and misrepresentation by the Stiefel Defendants.").

Perhaps, after the benefit of discovery, Defendants will be able to persuasively argue at summary judgment that equitable tolling is inapplicable. But at this stage we must consider only the four corners of the operative Complaint, accept allegations as true, and draw all reasonable inferences in favor of Plaintiffs. Accordingly, we recommend that Defendants' motion to dismiss as time-barred Counts 1, 2, 4, 6, 7, 8, and 9 be denied.

### C.   *Dr. Hernandez's Standing*

Defendants also argue that Dr. Hernandez lacks standing because the relevant technology and proprietary information belongs not to him, but to his company, EGLA. They also argue that Dr. Hernandez is not a party to any of the relevant agreements (e.g., EGLA's agreement with Mood Media), does not own any of the trade secrets, and does not own the Asserted Patents.

In response, Dr. Hernandez asserts that he indisputably developed all of the relevant technology, which he exclusively licensed to EGLA. And there exists no evidence of a transfer of ownership from Dr. Hernandez to EGLA; hence merely a license exists between these parties that does not negate Dr. Hernandez's legal standing to separately enforce his rights.

We again agree with Plaintiffs that, accepting their allegations as true and drawing reasonable inferences in their favor, Defendants have not demonstrated Dr. Hernandez's lack of standing as a matter of law. The operative Complaint alleges that EGLA "has an exclusive license to the technologies owned by Dr. Hernandez." [D.E. 82 at ¶ 20]. Moreover, the Asserted Patents (attached as exhibits to the operative Complaint) list Dr. Hernandez as the "Applicant" and "Inventor," with no evidence of assignment. The operative Complaint further alleges that "Dr. Hernandez is the owner of all rights, title and interests" to the Asserted Patents. [*Id*. at ¶¶ 144; 160; 176]. Moreover, nowhere in the operative Complaint do Plaintiffs allege that any assignment existed between Dr. Hernandez and EGLA; rather, Plaintiffs allege only a verbal licensing agreement between Dr. Hernandez and EGLA.

Defendants may ultimately be correct that EGLA is indeed the true owner of the technology, trade secrets, and Asserted Patents. For example, Defendants point to an agreement between EGLA and Mood Media in which EGLA refers to itself as the proprietor of the technology. But at best, those arguments and evidence, when weighed against the allegations of the operative Complaint, create an issue of fact. Accordingly, at this premature stage, the Court cannot find as a matter of law that

Dr. Hernandez lacks a sufficient interest in the technology, trade secrets, and/or Asserted Patents.

Rather, it is more appropriate for the parties to engage in discovery before assessing whether Dr. Hernandez lacks a sufficient proprietary interest. Then, if the facts and evidence support their position, Defendants can present their evidentiary showing at summary judgment or trial. For the time being, however, Plaintiffs have plausibly alleged—accepting their allegations as true and drawing reasonable inferences in their favor—that Dr. Hernandez possessed or possesses a sufficient interest in the technology, the parties' agreements, the trade secrets, and the Asserted Patents. On this score, then, we recommend that Defendants' Motion be denied. *See Lotmore Shipping Co. Ltd. v. Handson*, No. 10-23326-CIV, 2011 WL 13319594, at *1 (S.D. Fla. May 10, 2011), *report and recommendation adopted*, 2011 WL 13319583 (S.D. Fla. June 1, 2011) (denying motion to dismiss because "[t]he motion to dismiss essentially argues a factual issue which the Court does not consider on such a motion. It also offers "evidence" more properly addressed via summary judgment, if appropriate."); *see also Tran Chiropractic Wellness Ctr., Inc. v. Aetna Inc.*, No. 8:14-CV-47-T-36EAJ, 2015 WL 144243, at *3 (M.D. Fla. Jan. 12, 2015) ("Defendants argue that Plaintiffs do not have standing to bring this claim because they are not parties to any contract with Defendants. However, Plaintiffs have alleged that their patients' contract rights were assigned to them. … This determination requires a factual inquiry that cannot be made at this stage of the proceedings. In ruling on a motion to dismiss the Court must accept the factual

allegations in the Complaint as true. Plaintiffs have clearly alleged that they have standing as assignees to bring a breach of contract claim."); *Young Apartments, Inc. v. Town of Jupiter, FL*, 529 F.3d 1027, 1038 (11th Cir. 2008) (citing *Miccosukee Tribe of Indians v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1080 (11th Cir. 2002) ("At the initial pleading stage, a plaintiff may establish standing based on general factual allegations of injury. Because this issue reaches us on a motion to dismiss, we must presume that a plaintiff's allegations are sufficient to establish the facts alleged."); *Int'l Union of Operating Eng'rs Loc. 926 v. Sims Crane Serv., Inc.*, 640 F. Supp. 66, 68–69 (N.D. Ga. 1986) ("Moreover, the court notes that defendant's motion is predicated on defendant's contention that the plaintiff has no representational rights. On this motion to dismiss, the court must accept as true the contention in the complaint that the contract was entered into on behalf of the plaintiff ….").

## D.   *Release of Claims Against Mood Media*

Defendants next seek to dismiss these claims based on an affirmative defense – a release of all claims between the parties.  *See* Fed. R. Civ. P. 8(c)(1).  They argue that Plaintiffs released their claims against Mood Media in a signed agreement. Specifically, Defendants argue that on October 30, 2014, EGLA and DMX/Mood Media entered into a "Settlement and Mutual Release Agreement." In that agreement, the parties provided that:

> EGLA hereby voluntarily and knowingly, forever and fully, finally and completely, releases, acquits, forever discharges and holds harmless DMX and its … respective affiliates … from any and all claims, demands, or suits … which EGLA may have against any of the DMX released Parties, and which are based on or arising out of or in connection with, directly or indirectly, the Term Sheet ….

