IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:24-CV-21226-RAR

EDWIN A. HERNANDEZ, and EGLA
CORP.,

    *Plaintiffs*,

    v.

STINGRAY DIGITAL GROUP INC.
and STINGRAY MUSIC USA, INC.,
MOOD MEDIA CORPORATION,
AT&T, INC., MILLICOM, INC., and
DOES 1-700,

    *Defendants*.

**JURY TRIAL DEMANDED**

---

## MOOD MEDIA'S MOTION AND
## INCORPORATED MEMORANDUM FOR PROTECTIVE ORDER

## TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................1

II.     FACTUAL BACKGROUND ..................................................................................2

      A.      In 2014, Plaintiffs accused Mood Media of breach of contract and trade-secret misappropriation, but signed an agreement releasing those claims, and all other claims against Mood Media, over a decade ago. ................................2

      B.      The four complaints filed by Plaintiffs in this case have never included a single factual allegation that any of Mood Media's products improperly use Plaintiffs' alleged trade secrets or infringe Plaintiffs' patents. ........................4

      C.      Plaintiffs—on five separate occasions—have failed to sufficiently identify their alleged trade secrets and have failed to identify how those alleged trade secrets were supposedly improperly accessed by anybody. ...........................6

      D.      Without identifying any trade secrets or factually alleging that those trade secrets are improperly used by Mood Media, Plaintiffs now seek broad discovery into Mood Media's confidential technical information...........................8

III.    LEGAL STANDARD................................................................................................9

IV.     ARGUMENT .........................................................................................................10

      A.      Plaintiffs' requested discovery is neither relevant nor necessary to any of the factual allegations in this case.........................................................................10

            1.      Plaintiffs did not—and cannot—show that Mood Media's confidential technical information is relevant............................................11

            2.      Plaintiffs did not—and cannot—show that Mood Media's confidential technical information is necessary. ........................................13

      B.      Plaintiffs have not adequately identified their alleged trade secrets to warrant discovery into Mood Media's confidential technical information. ..........14

V.      CONCLUSION......................................................................................................16

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Am. Standard Inc. v. Pfizer Inc.*,
    828 F.2d 734 (Fed. Cir. 1987)........................................................................12, 13

*Chudasama v. Mazda Motor Corp.*,
    123 F.3d 1353 (11th Cir. 1997) ...................................................................14, 17

*DeRubeis v. Witten Techs., Inc.*,
    244 F.R.D. 676 (N.D. Ga. 2007)............................................................11, 15, 16

*Duracell Inc. v. SW Consultants, Inc.*,
    126 F.R.D. 576 (N.D. Ga. 1989).................................................................11, 12

*Empire of Carolina, Inc. v. Mackle*,
    108 F.R.D. 323 (S.D. Fla. 1985) ......................................................................10

*Farnsworth v. Procter & Gamble Co.*,
    758 F.2d 1545 (11th Cir. 1985) .......................................................................10

*Hickman v. Taylor*,
    329 U.S. 495 (1947)........................................................................................10

*Micro Motion, Inc. v. Kane Steel Co., Inc.*,
    894 F.2d 1318 (Fed. Cir. 1990)................................................................12, 13

*S. Gardens Citrus Processing v. Barnes Richardson & Colburn*,
    No. 2:11-cv-00377-99SPC, 2012 WL 5877533 (M.D. Fla. Nov. 20, 2012) ..........................14

Pursuant to the authorization provided by Magistrate Judge Torres during an April 24, 2025 hearing, Mood Media submits this motion and incorporated memorandum of law for a protective order to prevent the disclosure of Mood Media's confidential technical information.

## I.      INTRODUCTION

Plaintiffs seek broad discovery on claims of dubious merit. Despite knowing about their claims since April 2014 and, despite signing a settlement agreement to release any and all claims against Mood Media in October 2014, Plaintiffs sued Mood Media in April 2024 on the very claims that had been released nearly a decade earlier. Given these facts, this Court noted that "the likelihood of any positive outcome in Plaintiffs' favor on these claims is in real doubt." ECF No. 202 at 14. In the original and all amended complaints, Plaintiffs have consistently alleged that Mood Media supposedly allowed Plaintiffs' alleged trade secrets and confidential information to go to Stingray. But since filing the original complaint, Plaintiffs—on five separate occasions— have been unable to identify their alleged trade secrets with reasonable particularity or explain how those alleged trade secrets supposedly passed to Stingray. And Plaintiffs have never set forth a single *factual* allegation—in any of their four complaints—that Mood Media improperly used Plaintiffs' alleged trade secrets in any of Mood Media's products. Yet Plaintiffs now seek broad and unduly burdensome discovery into Mood Media's confidential technical information.