[D.E. 148-1 at 1]. Thus, because Mood Media acquired DMX, Defendants argue that Mood Media is an "affiliate" of DMX and Plaintiffs have released all claims against Mood Media that relate to the term sheet.

In response, Plaintiffs argue that the release extends only to claims regarding "the amounts owed to EGLA pursuant to the Term Sheet." Further, Plaintiffs argue that the release explicitly excludes "any claims, demands, or causes of action which arise against DMX as a result of its breach." Lastly, Plaintiffs argue that Dr. Hernandez signed the settlement agreement under false and fraudulent pretenses from Mood Media; specifically, that Dr. Hernandez's technology had not already been misappropriated by Mood Media via its acquisition by Stingray. Accordingly, Plaintiffs argue that the agreement is not enforceable, and even if it was enforceable, it is not enforceable in the manner that Defendants' advance.

For several reasons, we again agree that Defendants' argument lacks merit on a Rule 12(b) motion.  In sum, the nature and extent of the purported agreement's terms, plus the effectiveness and enforceability of those terms, are very fact-laden issues that cannot be summarily adjudicated on the face of the operative complaint. Plaintiffs' well-pleaded allegations that the settlement agreement was procured under fraud is, standing alone, sufficient to stave off this motion to dismiss. While of course we make no finding in that regard, Plaintiffs' allegations—taken as true—that the agreement was signed after Mood Media had already misappropriated Plaintiffs' trade secrets and technology (despite Mood Media's representations to the contrary) creates a colorable fact issue ripe for discovery. *See Tampa Bay Rays Baseball, Ltd v.*

20

*Volume Servs., Inc.*, No. 8:17-CV-2948-T-30TGW, 2018 WL 3068068, at *1 (M.D. Fla. Mar. 12, 2018) (denying motion to dismiss because, in part, it "identifie[d] issues of factual dispute that are inappropriate at this stage of the proceeding"); *Pulmonary Assocs. of Charleston PLLC v. Greenway Health, LLC*, 508 F. Supp. 3d 1268, 1280 (N.D. Ga. 2020) ("Thus, dismissal of NSWC and Medlock's claims seeking cover damages is not warranted because there is a question of fact regarding the enforceability of the damages waiver. Accordingly, Greenway's motion to dismiss will be denied as to counts five and six."); *Austin v. Latella*, No. 1:14-CV-2588-AT, 2015 WL 13388243, at *1 (N.D. Ga. May 1, 2015) ("Defendant has not demonstrated the insufficiency of the Complaint as a matter of law. Instead, Defendant's motion effectively argues that the actual facts relating to the contract and commercial relationship at issue demonstrate the legal invalidity of the contract. These factual circumstances as well as the legal issues surrounding the validity of the contract, however, must be presented to the Court through a properly prepared motion for summary judgment ….").

Apart from that, affirmative defenses like this are often not susceptible to summary adjudication as a matter of law, either under Rule 12 or Rule 56, especially where allegations are made that material information was not disclosed to releasing parties or where fraud tainted the enforceability of the release. *See, e.g., Charpentier v. Fluor Ocean Services, Inc.,* 534 F.2d 71, 72 (5th Cir. 1976) (reversing summary judgment on defense of release; "if Charpentier's allegations are taken as true and in a light most favorable to his claim, they make out a case of concealment from him, by

the insurer or its agent, of fact-type information material to his decision to accept or reject the proffered settlement. The truth or falsity of this assertion must be determined in order to establish whether the release was the result of fraud or overreaching or a mutual mistake of fact on the one hand or represented the genuinely knowing and voluntary agreement of Charpentier on the other."); *Viridis Corp. v. TCA Glob. Credit Master Fund, LP,* 721 F. App'x 865, 875 (11th Cir. 2018) (reversing in part dismissal of fraud, FDUPTA, and other claims grounded on scope of release; "the district court overlooked the fact that both Florida and Nevada prohibit a contractual waiver that exculpates a contracting party's fraudulent misconduct.").

As a result, we recommend that Defendants' Motion be denied.

### E.   *FUTSA Preemption*

Next, Defendants contend that FUTSA preempts Plaintiffs' claims for unjust enrichment, fraud, and unfair competition under FDUPTA. Plaintiffs, meanwhile, argue that those three claims are predicated on facts that materially differ from the facts underlying Plaintiffs' FUTSA claim.

FUTSA "displace[s] conflicting tort, restitutory, and other law of this state providing civil remedies for misappropriation of a trade secret." § 688.008, Fla. Stat. "Thus, as a general proposition other torts involving the same underlying factual allegations as a claim for trade secret misappropriation will be preempted by FUTSA." *New Lenox Indus., Inc.*, 510 F. Supp. 2d at 908. "To determine whether allegations of trade-secret misappropriation preempt a plaintiff from sufficiently

pleading a separate, but related tort, the Court must evaluate whether allegations of trade secret misappropriation alone comprise the underlying wrong; if so, the cause of action is barred by § 688.008." *Measured Wealth Priv. Client Grp., LLC v. Foster*, No. 20-CV-80148, 2020 WL 3963716, at *5 (S.D. Fla. July 13, 2020) (quoting *Sentry Data Sys., Inc. v. CVS Health*, 361 F. Supp. 3d 1279, 1294 (S.D. Fla. 2018)).

Here, Plaintiffs FUTSA claim is predicated on "the wrongful misappropriation … of Dr. Hernandez's Trade Secrets." [D.E. 82 at ¶ 133]. Mood Media and Stingray, Plaintiffs allege, violated their obligations to "maintain the secrecy of Dr. Hernandez's trade secrets" and "improperly acquired and/or disclosed" them. [*Id.* at ¶ 137]. We will now juxtapose the material facts underlying Plaintiffs' FUTSA claim against their unjust enrichment, fraud, and FDUPTA claims.