Plaintiffs' requested discovery should be denied for two independent reasons. *First*, this discovery is neither relevant nor necessary to Plaintiffs' factual allegations in this case. *Second*, Plaintiffs have not adequately identified their alleged trade secrets, or explained how those alleged trade secrets were improperly accessed, making the disclosure of Mood Media's confidential technical information improper at this time. For these reasons and as discussed more fully below, Mood Media requests a protective order precluding the disclosure of its confidential technical information.

## II.     FACTUAL BACKGROUND

### A.     In 2014, Plaintiffs accused Mood Media of breach of contract and trade-secret misappropriation, but signed an agreement releasing those claims, and all other claims against Mood Media, over a decade ago.

The relationship between Plaintiffs and Mood Media began with Mood Media's predecessor-in-interest, DMX, a company that provided certain music services. ECF No. 214, Third Amended Complaint ¶ 6. In early 2012, DMX and Plaintiffs' corporate entity, EGLA Communications ("EGLA"), began exploring the possibility for EGLA to provide web-based technology to DMX. *Id.* ¶¶ 6–7. In early 2013, the parties entered into a Term Sheet for EGLA to provide "a web solution plus a technical solution for cable systems." ECF No. 214-9, Ex. 9 at 1.

But, shortly after signing the Term Sheet, the parties' relationship began to deteriorate. On April 14, 2014, Edwin Hernandez sent an email to a former employee of Mood Media, Gustavo Tonelli, alleging that "the NDA in place with MOOD MEDIA has been breached" and that EGLA's trade secrets had been misappropriated. ECF No. 214-13, Ex. 13 at 3–4 (April 14, 2014 email at 8:59 am). Although Mr. Tonelli denied those accusations, *id.* at 3 (April 14, 2014 email at 4:05 pm), Dr. Hernandez's private emails with his father demonstrate that they did not trust Mr. Tonelli or Mood Media. Dr. Hernandez's father lamented, in Spanish, that "[t]hey think they can deceive . . ." ("[e]stos creen que pueden enganar . . ."). ECF No. 214-13 at 2 (April 14, 2014 email at 8:16 pm). In response, Dr. Hernandez explained, again in Spanish, that a meeting had been arranged "with some high-caliber lawyers" ("con unos abogados de calibre") in order to verify what they were being told. *Id.* (April 14, 2014 email at 8:21 pm).

The next day, on April 15, 2014, Dr. Hernandez sent an email to Mood Media, alleging that Mood Media had breached the Term Sheet and certain other confidentiality obligations by allowing Stingray to access EGLA's confidential information. ECF No. 214-11 at 4 (April 15, 2014 email at 9:43 am). Within a few hours, Mood Media responded to Dr. Hernandez, explaining

that "Mood has no reason to believe that anyone at DMX/Mood, including former employees, has violated the non-disclosure agreement." ECF No. 214-11 at 3 (April 15, 2014 email at 12:29 pm). Mood Media also explained that "[i]f there are invoices that [Dr. Hernandez] believe remain unpaid," they should be forwarded to Mood Media. *Id.* A few minutes later, Dr. Hernandez responded to Mood Media's email, stating that he "suspect[ed] that [Mood Media's] system [had been] compromised." *Id.* at 2 (April 15, 2014 email at 12:31 pm).

On April 24, 2014, Mood Media sent Dr. Hernandez an email "officially terminating the Term Sheet" between Mood Media and EGLA. ECF No. 214-11 at 1 (April 24, 2014 email at 4:48 pm). But Dr. Hernandez continued to complain about unpaid invoices under the Term Sheet.

To resolve that issue and all other disputes between the parties, Mood Media and EGLA entered into a Settlement and Mutual Release Agreement ("Mutual Release"). ECF No. 148-3. It expressly states the purposes for this agreement:

> The Parties now desire to compromise and settle, fully and finally, ***all differences between them***. This Agreement is made for the following purposes and with reference to the following facts:
>
> 1. <u>Purpose</u>.    The purpose of this Agreement is to settle and compromise the amounts in controversy between the Parties hereto and ***to waive, release and discharge their respective claims, causes of action, costs and demands*** as discussed below.
>
> 2. <u>Agreement</u>.  On or about January 1, 2013, EGLA entered into a term sheet with DMX for EGLA to provide goods and services including the EGLA Media Platform, the EGLA Media Plug-In and technical support (the "Term Sheet"). The parties have agreed to resolve all issues related to amounts owed EGLA pursuant to the Term Sheet. DMX will pay EGLA the amount of $59,890.00 in full and complete satisfaction of the Term Sheet.