### 1.   *Unjust Enrichment*

This claim is premised on benefits allegedly procured by Stingray and Mood Media "through their knowing use of Plaintiffs' confidential and proprietary information." [*Id.* at ¶ 205]. Particularly, Plaintiffs allege that both Defendants significantly increased their revenues after misappropriating Plaintiffs' trade secrets, patents, and other proprietary information.

Plaintiffs argue that this claim is not preempted by FUTSA because it is not premised on solely the misappropriation of trade secrets. Rather, while the FUTSA claim is necessarily confined to trade secrets, the unjust enrichment claim extends to information and technology that may constitute neither a trade secret nor a patent. To that end, the unjust enrichment claim accounts for "confidential and proprietary

information, including but not limited to the period … when Plaintiffs' trade secrets were disclosed …." [*Id.* at ¶ 205].

We tend to agree, then, that Plaintiffs' unjust enrichment claim—as pleaded—contemplates a category of proprietary information that is broader than only trade secrets. That is, it alleges a category that may include, but extends beyond, trade secrets.

We acknowledge some courts have held FUTSA preempts claims predicated on the misappropriation of confidential and proprietary information even where that information does not rise to the level of a "trade secret." But (1) none of these decisions are binding, and (2) we do not believe this position to be the most accurate interpretation of FUTSA. Indeed, the preemption provision reads that FUTSA "displace[s] conflicting tort, restitutory, and other laws of this state providing civil remedies for misappropriation *of a trade secret*." § 688.008, Fla. Stat. (emphasis added). FUTSA further clarifies that it does not impact "[o]ther civil remedies that are not based upon misappropriation of a trade secret." § 688.008(2)(b), Fla. Stat.

Consequently, the Court can certainly imagine a scenario where Plaintiffs' unjust enrichment claim is preempted, but then Plaintiffs cannot prove that all of their confidential and proprietary information constitutes a "trade secret." Plaintiffs would then be left with no recourse because their unjust enrichment claim was prematurely dismissed. *See Healthcare Appraisers, Inc. v. Healthcare FMV Advisors, LLC,* No. 10-80293-CIV, 2011 WL 4591960, at *10 (S.D. Fla. Sept. 30, 2011) ("Again, the Court agrees with the Plaintiff that this argument is premature. If it is

determined at a later time that there are no trade secrets, than it would follow that the unjust enrichment claim would not be based on a misappropriation of trade secrets and should not be displaced. Therefore, this argument is more properly asserted at summary judgment. Dismissal of the unjust enrichment claim at this juncture is denied."); *SCIGRIP, Inc. v. Engineered Bonding Sols., LLC*, No. 615CV653ORL22KRS, 2015 WL 13792807, at *6 (M.D. Fla. Dec. 9, 2015) ("The Court finds it premature to address the issue of FUTSA preemption based on IPS's insufficient allegations. The issue of FUTSA preemption may be more properly addressed at the summary judgment stage.").

We find *Healthcare Appraisers* to be the more sensible and accurate approach, and thus recommend that the more appropriate course of action is to permit Plaintiffs' unjust enrichment claim to proceed past this Motion to Dismiss. Then, after discovery, the parties can hash out with a more developed record which of Plaintiffs' confidential and proprietary information constitutes a trade secret. That way, the Court avoids the problem of Plaintiffs' confidential and proprietary information not being deemed a trade secret; Plaintiffs having no recourse under FUTSA; and Plaintiffs also having no recourse through unjust enrichment because their claim was prematurely dismissed.

Thus, at this stage, accepting Plaintiffs' allegations as true and drawing reasonable inferences in their favor, we find that the unjust enrichment claim is sufficiently distinct from the FUTSA claim for purposes of this motion to dismiss because it plausibly incorporates non-trade secret information. If, at a later stage,

Defendants demonstrate that no proprietary information exists outside of Plaintiffs' trade secrets and patents, then perhaps Defendants will succeed in tabling this unjust enrichment claim (assuming that the elements of that quasi-contractual claim have been satisfied in the first place). But for now, the claims are sufficiently distinct and Defendants' motion should therefore be denied.

### 2.    *Fraud*

As to fraud, Plaintiffs allege that Mood Media had no intention of honoring the term sheet it negotiated with Plaintiffs. That is because Mood Media allegedly knew to be false its representations that "it would not disclose, transfer, or use of Dr. Hernandez's confidential and proprietary information" before inducing Plaintiffs into the agreement, as its acquisition by Stingray was on the horizon. [D.E. 82 at ¶ 210].

These allegations, too, sufficiently differ from Plaintiffs' FUTSA claim. At this stage, there certainly exists a difference between (1) the misappropriation of Plaintiffs' trade secrets, and (2) a false promise that Defendants would not misappropriate Plaintiffs' trade secrets in order to induce an agreement(s). This argument, then, should also fail. *See New Lenox Indus., Inc.*, 510 F. Supp. 2d at 908 ("The Court concludes that the claims, as pled, are distinct. The crux of Plaintiff's fraud in the inducement claim is that Fenton misled Plaintiff into believing that NLI's technology was being evaluated by an independent industry expert, rather than by a potential competitor, in order to obtain access to Plaintiff's confidential proprietary information. In contrast, the gist of Plaintiff's misappropriation of trade secret claim under FUTSA is that Defendants disclosed the unlawfully obtained trade

secrets to others in the airbag industry and utilized the information to compete with Plaintiff."); *Scanz Techs., Inc. v. JewMon Enterprises, LLC*, No. 20-22957-CIV, 2021 WL 65466, at *9 (S.D. Fla. Jan. 7, 2021) ("The Defendants argue that this claim is preempted by FUTSA, but the Court does not agree. Rather, the Court finds that while the Plaintiff's constructive fraud claim and FUTSA claim are related, they are not materially indistinguishable. Therefore, the Court finds that Count IV is not preempted under FUTSA.")