*Id.* at 2 (emphasis added). To implement these purposes, the parties also agreed to broad mutual releases. EGLA's release reads as follows:

> (b) <u>EGLA's Release.</u>  As a material inducement to DMX to enter into this Agreement, and effective upon the execution of this Agreement, and in consideration of mutual promises and considerations contained herein, EGLA

hereby voluntarily and knowingly, forever and fully, finally and completely, **RELEASES, ACQUITS, FOREVER DISCHARGES AND HOLDS HARMLESS** DMX and its respective shareholders and its respective affiliates, including for purposes herein the shareholders, directors, officers, employees, agents, successors and assigns of any of such affiliates, from any and all claims, demands, or suits, known or unknown, fixed or contingent, liquidated or unliquidated, whether now or hereafter asserted, which EGLA may have against any of the DMX Released Parties, and which are based on or arising out of or in connection with, directly or indirectly, the Term Sheet, but save and except, however, any claims, demands or causes of action which arise against DMX as a result of its breach or default hereunder.

*Id.* at 2, ¶ 3(b). After executing the Mutual Release, Mood Media presumed the matter was resolved. But, then, without any provocation, Plaintiffs sued Mood Media on April 2, 2024—on the very claims that had been released nearly a decade earlier. *See generally* ECF No. 1.

> **B.    The four complaints filed by Plaintiffs in this case have never included a single factual allegation that any of Mood Media's products improperly use Plaintiffs' alleged trade secrets or infringe Plaintiffs' patents.**

Plaintiffs have now filed four complaints in this case: (1) an original Complaint on April 2, 2024, ECF No. 1; (2) a First Amended Complaint on June 20, 2024, ECF No. 63; (3) a Second Amended Complaint on July 15, 2024, ECF No. 82; and (4) a Third Amended Complaint on April 9, 2025, ECF No. 214. In each of these complaints, Plaintiffs consistently allege that Mood Media supposedly allowed Hernandez's trade secrets and confidential information to go to Stingray. *See, e.g.*, ECF No. 1 ¶ 53; ECF No. 63 ¶ 3; ECF No. 82 ¶ 3; ECF No. 214 ¶ 3. None of these complaints includes any *factual* allegation that Mood Media improperly used any of Plaintiffs' alleged trade secrets or confidential information in any Mood Media product. *See generally* ECF No. 1; ECF No. 63; ECF No. 82; ECF No. 214. This Court agreed, noting, "the only factual allegations in the complaint that relate to Mood Media relate to allowing Stingray access to the trade secret that was conferred upon them back in 2012." ECF No. 239, Hr'g Tr. 29:1–4. Nor do any of Plaintiffs' complaints accuse Mood Media of infringing any of Plaintiffs' patents. *See id.* In contrast to Mood Media, Stingray has consistently been accused of improperly using Plaintiffs' alleged trade secrets,

*see, e.g.*, ECF No. 214 ¶¶ 91–107, and infringing Plaintiffs' patents, *see id.* ¶¶ 113–117. No such allegations have ever been made against Mood Media.

Defendants jointly moved to dismiss the First Amended Complaint. ECF No. 77. In response, Plaintiffs filed the Second Amended Complaint. ECF No. 82. Defendants then filed another motion to dismiss, arguing, among other things, that all claims against Mood Media were (i) time-barred by the relevant statute of limitations, ECF No. 148 at 7–12, and (ii) barred by the Mutual Release signed in October 2014, *id.* at 14–15. With respect to the time-bar issue, Plaintiffs argued that the statutes of limitations should be equitably tolled because, according to Plaintiffs, Stingray and Mood Media misled Hernandez, who reasonably relied on those alleged misrepresentations. ECF No. 162 at 7–11. And with respect to the general release, Plaintiffs argued that the Mutual Release did not cover the currently asserted claims, but instead "was limited to Plaintiffs' claims regarding the 'amounts owed to EGLA pursuant to the Term Sheet . . . .'" *Id.* at 15.