### 3.   FDUPTA

Lastly, Plaintiffs' FDTUPA claim targets Defendants' misuse, not only of Dr. Hernandez's trade secrets, but also "his confidential and proprietary information that are not trade secrets." [D.E. 82 at ¶ 215]. The FDUPTA claim further alleges that Defendants have engaged in deceptive and unfair practices by breaching Plaintiffs' agreements and engaging in fraudulent acts. As a result, Plaintiffs allege, Defendants have injured both Plaintiffs and consumers.

This claim also, as pleaded, goes beyond the mere misappropriation of Plaintiffs' trade secrets. It also incorporates non-trade secret proprietary trade information, as well as fraud and contract breaches, which in turn have constituted unfair and deceptive practices. At this stage, then, these allegations avoid FUTSA preemption. *See XTec, Inc. v. Hembree Consulting Servs., Inc.*, 183 F. Supp. 3d 1245, 1264 (S.D. Fla. 2016) (finding, even at the post-trial stage, that "assertions" of "unfair methods of competition, unconscionable acts or practices, and unfair and deceptive acts or practices," as well as the manner in which the two statutes were violated, were

"sufficient to materially distinguish XTec's FDUTPA claim from the FUTSA claim");
*Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170, 1181
(M.D. Fla. 2005) ("It appears at this stage that these three claims [which included a
FDUPTA claim] are not entirely dependent upon the FUTSA claim. Accordingly,
because these claims are materially distinct from the misappropriation of trade
secrets claim in count one, they are not preempted."); *Alphamed Pharms. Corp. v.
Arriva Pharms., Inc.*, 391 F. Supp. 2d 1148, 1167 (S.D. Fla. 2005) ("Although there
are common factual allegations in Counts V and VII, AlphaMed is correct that it does
not specifically allege that the misappropriation of trade secrets forms the basis of
the unfair competition claim. Therefore, the UTSA does not preempt AlphaMed's
unfair competition claim, and AlphaMed has stated a claim for common law unfair
competition.").

## F.    *Patent Infringement*

Defendants also levy several arguments as to how Plaintiffs fail to state a claim
for patent infringement. First, Defendants argue that Plaintiffs fail to allege how the
UbiquiCAST OSE2 infringes on all of the claim requirements. Further, Defendants
allege that Defendants fail to tie several of the Defendants into the allegations; fail
to adequately allege joint infringement; fail to adequately allege indirect
infringement; and fail to adequately allege willfulness.

### 1.    *Infringement of All Claim Requirements*

Here, Defendants argue that the operative Complaint fails "to tie the operation
of the … UbiquiCAST OSE2 … to all of the claim requirements." [D.E. 148 at 21]. For

example, Plaintiffs purportedly fail to allege how the UbiquieCAST OSE2 practices the Asserted Patent's "temporal sequence/dynamic change" limitation. Further, Defendants argue that the use of video is a defining feature of the '441 patent; yet, Plaintiffs' allegations do not accuse Defendants of using a video interface. As a result, Defendants argue, Plaintiffs' patent infringement claim fails to give Defendants fair notice of infringement.

In response, Plaintiffs assert that their allegations and accompanying 63 pages of claim charts do satisfactorily show infringement. For example, Plaintiffs argue "that the accused OSE2 server uses module 'GalaxieStillPicGenerator' to capture screen images of rendered webpages, i.e., the claimed temporal sequence of screen captures of [a] rendered web page. The captured screens are then used to generate a video, i.e., the claimed dynamic change limitation." [D.E. 162 at 16]. Further, Plaintiffs argue that the '441 patent infringement chart does refer to use of a video. Specifically, it states: "The Stingray Music Method transmits a data packet (e.g., an HTML or XML file) comprising a video image specification…while the audio data…is being transmitted …." [*Id*. at 17]. Thus, Plaintiffs argue that each of the flaws Defendants identify are readily remedied by the claim charts.

We agree that Plaintiffs, construing their allegations as true and drawing inferences in their favor, have adequately tied the operation of the UbiquiCAST OSE2 to all relevant limitations of the Asserted Patents. For each of the apparent deficiencies Defendants identified, Plaintiffs cited to the operative Complaint to successfully demonstrate how the relevant limitations were in fact incorporated into

the patent infringement count (i.e., how "temporal sequence/dynamic change" limitation and the video interface limitation are incorporated into the infringement claim). Accordingly, Defendants' Motion, in this regard, should be denied. *See Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1356 (Fed. Cir. 2021) (quoting *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018)) ("We find that Sony—like the district court—demands too much at this stage of the proceedings. Bot M8 need not 'prove its case at the pleading stage.' FAC plausibly alleges that the PS4 completes its execution of the fault inspection program before the game is started and supports those assertions with specific factual allegations. Nothing more is required. Accordingly, we find that the district court erred in dismissing Bot M8's claims as to the '988 and '670 patents."); *Kirsch Rsch. & Dev., LLC v. Intertape Polymer Corp.*, No. 8:20-CV-1982-T-33JSS, 2020 WL 7351565, at *4 (M.D. Fla. Dec. 15, 2020) (denying motion to dismiss because, "given its broadest possible construction, the Amended Complaint [and attached claim chart] plausibly states that the products" infringe, including each relevant claim requirement); *K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1284 (Fed. Cir. 2013) (emphasizing that a complaint need only place a "potential infringer ... on notice of what activity ... is being accused of infringement").

### 2. *AT&T, Millicom, and Blue Stream*

Next, Defendants argue that Plaintiffs fail to allege how Defendants AT&T, Millicom, and/or Blue Stream are involved in the ostensible patent infringement. Rather, Plaintiffs merely allege that these Defendants are mere downstream

customers who benefit from Stingray's alleged infringement; hence, they are not proper party defendants.

In response, Plaintiffs argue that these customer-Defendants, through their use of the infringing platform, are also engaging in patent infringement.