This Court ultimately recommended denying Defendants' motion to dismiss, except as to Plaintiffs' fraud claim, ECF No. 197, but the Court expressed skepticism in the dubious nature of all of Plaintiffs' claims, ECF No. 202. *First*, with respect to the statute-of-limitations defense, this Court said it "seems to squarely apply here" and, as a result, "it is hard to see how Defendants will not prevail based on the record presented," ECF No. 202 at 13–14. "Plaintiffs' own equitable estoppel theory to oppose the limitations affirmative defense," this Court said, "will require a Herculean effort." *Id.* at 14. *Second*, with respect to the affirmative defense based on the Mutual Release, the Court said that this affirmative defense may not be susceptible to summary adjudication given the allegations in the Second Amended Complaint that "material information was not disclosed to releasing parties" and that "fraud tainted the enforceability of the release."

ECF No. 197 at 21.

But Plaintiffs dropped the fraud claim and the unfair-competition claim in the Third Amended Complaint. *Compare* ECF No. 82 at 51–53 *with* ECF No. 214 at 51–53. And, despite this Court's sharp words of skepticism, Plaintiffs continue to plow forward with all other claims against Mood Media. *See* ECF No. 214. So the parties are now engaged in discovery.

### C.    Plaintiffs—on five separate occasions—have failed to sufficiently identify their alleged trade secrets and have failed to identify how those alleged trade secrets were supposedly improperly accessed by anybody.

Defendants have repeatedly asked Plaintiffs to identify their alleged trade secrets and explain how those alleged trade secrets were improperly accessed and used. Specifically, on February 20, 2025, Stingray Group served Interrogatory No. 1 asking Plaintiffs to identify each of their alleged trade secrets and Interrogatory No. 2 asking Plaintiffs to identify how each of those alleged trade secrets was supposedly accessed by any Defendant. ECF No. 229, 2-3. On March 31, 2025, Plaintiffs made their first attempt to identify their alleged trade secrets, responding to Interrogatory No. 1 with broad characterizations of various technologies. *Id.* Yet Plaintiffs failed to explain how the alleged trade secrets (vaguely identified in response to Interrogatory No. 1) were supposedly improperly accessed (as required by Interrogatory No. 2). *Id.* The next day, on April 1, 2025, Stingray sent Plaintiffs a letter informing them of numerous deficiencies in their initial interrogatory responses. *Id.*

Plaintiffs tried again. On April 9, 2025, they supplemented their interrogatory responses, but those responses remained deficient. *Id.* So, on April 10, 2025, Stingray sent another letter to Plaintiffs, again pointing out the inadequacies in Plaintiffs' interrogatory responses. *Id.*

Plaintiffs tried a third time. On April 17, they served a second supplemental response to Stingray Group's Interrogatory Nos. 1 and 2. *Id.* Because that response remained deficient, Stingray filed a Supplemental Motion for Hearing on April 21 for this Court to hear those issues

6

at an April 24, 2025 discovery-dispute hearing. *Id.*

The day after Stingray filed its Supplemental Motion for Hearing, on April 22, Plaintiffs tried a fourth time—serving a third supplemental response to Stingray Group's Interrogatory Nos. 1 and 2 in an attempt to adequately identify their alleged trade secrets and to explain how those trade secrets were allegedly improperly accessed. *See* Ex. A, EGLA's Supplemental Response to Stingray's Interrogatory Nos. 1 and 6 & Dr. Hernandez's Supplemental Response to Stingray's Interrogatory Nos. 1 and 6; Ex. B, EGLA's Supplemental Response to Stingray's Interrogatory No. 2. But Plaintiffs' responses remained deficient. So, at the April 24 hearing, this Court ordered Plaintiffs to supplement their interrogatory responses to identify each alleged trade secret with reasonable particularity and explain how each of those alleged trade secrets was supposedly improperly accessed by any Defendant. ECF No. 239, Hr'g Tr. 91:22–23. Plaintiffs' supplemental response is due by May 8, 2025. ECF No. 239, Hr'g Tr. 89:24–90:3.

On April 28, after the discovery-dispute hearing, Plaintiffs served their initial responses to Mood Media's Interrogatory Nos. 1 and 2—which like Stingray Group's Interrogatory Nos. 1 and 2—seeks an identification of Plaintiffs' alleged trade secrets and an explanation of how those alleged trade secrets were supposedly improperly accessed by any Defendant. Ex. C, Plaintiff's Responses to Mood Media's First Set of Interrogatories. But Plaintiffs' April 28 responses to Mood Media's interrogatories remain deficient for the same reasons because they are a nearly verbatim copy of the (deficient) interrogatory responses that Plaintiffs served on Stingray Group on April 22. *Compare* Exs. A-B *with* Ex. C. So Mood Media sent Plaintiffs a letter pointing out the continuing deficiencies in Plaintiffs' interrogatory responses. *See* Ex. D, May 2, 2025 Ltr. from L. Watt to G. Cordrey.