Critically, Defendants provide no authority to carry their burden of proving that a downstream customer cannot be liable for patent infringement. That lack of authority, coupled with the principle that patent infringement liability can stem from "use" alone, leads us to recommend that Defendants' argument be rejected. *See* 35 U.S.C. § 271(1) ("[W]hoever without authority makes, uses, offers to sell, or sells any patented invention … infringes the patent."); *Joy Techs., Inc. v. Flakt, Inc.,* 6 F.3d 770, 775 (Fed. Cir. 1993) ("A method claim is directly infringed only by one *practicing* the patented method.") (emphasis added); *Akamai Techs., Inc. v. Limelight Networks, Inc.,* 797 F.3d 1020, 1023 (Fed. Cir. 2015) (en banc) ("where two or more actors form a joint enterprise, all can be charged with the acts of the other, rendering each liable for the steps performed by the other as if each is a single actor.") (reversing set-aside of jury verdict for direct infringement involving method patent because "[w]here more than one actor is involved in practicing the steps, a court must determine whether the acts of one are attributable to the other such that a single entity is responsible for the infringement. We will hold an entity responsible for others' performance of method steps in two sets of circumstances: (1) where that entity directs or controls others' performance, and (2) where the actors form a joint enterprise.").

31

### 3.      *Joint Infringement*

Defendants further argue that Plaintiffs have failed to adequately plead joint infringement.

In response, Plaintiffs argue that their operative Complaint properly pleads that each of the Defendants performed all of the method steps of the Asserted Patents. Further, Plaintiffs argue that "to the extent that someone other than Defendants perform one or more of those steps, the SAC alleges that they are attributable to Defendants because they are under the direction and control of Defendants." [D.E. 162 at 17–18].

"To prove joint infringement, where multiple actors are involved in practicing the claim steps, the patent owner must show that the acts of one party are attributable to the other such that a single entity is responsible for the infringement." *Lyda v. CBS Corp.*, c, 1338–39 (Fed. Cir. 2016). "This court has held that an entity will be responsible for others' performance of method steps in two circumstances: '(1) where that entity directs or controls others' performance, and (2) where the actors form a joint enterprise.'" *Id.* (quoting *Akamai Techs.,* 797 F.3d at 1022). Thus, to adequately plead a claim for joint infringement, a plaintiff must "plead[ ] facts sufficient to allow a reasonable inference that all steps of the claimed method are performed and either (1) one party exercises the requisite 'direction or control' over the others' performance or (2) the actors form a joint enterprise such that performance of every step is attributable to the controlling party." *Id.*

Here, Plaintiffs have satisfied those pleading requirements. Indeed, in each of the patent infringement counts, Plaintiffs allege in their complaint that "[t]o the extent that some elements or steps of a claim in the [Asserted Patents] are performed or provided by a different party than Defendants," the infringement is still attributable to Defendants. [D.E. 82 at ¶¶ 149; 165; 181]. That is because, Plaintiffs allege, "Defendants establish the manner and/or timing of the performance of the use of Defendants Accused Streaming Platforms and thus direct and control the actions that a user may request or the results from a user's actions." [*Id*.]. "Defendants' customers and users receive a benefit in that they are able stream audio content (e.g., music)." [*Id*.] And moreover, "Defendants' contracts with users also create an agency relationship or govern infringing activity for purposes of joint infringement." [*Id*.].

Effectively, then, Plaintiffs have pleaded that "one party exercises the requisite 'direction or control' over the others' performance." *Lyda*, 838 F.3d at 1339. Of course, discovery may reveal that Defendants did not actually exercise that requisite direction or control, that the parties' contracts did not create an agency relationship, or that Plaintiffs' complaints of joint infringement are otherwise unfounded. But at this preliminary stage, Defendants have at least plausibly alleged the requisite level of control. Defendants' argument should therefore be rejected. *See VOIT Technologies, LLC v. Bluegate, Inc.*, Case No. 1-17-cv-22472, ECF No. 20 (S.D. Fla. Oct. 27, 2017) ("The Complaint alleges that the Defendant performs 'each and every step of one or more claims of the '412 Patent.' It further asserts that even if the Defendant did not actually perform these steps itself, the Defendant directs or

controls a third party to perform such steps on its behalf. The Plaintiff also claims that the Defendant has a valid contract with a third party to perform these steps pursuant to a service agreement where payment is contingent upon the third party's performance. In ruling on a motion to dismiss, the Court interprets the Plaintiff's allegations as true and views them in the light most favorable to the Plaintiff. Therefore, the Court finds that the Plaintiff pleaded sufficient facts to plausibly allege that the Defendant infringed the '412 Patent.").

### 4. *Indirect Infringement*

Defendants also argue that Plaintiffs have failed to plausibly allege indirect infringement. To that end, Defendants posit that the operative Complaint does not contemplate Defendants' specific intent to knowingly induce infringement, and thus fails as a matter of law.

Plaintiffs, conversely, point to allegations in the operative Complaint that "Defendants have knowingly and actively induced the infringement … by … marketing, promoting, and offering for use the Accused Streaming Platforms, knowingly and intending that the use of such instrumentalities by Defendants' customers and by users infringes the Asserted Patents." [D.E. 82 at ¶¶ 152–53; 168–69; 184–85].

Upon reviewing the relevant allegations in the second amended complaint, Plaintiffs have plausibly alleged indirect infringement. That is, Plaintiffs have alleged that Defendants knowingly induced infringement by marketing and offering for sale a product that Defendants knew was the product of patent infringement.

Accordingly, we recommend that Defendants' Motion be denied in this regard. *See O.E. Wheel Distributors, LLC v. Mobile Hi-Tech Wheels, LLC*, No. 8:21-CV-2573-CEH-SPF, 2022 WL 2918028, at *9 (M.D. Fla. July 25, 2022) ("Similarly, Plaintiff's theory of indirect infringement survives the motion to dismiss. The amended complaint alleges facts that allow the Court to reasonably infer prior knowledge, intent, and the existence of a third-party infringer. Plaintiff has sufficiently alleged that Defendants' actions facilitated others' infringement by sales to third-party infringers through its online catalogs, a first-hand transaction to a customer, and a purchase from CarID.com.").