Thus, Plaintiffs have failed—on five separate occasions—to identify their alleged trade

secrets with reasonable particularity and to explain how those alleged trade secrets were supposedly improperly accessed by anybody.

      **D.**    **Without identifying any trade secrets or factually alleging that those trade secrets are improperly used by Mood Media, Plaintiffs now seek broad discovery into Mood Media's confidential technical information.**

On February 19, 2025, Plaintiffs served a First Set of Requests for Production on Mood Media. Ex. A. These requests seek, among other things, (i) documents relating to contracts, licenses, and agreements (*see* Ex. E, Request Nos. 1, 3, 4, 5, 7, 12); (ii) documents relating to Mood Media's communications with Plaintiffs (*see id.*, Request Nos. 2, 17); (iii) documents relating to third parties (*see id.*, Request Nos. 9, 10, 13, 18); (iv) documents relating to Mood Media's finances (*see id.*, Request Nos. 14, 23); and (v) documents relating to Mood Media's confidential technical information for its products (*see id.*, Request Nos. 6, 15–16, 18–19, 20, 22, 24–27). Mood Media agreed to produce, and has produced, documents with respect to the vast majority of Plaintiffs' document requests, but objected to the requests relating to Mood Media's confidential technical information. *See* Ex. F, Mood Media's Resp. & Objs. to Requests 6, 15, 16, 18, 19, 20, 22, 24–27. Mood Media explained that the requests relating to its confidential technical documents were overly broad, unduly burdensome, and not proportional to the needs of the case because those requests seek information irrelevant to Plaintiffs' claims and defenses. *Id.*

After exchanging letters, Mood Media and Plaintiffs met and conferred on April 7, 2025 regarding Mood Media's discovery responses. Although the parties were able to resolve some issues, they reached an impasse with respect to Plaintiffs' requests for Mood Media's confidential technical documents. On April 14, Plaintiffs filed a Motion for a Hearing seeking to compel the production of Mood Media's confidential technical documents. ECF No. 216.

On April 15, Mood Media sought a meet and confer regarding its intent to move for a protective order with respect to its confidential technical documents. ECF No. 226 at 2. Later that

day, on April 15, Plaintiffs emailed Mood Media, suggesting that Plaintiffs' supplemental response to Stingray Group's Interrogatory No. 1 identified Plaintiffs' trade secrets with sufficient particularity. *Id.* But, on April 16, Mood Media explained that Plaintiffs' supplemental response to Stingray Group's Interrogatory No. 1 did not resolve the parties' dispute for the reasons discussed above. *Id.* The parties then met and conferred regarding Mood Media's motion for a protective order on April 16. *Id.* The parties were unable to reach an agreement.

So this Court held a hearing on April 24, 2025 with respect to three issues: (1) Plaintiffs' motion to compel with respect to their Request Nos. 6, 15, 16, 18, 19, 20, 22, 24-27; (2) Mood Media's motion for a protective order with respect to those same documents requests; and (3) Stingray's motion to compel responses to Stingray Group's Interrogatory Nos. 1 and 2 and Stingray Music's Interrogatory Nos. 1 and 2. ECF No. 238. The Court deferred resolution of Plaintiffs' motion to compel and Mood Media's motion for a protective order until after Plaintiffs provide complete responses with respect to Stingray's motion to compel, which, as noted above, the Court granted. ECF No. 239, Hr'g Tr. 62:18–20, 90:9–91:16. In addition, the Court authorized Mood Media to file this motion and incorporated memorandum of law with respect to its motion for a protective order. *Id.* at 95:17–96:11.

### III.    LEGAL STANDARD

Federal Rule of Civil Procedure 26(b)(1) says: "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." But "discovery, like all matters of procedure, has ultimate and necessary boundaries." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947).

One such boundary is set forth in Rule 26(c). It provides that a court may, for good cause, issue an order protecting a party or person from annoyance, embarrassment, oppression, or undue burden or expense. Subsection (1)(G) of Rule 26(c) "specifically authorizes a protective order prohibiting or designating the manner of disclosure of a 'trade secret or other confidential research, development, or commercial information.'" *Empire of Carolina, Inc. v. Mackle*, 108 F.R.D. 323, 325–26 (S.D. Fla. 1985) (quoting Fed. R. Civ. P.26(c)(1)(G)). In issuing such an order, the district court must "balance the need for protection of the trade secrets against the claim of injury resulting from disclosure." *Id.* at 326; *see also Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985) (district court acted within its discretion by holding that need to keep study participants' names confidential outweighed need for that discovery).