And for these same reasons, Plaintiffs' allegations also belie Defendants' argument that Plaintiffs failed to adequately allege willful infringement (i.e. that Defendants had prior knowledge of Plaintiffs' patents yet sold and/or used products that infringed on those patents). On that score, then, Defendants' Motion should be also denied.

### G.   *Breach of Contract Claim*

Defendants next argue that Plaintiffs' breach of contract claim should be dismissed. In Defendants' view, Plaintiffs' breach of contract claim accuses Mood Media of improperly transferring Dr. Hernandez's confidential information to Stingray. But Plaintiffs failed to identify how such an action would violate the Term Sheet, the NDA, or the settlement agreement between Plaintiffs and Mood Media.

Plaintiffs, meanwhile, point out that the Term Sheet includes an "End User Licensing Agreement," which in turn requires confidentiality. Further, the

settlement agreement, Plaintiffs argue, was a settlement related to the breached-Term Sheet.

Given that we have evaluated Plaintiffs' other claims in the light most favorable to Plaintiffs as Rule 12 requires, it should come as no surprise that Plaintiffs' breach of contract claim should also survive this motion and proceed to discovery. At this stage, we are not tasked with investigating the precise terms of the parties' agreements to determine whether Defendants actually breached the contract. Rather, we assess Plaintiffs' allegations, accept them as true, draw all reasonable inferences in their favor, and determine from there whether the operative Complaint's allegations plausibly state a claim for breach of contract.

Here, they do. Specifically, Plaintiffs allege that: (1) Plaintiffs and DMX/Mood Media entered into a valid agreement and a settlement agreement; (2) those agreements "prohibited the disclosure, transfer, and use of Dr. Hernandez's confidential information"; (3) Mood Media nonetheless transferred that proprietary information; and (4) Plaintiffs suffered resulting losses. Plainly, then, Plaintiffs have stated a plausible claim for breach of contract against Mood Media; to hold otherwise would require a premature evidentiary assessment of Plaintiffs' claim. *See Hypower, Inc. v. Saab Sensis Corp.*, No. 12-61668-CIV, 2013 WL 12141509, at *2 (S.D. Fla. May 10, 2013) ("While Sensis argues that the contract's plain terms negate the alleged breaches, such arguments in reality go beyond the face of the Complaint and would require the Court to construe and apply arguably ambiguous contract terms to the facts and potentially attempt to discern the parties' intent from course of dealing.

Those kinds of arguments are better addressed at the summary judgment stage."); *Managed Care Solutions, Inc. v. Cmty. Health Sys., Inc.*, 2011 WL 6024572, at *6 (S.D. Fla. Dec. 2, 2011) ("The contract section in dispute is reasonably susceptible to more than one interpretation, and thus this issue should be decided at the summary judgment stage and the motion to dismiss on this basis should be denied.").

We thus recommend that Plaintiffs' breach of contract claim proceed and the Motion be denied. *See Grays Temple CME Church v. Mt. Hawley Ins. Co.*, No. 20-CV-80855, 2020 WL 6383221, at *2 (S.D. Fla. July 22, 2020) ("Plaintiff alleges that there was a valid insurance policy which was in effect at all relevant times, that Defendant breached the Policy by failing to pay for a covered loss, and that this failure caused Plaintiff damages, in the form of unpaid benefits. Thus, Plaintiff has pled all essential elements of a breach of contract claim. ... Certainly, additional details will come out in discovery .... However, this information is not necessary for Plaintiff to state a viable breach of contract claim."); *Pagniello v. Unified Caring Ass'n*, No. 1:19-CV-03969-SCJ, 2020 WL 4730981, at *3 (N.D. Ga. May 14, 2020) ("Moreover, in support of his breach of contract claim, Plaintiff alleges that he entered into a contractual agreement with Defendants, wherein he agreed to pay a monthly premium of $359.40 in exchange for health care benefits. He further alleges that he complied with all conditions precedent of the contract by tendering his monthly premium payments to Defendants as consideration for the purchase. Defendants, however, allegedly failed to provide Plaintiff with indemnity benefits and therefore committed a material

breach of the contract. At this time, the Court finds that these allegations are sufficient to survive a motion to dismiss.").

### H.    *Fraud Claim*

Defendants seek dismissal of Plaintiffs' fraud claim on several grounds. That claim is predicated on DMX/Mood Media allegedly inducing Plaintiffs to hand over proprietary information while concealing that a merger with Stingray was impending. When Plaintiffs provided their proprietary information to DMX/Mood Media, Plaintiffs understood that this information would not be disclosed to any other entity. But, Plaintiffs allege, DMX/Mood Media knew when it induced the agreement that it was on the brink of being acquired by Stingray (and therefore Plaintiffs' proprietary information would be shared with Stingray), yet failed to inform Plaintiffs. Thus, Plaintiffs allege that Mood Media and Stingray knew before entering into that agreement that they would not honor any confidentiality provision; i.e., that Plaintiffs' proprietary information would improperly reach Stingray.

To dismiss this claim, Defendants first argue that there exist no specific fraud allegations as to Stingray. Next, Defendants argue that Rule 9(b)'s heightened pleading standard is not satisfied. Lastly, the independent tort doctrine, Defendants aver, bars the fraud claim. We will address each argument in turn.

### 1.    *Allegations as to Stingray*

As an initial matter, Defendants argue that, while Plaintiffs fraud claim is against both Mood Media and Stingray, the allegations within the count make no mention of Stingray. This point is well taken. Indeed, the count consistently alleges

that only Mood Media entered into the agreements, only Mood Media violated the agreements, only Mood Media made false representations, and only Mood Media knew those representations were false. [D.E. 82 at ¶¶ 209–213]. And while Plaintiffs aver that the count incorporates by reference previous allegations, none of those previous allegations squarely (let alone plausibly) allege that Stingray engaged in fraud.