Rule 26(c) also provides courts with broad discretion to modify the timing and sequence of discovery. *DeRubeis v. Witten Techs., Inc.*, 244 F.R.D. 676, 678 (N.D. Ga. 2007). "The Court's exercise of discretion to appropriately fashion the scope and effect of discovery will be sustained unless it abuses that discretion to the prejudice of a party." *Id.*

## IV.    ARGUMENT

Plaintiffs' requests for Mood Media's confidential technical information should be denied for two independent reasons. *First*, this discovery is neither relevant nor necessary to Plaintiffs' factual allegations in this case. *Second*, Plaintiffs have repeatedly failed to adequately identify their alleged trade secrets and explain how those alleged trade secrets were improperly accessed, making the disclosure of Mood Media's confidential technical information improper at this time. Each of these reasons is explained in more detail below.

### A.    Plaintiffs' requested discovery is neither relevant nor necessary to any of the factual allegations in this case.

Courts have developed a three-part test for determining whether to issue a protective order

to prevent the disclosure of a party's "commercially sensitive and confidential information." *Duracell Inc. v. SW Consultants, Inc.*, 126 F.R.D. 576, 578 (N.D. Ga. 1989) (citing *Empire of Carolina*, 108 F.R.D. at 326). "A party seeking [the] protective order must establish: (1) that the information sought to be protected is 'confidential', and (2) that its disclosure might be harmful." *Id.* (citing *Empire of Carolina*, 108 F.R.D. at 326). Mood Media has met this initial burden here by submitting the Declaration of Trey Courtney, which explains that Mood Media's "technical documentation is maintained as confidential and not shared with Mood Media's competitors or customers" and that "[t]he disclosure of Mood Media'[s] confidential technical documents to one of Mood Media's competitors or customers would significantly harm Mood Media's competitive position in the market place." Ex. G, Courtney Decl. ¶¶ 2–3. "The burden then shifts to the party seeking the information"—Plaintiffs here—"to show: (3) that the information sought is *relevant* and *necessary* at this point in the litigation." *Duracell*, 126 F.R.D. at 578 (emphasis added) (citing *Empire of Carolina*, 108 F.R.D. at 326). Plaintiffs cannot meet that burden here.

### 1. Plaintiffs did not—and cannot—show that Mood Media's confidential technical information is relevant.

Discovery is not relevant "if the inquiry is based on the party's mere suspicion or speculation." *Micro Motion, Inc. v. Kane Steel Co., Inc.*, 894 F.2d 1318, 1326 (Fed. Cir. 1990). Here, Plaintiffs' requests for Mood Media's confidential technical information are based on nothing but "mere suspicion or speculation" because Plaintiffs' four complaints here have never included a *single* factual allegation that any of Mood Media's products improperly use Plaintiffs' alleged trade secrets. Nor have Plaintiffs alleged that any of Mood Media's products infringe any of Plaintiffs' patents in suit. So confidential technical information regarding Mood Media's products are not relevant to any claim or defense. *See Am. Standard Inc. v. Pfizer Inc.*, 828 F.2d 734, 741–42 (Fed. Cir. 1987).

11

The Federal Circuit's holding in *American Standard* is illustrative. There, the plaintiff sought confidential sales data from Biomet, an entity that was *not* accused of infringing the patent in suit. *Id.* at 741–42. Biomet sought a protective order and submitted an affidavit showing that the disclosure of the confidential sales data to its competitors—the parties in suit—would cause harm. *Id.* at 740–41. The district court granted the protective order. *Id.* The Federal Circuit affirmed, reasoning in part that the requested discovery was not relevant because the plaintiff "failed to carry its burden to show some relationship between the invention claimed in [the patent in suit] and [the sought-after] confidential sales data." *Id.* at 742.

The same result applies here. Like Biomet in *American Standard*, Mood Media is not accused of patent infringement. Plaintiffs instead allege only that Mood Media supposedly gave Stingray unauthorized access to Plaintiffs' technology. *See, e.g.* Third Am. Compl. ¶ 3. The Third Amended Complaint is also devoid of *any* factual allegation that Mood Media improperly *uses* any of Plaintiffs' alleged trade secrets in any of Mood Media's products. *See supra* Section II.B. So, like the result in *American Standard*, Plaintiffs cannot satisfy their burden to show "some relationship" between the allegations in the complaint and Mood Media's confidential technical information for its products. *Am. Standard*, 828 F.2d at 742.