Accordingly, we recommend that, as to Stingray, Plaintiffs' fraud claim be dismissed without prejudice as this fraud claim alleges no plausible facts pointing to Stingray's complicity in any fraud directed at Plaintiffs.

### 2.   *Heightened Pleading Requirements*

Next, Defendants argue that Plaintiffs have failed to identify any specific fraudulent statements, as well as the time, place, and speaker. Accordingly, Defendants argue that Plaintiffs' claim in its entirety fails under Rule 9(b).

In response, Plaintiffs assert that they sufficiently describe the allegedly fraudulent statements; i.e., that the statements were "representations to Plaintiffs that [Mood Media] would not disclose, transfer, or use of Dr. Hernandez's confidential and proprietary information to any other party other than Mood Media/DMX." [D.E. 82 at ¶ 210].

"Rule 9(b) is satisfied if the complaint sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such

statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *U.S. ex rel. Clausen v. Lab'y Corp. of Am.*, 290 F.3d 1301, 1310 (11th Cir. 2002) (quoting *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001)).

Here, Plaintiffs have not met that pleading standard. The entirety of Plaintiffs' fraud allegations rely on (1) a general charge that Mood Media made representations that it would not disclose Plaintiffs' proprietary information, and (2) more specific statements made by Stingray *after the contract had already been executed.* The operative Complaint makes no mention, however, of any specific statements (including the time, place, context, and speaker) that were made by Mood Media before any contract was entered into that evince Mood Media's intent to not perform the contract. It rather presents a mere naked narrative that Defendants never intended to perform the agreement.

The Plaintiffs' best argument for a satisfactory pleading is paragraphs 55 through 57. There, they allege that, in December of 2013, Plaintiffs negotiated the agreement with Mood Media/DMX. And at no point during those negotiations, allege Plaintiffs, did Defendants inform "that a merger transaction was taking place behind the scenes with Stingray, and that Stingray intended to gain unauthorized access to Dr. Hernandez's [proprietary information]." [D.E. 82 at ¶ 56].

But Plaintiffs do not allege that, by any measure, Mood Media had any known duty to affirmatively disclose the impending merger. "A defendant's knowing concealment or non-disclosure of a material fact may only support an action for fraud

40

where there is a duty to disclose." *TransPetrol, Ltd. v. Radulovic*, 764 So. 2d 878, 879 (Fla. 4th DCA 2000).  Here, Plaintiffs fail to allege that any such duty existed.  On the face of the complaint, the parties were negotiated an arms-length transaction to enter into a license agreement.  Thus, to the extent Plaintiffs may argue that their fraud claim is a fraudulent concealment claim, it would remain subject to dismissal for failure to state a claim.  Accordingly, even if these allegations do suggest an omission, they do not plausibly state a fraudulent omission.

Because Plaintiffs' operative Complaint fails to meet the requirements of Rule 9(b), we recommend that Defendants' Motion be granted on this score. *See U.S. ex rel. Clausen*, 290 F.3d at 1311 (affirming the dismissal of a fraud claim because the plaintiff "does not identify any specific claims that were submitted to the United States or identify the dates on which those claims were presented to the government" and "relies exclusively on conclusory allegations of fraudulent billing"); *Cutler v. Voya Fin., Inc.*, No. 18-20723-CIV, 2019 WL 1112379, at *5 (S.D. Fla. Jan. 15, 2019), *report and recommendation adopted*, 2019 WL 1115885 (S.D. Fla. Feb. 5, 2019) ("Plaintiff's allegations are defective for numerous reasons because Plaintiff omits many – if not all – of the requirements set forth under Rule 9(b), including the precise statements, documents, or misrepresentations made, (2) the time, place, and person(s) responsible for the statement, (3) the content and manner in which these statements misled Plaintiff, and (4) what the Defendants gained by the alleged fraud. Indeed, we can find no specific statement throughout the amended pleading – and Plaintiff fails to reference any – where Defendants fraudulently induced him to enter into a

contractual agreement."); *Rentclub, Inc. v. Transamerica Rental Fin. Corp.*, 775 F. Supp. 1460, 1462 (M.D. Fla. 1991) ("While it is true that the Plaintiff includes specific instances in its chronological narrative and then incorporates the narrative into its fraud claim, the narrative lacks the specificity required under the rule. Count II should not be a mere reflection of the narrative, incorporating a broad group of specific facts. Instead, Count II should explicitly state the circumstances constituting the fraud. The Plaintiff should specifically identify the individuals who made the alleged misrepresentations, the time of the alleged fraud and the place of the alleged fraud.").

We further recommend, however, that Plaintiffs' claim be dismissed without prejudice. *See Summer v. Land & Leisure, Inc.*, 664 F.2d 965, 970–71 (5th Cir. 1981) ("We agree with Arthur Young and Raymond that the complaint includes only conclusory allegations of fraudulent concealment as against Arthur Young and Raymond. Rule 9(b), Fed.R.Civ.P., requires that the elements of fraud be pleaded with particularity. Accordingly, we affirm the judgment of the district court to the extent that it dismissed the complaint with respect to Arthur Young and Raymond, but we hold that on remand Summer be granted leave to amend to assert more particularized allegations as against Arthur Young and Raymond, if he can do so."); *Rentclub, Inc.*, 775 F. Supp. at 1462–63 ("While it is true that intentionally misrepresenting that one will perform an act in the future is the same as having a present intention not to perform that act, a lucid and understandable complaint will set out in detail how the perpetrator has present intent. Thus, in the spirit of Rule

9(b) the Court directs Plaintiff to re-allege Count II with the requisite specificity, excluding the previous vague words of paragraphs 112–115 of the original complaint and including more precise words in forming present intent.").[4]

### I.    FDUPTA Claim

Finally, Defendants aver that Plaintiffs FDUPTA claim fails as a matter of law both because the independent tort doctrine bars the claim and Plaintiffs fail to allege actual damages. We will address each contention separately.