This is not a case where Plaintiffs lacked information about Mood Media's products. In fact, Plaintiffs have produced over 200 pages of publicly available technical documentation regarding Mood Media's products. *See* Ex. H. This documentation includes: (i) technical information about Mood Media's MOOD HARMONY™ product, *see* EGLA-MOOD-000025–35, EGLA-MOOD-000083–121; (ii) technical information about Mood Media's MOOD MVISION product, *see id.* EGLA-MOOD-000070–82; and (iii) technical information about Mood Media's PROFUSION® product, *see id.* EGLA-MOOD-000123–133, EGLA-MOOD-000175–

205. Despite having this publicly available technical information, Plaintiffs could not make out a Rule 11 basis to allege patent infringement against Mood Media or to allege that any of Mood Media's products improperly *use* Plaintiffs' alleged trade secrets. *See supra* Section II.B. Plaintiffs cannot use the discovery process now to try to make out claims that they did not have a Rule 11 basis to allege in their complaints. *See Micro Motion*, 894 F.2d at 1327 ("The discovery rules are designed to assist a party to prove a claim it reasonably believes to be viable *without discovery*, not to find out if it has any basis for a claim.") (emphasis in original).

In sum, Plaintiffs have not made any factual allegations that Mood Media's products improperly use Plaintiffs' alleged trade secrets. Thus, Plaintiffs cannot meet their burden to show that discovery into Mood Media's confidential technical information is relevant.

### 2. Plaintiffs did not—and cannot—show that Mood Media's confidential technical information is necessary.

"Courts have long held that while the standard of relevancy in discovery is a liberal one, it is not so liberal as to allow a party to roam in the shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so." *S. Gardens Citrus Processing v. Barnes Richardson & Colburn*, No. 2:11-cv-00377-99SPC, 2012 WL 5877533, at *2 (M.D. Fla. Nov. 20, 2012) (citing *Henderson v. Holiday CVS, L.L.C.*, 269 F.R.D. 682, 686 (S.D. Fla. 2010)). Here, Mood Media's confidential technical information is, at best, within "the shadow zones of relevancy." *Id.* Allowing discovery into such information would significantly expand the scope of this case and is therefore not necessary.

For example, the confidential technical information that Plaintiffs seek would require Mood Media to retain a technical expert to analyze not only Mood Media's confidential technical documents, but also Plaintiffs' confidential technical documents and all other Defendants' confidential technical documents. And because Plaintiffs also seek Mood Media's confidential

source code, the requested discovery would also require Mood Media to retain a source-code expert to review *all* of the source code in this case from *each* of the parties. The huge expansion in the scope of this case that the requested discovery would cause is unduly burdensome and not proportional to the needs of this case given that Plaintiffs' claims are of dubious merit and given that the factual allegations currently lodged against Mood Media are <u>*not*</u> at all directed to any improper use of Plaintiffs' alleged trade secrets. *See Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1366–70 (11th Cir. 1997) (district court abused its discretion by compelling broad discovery on a claim of dubious merit).

\* \* \*

Because Plaintiffs have no factual allegations that Mood Media improperly uses Plaintiffs' trade secrets, nor have Plaintiffs shown that Mood Media's confidential technical information is relevant and necessary to the case, Mood Media respectfully requests a protective order preventing the disclosure of its confidential technical information.

> **B.     Plaintiffs have not adequately identified their alleged trade secrets to warrant discovery into Mood Media's confidential technical information.**

In addition to the lack of relevance and necessity of the requested discovery, Plaintiffs are also not entitled to this discovery because Plaintiffs have not identified their alleged trade secrets with reasonable particularity. Courts have required the trade-secret plaintiffs to identify their trade secrets with reasonable particularity before requiring the defendant to produce technical documents. *See DeRubeis*, 244 F.R.D. at 682. There are three policy reasons behind this requirement: (1) "if discovery on the defendant's trade secrets were automatically permitted, lawsuits might regularly be filed as 'fishing expeditions' to discover the trade secrets of a competitor;" (2) "until the trade secret plaintiff has identified the secrets at issue with some specificity, there is no way to know whether the information sought is relevant;" and (3) "it is

difficult, if not impossible, for the defendant to mount a defense until it has some indication of the trade secrets allegedly misappropriated." *Id.* at 681. These same policy concerns apply here.