#### 1.    Independent Tort Doctrine

Defendants maintain that Plaintiffs' FDUPTA claim is duplicative of its breach of contract claim. Plaintiffs FDUPTA claim alleges that Stingray and Mood Media engaged in deceptive acts and unfair practices via: the use of Dr. Hernandez's trade secrets; the use of Dr. Hernandez's non-trade secret proprietary information; the breach of Plaintiffs' contract with Mood Media; and fraud.

Plaintiffs FDUPTA claim certainly hinges on the same general conduct as the breach of contract and fraud claims: Defendants alleged disclosure of Plaintiffs' proprietary information, under the pretense that such information would not be disclosed. But Plaintiffs narrowly sidestep the independent tort doctrine by further alleging that, not only Plaintiffs were harmed by these actions, but Defendants "also harmed consumers of streaming music services to pay more for such services because

---

[4] Defendants also raise other bases why Plaintiffs' fraud claims are barred as a matter of law.  We need not reach them given our recommended dismissal of the existing fraud allegations.  If a fraud claim is properly alleged in the first instance, then other arguments for dismissal as a matter of law may be viable.

of the lack of competition from others, such as Plaintiffs." [D.E. 82 at ¶ 216].[5] This allegation is not a component of Plaintiffs' breach of contract or fraud claims.

Accordingly, we recommend that Defendants' Motion be denied as to this argument.

### 2.   *Actual Damages*

Next, Defendants argue that Plaintiffs' FDUPTA claim fails to plead actual damages; rather, it identifies only consequential damages and other damages that are not recoverable under FDUPTA.

Plaintiffs, in response, argue that "[a]t the pleading stage, actual damages include expenses incurred to cure diminution in value caused by Defendants' conduct." [D.E. 162 at 21].

We agree with Plaintiffs that, as pleaded, their FDUPTA damage claim should (narrowly) survive. The operative Complaint alleges that Plaintiffs' FDUPTA "damages include, but are not limited to, expenses connected with Plaintiffs' attempts to undo the harm caused by Defendants Stingray and Mood Media, a loss of existing customers and contracts, a loss of Plaintiffs' ability to obtain competitive pricing for its services, and a diversion of potential sales to existing customers." [D.E. 82 at ¶ 217]. Further, Plaintiffs allege that, as a result of Defendants conduct, Plaintiffs suffered "a loss of reputation and consumer goodwill." [*Id*.].

---

[5] We make no finding as to whether this allegation is plausible because Defendants make no argument on that front. In the event, however, that this claim proves to be very unmeritorious or lacking in any evidentiary support, Plaintiffs should be aware that the FDTUPA's attorneys' fee provision cuts both ways.

Courts in this Circuit, meanwhile, have recognized that "expend[ing] money on reputation management services as a result of Defendants' conduct … is sufficient to plead actual damages under FDUTPA." *Buckley v. Moore*, No. 20-CIV-61023-RAR, 2021 WL 3173185, at *10 (S.D. Fla. July 26, 2021); *PODS Enterprises, LLC v. U-Haul Int'l, Inc.*, 126 F. Supp. 3d 1263, 1286 (M.D. Fla. 2015) ("Where, as here, the unfair method of competition is the unauthorized use of a mark which diminishes the value or distinctiveness of the brand, actual damages would be the corrective advertising expense it will take to recover the lost value, as Dr. Winer opined.").

Accordingly, we find that, by pleading "a loss of reputation and consumer goodwill," Plaintiffs have plausibly alleged actual damages under FDUPTA. While we do not necessarily find that each and every category of damages alleged by Plaintiffs constitute "actual damages," we do find that Plaintiffs have at least minimally pleaded actual damages. Thus, we recommend that Defendants' effort to dismiss Plaintiffs' FDUPTA claim be denied. *See PRH Paraiso Two, LLC v. Terex Corp.*, No. 18-CV-22099-KMW, 2019 WL 13189473, at *3–4 (S.D. Fla. June 20, 2019) (quoting *Ace Pro Sound and Recording, LLC v. Albertson*, 512 F. Supp. 2d 1259, 1269 (S.D. Fla. 2007)) ("Plaintiffs' specific allegations asserting their entitlement to actual damages is markedly different from the plaintiffs in Thermoset, who alleged only consequential damages in the form of remediation costs. Furthermore, other courts in this District have held that '[i]t is premature ... at this early junction, for the Court or the Parties to understand or limit how the damages theories will be being parsed....' Rather, at this stage of litigation, Plaintiffs need only to have pled recoverable actual

damages."); *Smith v. Wm. Wrigley Jr. Co.*, 663 F. Supp. 2d 1336, 1340 (S.D. Fla. 2009) ("Accepting these allegations as true, the Court finds that Plaintiff alleges that she 'has suffered a loss' which was proximately caused by Defendant's deceptive, misleading and unfair trade practices. Accordingly, Plaintiff's allegations state a claim under [FDUPTA].").

## IV.   CONCLUSION

For the reasons set forth above, we recommend that Defendants' Motion to Dismiss [D.E. 148] be **GRANTED in part** and **DENIED in part**.

Plaintiffs' fraud claim should be dismissed without prejudice subject to the filing of an amended pleading under Rule 15. In all other respects, Defendants' Motion should be denied.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the Court finds good cause to expedite objections. Accordingly, the parties have seven (7) days from service of this Report and Recommendation within which to file written objections, if any, to the District Judge. If any objections are filed, a response shall be filed within seven (7) days thereafter.  No reply is permitted as per S.D. Local Mag.J. R. 4(b). Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir.

Feb. 2, 2017); *Cooley v. Commissioner of Social Security,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

      **DONE and SUBMITTED** in Chambers at Miami, Florida this 4th day of March, 2025.

/s/ *Edwin G. Torres*       
EDWIN G. TORRES
United States Magistrate Judge