Plaintiffs—on five separate occasions—have failed to identify their trade secrets with reasonable particularity and have failed to explain how those alleged trade secrets were supposedly improperly accessed by any Defendant. *See supra* Section II.C. Instead, Plaintiffs' responses contain extraneous discussion of material that is obviously not a trade secret. *See, e.g.* Exs. A-B. Moreover, while Plaintiffs generally point to their source code, they fail to identify the specific process performed by that source code that supposedly amounts to a trade secret. This is particularly problematic here given that Plaintiffs' own source code relies on open source—i.e., publicly available—software. In addition, Plaintiffs have failed to identify the full circumstances of any alleged disclosure, including the specific dates, means, and individuals involved. Without this information, Mood Media is unable to ascertain what aspects of its own products are relevant, nor is Mood Media able to prepare its own defense against Plaintiffs' (vaguely identified) misappropriation claims.

The *DeRubeis* case is instructive here. In that case, the court denied the trade secret owner's motion to compel the production of technical information, and instead granted a motion for a protective order, because the trade secret owner had not adequately identified its trade secrets. 244 F.R.D. at 679.  There, the trade secret owner had only provided "the end result of, or the functions performed by, the claimed trade secrets," rather than the trade secret itself. *Id.* In reaching the decision to preclude production of the requested technical information, the court noted that "this approach will prevent the needless disclosure of [the trade secret defendant's] confidential information in the event that [the trade secret owner] is engaged in a fishing expedition" and "places appropriate bounds on trade secret discovery and prevents unnecessary disclosure of [the

trade secret defendant's] trade secrets not at issue." *Id.* at 682.

The reasoning from the *DeRubeis* case applies with even greater force here. At least in that case, the trade secret defendant was alleged to be "using [the trade-secret plaintiff's] trade secrets to compete in the industry." *Id.* at 678. Here, in contrast, no such allegation has been lodged against Mood Media. *See supra* Section II.B. And, like the trade secret owner in *DeRubeis*, Plaintiffs here have not adequately identified their trade secrets. *See supra* Section II.C. Thus, as in *DeRubeis*, Mood Media requests a protective order preventing the disclosure of its confidential technical information.

## V.      CONCLUSION

Mischief "results when a district court effectively abdicates its responsibility to manage a case involving contentious litigants and permits excessive and dilatory discovery tactics to run amok." *Chudasama*, 123 F.3d at 1355. The Court's duty to manage discovery "becomes all the more imperative when the contested claim is especially dubious." *Id.* at 1368. That is the case here. Despite the dubious nature of Plaintiffs' claims (which are likely time-barred by the relevant statutes of limitations and likely barred by a general release signed over a decade ago), Plaintiffs seek broad and unduly burdensome discovery into Mood Media's confidential technical information—without a *single* factual allegation implicating that information. These discovery requests are therefore nothing more than an improper fishing expedition.

For the reasons explained above, the Court should issue a protective order preventing the disclosure of Mood Media's confidential technical information because that information is neither relevant nor necessary to the factual allegations in this case. Alternatively, the Court should issue a protective order preventing the disclosure of Mood Media's confidential technical information *until after* Plaintiffs identify their alleged trade secrets with reasonable particularity and explain how each of those alleged trade secrets was supposedly improperly accessed by any Defendant,

including the specific who, what, when, and where of such improper access.

**CERTIFICATE OF CONFERRAL**

Pursuant to Local Rule 7.1(a)(3), I hereby certify that counsel for Mood Media has conferred by telephone with Plaintiffs on April 7, 2025 and April 16, 2025 in good faith to resolve the issues raised in the motion and has been unable to do so.

Dated:  May 8, 2025                              Respectfully submitted,

<div style="margin-left:40%">

/s/*David C. Banker*
Jonathan Tuminaro, Ph.D.
(admitted pro hac vice)
Uma Everett (admitted pro hac vice)
Michael Specht (admitted pro hac vice)
STERNE, KESSLER, GOLDSTEIN
 & FOX P.L.L.C.
1101 K Street NW, 10th Floor
Washington, DC 20005
(202) 371-2600
jtuminar@sternekessler.com
ueverett@sternekessler.com
mspecht@sternekessler.com

David C. Banker (FBN #35977)
Bush Ross, P.A.
1801 North Highland Avenue
Tampa, Florida 33602-2656
Telephone: (813) 224-9255
Fax: (813) 223-9620
dbanker@bushross.com

*Counsel for Defendant Mood Media, LLC*

</div>

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on May 8, 2025, I electronically filed this document with the Clerk of the Court using CM/ECF. I also certify that this document was served via e-mail to all counsel of record.

<div align="right">

*/s/David Banker*
David C. Banker

</div>