UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No.: 1:24-cv-21226-RUIZ/TORRES

**DR. EDWIN A. HERNANDEZ, and EGLA CORP.,**

**J**URY **T**RIAL **D**EMANDED

*Plaintiffs,*

v.

**STINGRAY GROUP INC. f/k/a STINGRAY DIGITAL GROUP, INC., STINGRAY MUSIC USA, INC., MOOD MEDIA LLC f/k/a MOOD MEDIA CORPORATION, AT&T ENTERPRISES, LLC f/k/a AT&T Corp., MILLICOM INTERNATIONAL SERVICES, LLC, BLUE STREAM COMMUNICATIONS, LLC dba BLUE STREAM FIBER, and DOES 1-100,**

*Defendants.*
_____/

**<u>PLAINTIFFS DR. EDWIN A. HERNANDEZ AND EGLA CORP.'S OPPOSITION TO MOOD MEDIA'S MOTION AND INCORPORATED MEMORANDUM FOR PROTECTIVE ORDER</u>**

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..................................................................................................................1

II. FACTUAL BACKGROUND...............................................................................................2

III. LEGAL STANDARD...........................................................................................................4

IV. ARGUMENT........................................................................................................................5

    A. Mood Media Failed to Meet its Burden to Show "Specific Harm" ..........................5

    B. Plaintiffs' Requested Discovery is Relevant and Necessary to Plaintiffs' Case........................................................................................................................7

    C. The Court Already Determined that Plaintiffs Identified Their Trade Secrets with Reasonable Particularity.....................................................................9

V. CONCLUSION...................................................................................................................11

i

# TABLE OF AUTHORITIES

**Cases**                                                                                                   **Page(s)**

*Am. Standard Inc. v. Pfizer Inc.*,
    828 F.2d 734 (Fed. Cir. 1987) ..................................................................................... 5, 6

*Arthrex, Inc. v. Parcus Med., LLC*,
    No. 210CV151FTM36DNF, 2010 WL 11622727 (M.D. Fla. Dec. 16, 2010) ........................ 10

*FlexSteel Pipeline Technologies, Inc. v. Chen*,
    5:16-cv-239-MCR-GRJ, 2017 WL 11672823 (N.D. Fla. Nov. 30, 2017) ................................. 9

*Jabil Inc. v. Essentium, Inc.*,
    No. 8:19-cv-1567-T-23SPF, 2020 WL 708140 (M.D. Fla. Feb. 12, 2020) ............................... 9

*McArdle v. City of Ocala, FL*,
    463 F. Supp. 3d 1288 (M.D. Fla. 2020) ................................................................................ 4, 5

*Oppenheimer Fund, Inc. v. Sanders*,
    437 U.S. 340 (1978) ............................................................................................................... 7, 9

**Other Authorities**

Fed. R. Civ. P. 26(c) ................................................................................................................. 4, 5, 8

Fed. R. Civ. P. 26(c)(2) .................................................................................................................. 5, 6

Federal Rule of Civil Procedure 26(b)(1) ......................................................................................... 7

Plaintiffs Edwin A. Hernandez and EGLA Corp. (collectively, "Plaintiffs") hereby submit this opposition to Defendant Mood Media's motion for protective order (D.E. 243).

## I.     INTRODUCTION

Mood Media seeks to shield its technical documents from discovery through a protective order that lacks legal foundation and factual support. This motion represents nothing more than an attempt to avoid producing documents that are directly relevant to Plaintiffs' trade secret misappropriation claims—claims that this Court has already determined are adequately pleaded—for trade secrets that the Court has already determined are defined with reasonable particularity.

Mood Media's Motion fails on three fundamental grounds. First, Mood Media cannot demonstrate the "specific harm" required to justify a protective order, particularly where this Court has already entered a Stipulated Protective Order that provides robust safeguards for confidential information. Second, the technical documents Mood Media seeks to withhold are not only relevant but essential to Plaintiffs' case. Plaintiffs allege that Mood Media used, disclosed, commercialized and continues to commercialize Plaintiffs' trade secrets. Without access to Mood Media's technical documents, Plaintiffs cannot prove the scope and nature of this ongoing misappropriation, nor can they rebut Mood Media's denials of wrongdoing.  Finally, this Court has already determined that Plaintiffs identified their trade secrets with reasonable particularity, eliminating Mood Media's primary objection to discovery.

Mood Media's arguments fail to show otherwise.  Accordingly, the Court should deny Mood Media's Motion and compel production of the requested technical documents under the protection of the existing Stipulated Protective Order.

## II. FACTUAL BACKGROUND

In their Second, Third, and Fourth Amended Complaints (D.E. 82, 214, 259)[1], Plaintiffs allege that Mood Media breached the parties' contracts and misappropriated Plaintiffs' trade secrets. D.E. 259 ¶¶ 123–41, 190–203. Specifically, Plaintiffs allege the following against Mood Media in connection with Plaintiffs' claims for trade secret misappropriation:

- "As explained below, ***Defendants used, and continue to use***, Dr. Hernandez's trade secrets . . . to offer streaming audio and music services to millions of subscribers in the U.S. and worldwide." *Id.* ¶ 18 (emphasis added).

- "As part of the services rendered for Mood Media, for example, Dr. Hernandez hosted in his platform all the required web-assets, music, and user interfaces that were necessary for Mood Media's services like DMX2GO or mobile applications ***that were being commercialized by Mood Media/DMX***." *Id.* ¶ 46 (emphasis added).

- "Stingray and ***Mood Media*** have misappropriated Dr. Hernandez's Trade Secrets in one or more of the following ways: . . . b) By disclosing and/or ***using*** Dr. Hernandez's Trade Secrets without Plaintiffs' consent; c) By disclosing and/or ***using*** Dr. Hernandez's Trade Secrets without Plaintiffs' consent . . . d) By disclosing and/or ***using*** Dr. Hernandez's Trade Secrets without Plaintiffs' consent . . . and e) By disclosing and/or ***using*** Dr. Hernandez's Trade Secrets without Plaintiffs' consent . . . ." *Id.* ¶ 126 (emphasis added).

- "On information and belief, Stingray and ***Mood Media*** have ***used*** and/or disclosed and continue to ***use*** and disclose Dr. Hernandez's Trade Secrets, without Plaintiffs' consent or permission, in an attempt to benefit themselves." *Id.* ¶ 138 (emphasis added).

- "As a direct and proximate result of Stingray's and ***Mood Media***'s willful, improper, and unlawful ***use*** and/or disclosure of Dr. Hernandez's Trade Secrets, Plaintiffs have suffered and continue to be damaged." *Id.* ¶ 140 (emphasis added).

On February 19, 2025, Plaintiffs served their First Set of Requests for Production to Mood Media. *See* Ex. A. Plaintiffs' discovery requests sought documents pertaining to their trade secret misappropriation claims, which implicate technical aspects of the parties' music streaming services. *See, e.g.*, D.E. 259 ¶ 18. Mood Media refused to produce any technical documents in its

---

[1] Unless stated otherwise, the paragraphs and allegations in Plaintiffs' Fourth Amended Complaint that are referenced herein are the same as the paragraphs and allegations in Plaintiffs' Third Amended Complaint (D.E. 214).

2

possession, custody, or control, despite multiple conferences with counsel wherein Plaintiffs repeatedly explained the relevance and necessity of the requested documents.

On March 28, 2025, Mood Media served its First Set of Interrogatories on Plaintiffs. Mood Media's Interrogatory Nos. 1 and 2 were substantially similar to Stingray's Interrogatory Nos. 1 and 2. Plaintiffs' response to Mood Media's First Set of Interrogatories was due on April 28, 2025.

Accordingly, pursuant to Magistrate Judge Torres' discovery procedures, on April 14, 2025, Plaintiffs filed a Motion for Hearing. *See* D.E. 216. Defendants also submitted issues to the Court in response, including Mood Media's assertion that it is not obligated to produce technical documents in response to Plaintiffs' discovery requests. *See* D.E. 226. The parties appeared before Magistrate Judge Torres for hearing on April 24, 2025. During the hearing, Magistrate Judge Torres determined that Plaintiffs had identified their trade secrets with reasonable particularity. Apr. 24, 2025 Tr. 51:23–24 ("This is detailed enough at least to understand what it is that / he's claiming it is"). The Court ordered Plaintiffs to supplement their response to Stingray's Interrogatory No. 2, which concerns the circumstances surrounding disclosure of Plaintiffs' trade secrets, to include "[w]hen was that [trade secret] disclosed, how was it disclosed, and to whom was / it disclosed to." Apr. 24, 2025 Tr. 52:4–5. Accordingly, Plaintiffs supplemented their response to Mood Media's Interrogatory No. 2 on May 12, 2025, and again on May 22, 2025 to further address issues raised during a meet and confer with Stingray. On May 22, 2025, Plaintiffs supplemented their response to Mood Media's Interrogatory No. 2. *See* Ex. B. Plaintiffs' response to Mood Media's Interrogatory No. 2 now includes information regarding and documents showing the dates when and the means and/or manner by which each trade secret was accessed or disclosed, as well as the location of the trade secret at the time. *See id.* At the hearing, the Court held Mood

3

Media's objections to Plaintiffs' discovery in abeyance to allow Mood Media briefing on the issue in the form of a motion for protective order. Apr. 24, 2025 Tr. 96:12–16.

In its Motion, Mood Media attempts to argue its counterclaim for breach of contract, *see* D.E. 243 at 2–4, and its statute of limitations defense, *see id.* at 5–6. Neither Mood Media's counterclaim nor Mood Media's statute of limitation defense, which Defendants raised in their Motion to Dismiss, are accurately portrayed or relevant to this discovery dispute. First, as to Mood Media's counterclaim, the parties' Settlement Agreement only released Dr. Hernandez's claims against Mood Media that relate to Plaintiffs' unpaid invoices to DMX. *See* Ex. C. Further, as Mood Media admits in its Motion, *see* D.E. 243 at 5, the Court denied Defendants' Motion to Dismiss, "adopt[ing] the Report's well-reasoned decision not to time-bar Plaintiffs' claims, because this circuit has made clear that dismissal on tolling grounds" would be inappropriate. D.E. 212 at 3. The Court also rejected Mood Media's argument that the Settlement Agreement warranted dismissal of Plaintiffs' claims. *See id.* at 2. Despite Mood Media's argument here, the Settlement Agreement plainly states that "[t]he purpose of this Agreement is to settle and compromise the ***amounts in controversy between the Parties***." D.E. 148-3 ¶ 1. Considering that the Settlement Agreement does not bar Plaintiffs' claims and that the Court denied Defendants' Motion to Dismiss, Plaintiffs' claims against Mood Media for misappropriation of Plaintiffs' trade secrets remain. Therefore, Plaintiffs are entitled to discovery on those claims and Mood Media's defenses. *See* Fed. R. Civ. P. 26(c).

### III.  LEGAL STANDARD

On a motion for a protective order, "[t]he moving party must demonstrate good cause with evidentiary support 'that each responsive document that is withheld is truly confidential and a specific harm would result from its disclosure or loss of confidentiality.'" *McArdle v. City of*

4

*Ocala, FL*, 463 F. Supp. 3d 1288, 1289 (M.D. Fla. 2020) (quoting *Wyndham Hotels and Resorts, LLC v. Leisure Getaways, Inc.*, No. 6:17-cv-501-Orl-31GJK, 2017 WL 10059023, at *3 (M.D. Fla. Oct. 25, 2017)); *see also* Fed. R. Civ. P. 26(c). Thus, "[g]eneralized concerns, conclusory statements, or unsupported contentions are insufficient reasons for entry of a protective order." *McArdle*, 463 F. Supp. 3d at 1289 (quoting *Wyndham Hotels and Resorts, LLC*, 2017 WL 10059023, at *3) (alteration in original). If the movant meets its burden, "the burden shifts to the party seeking discovery to establish that disclosure of trade secrets and confidential information is relevant and necessary to its case." *Am. Standard Inc. v. Pfizer Inc.*, 828 F.2d 734, 741 (Fed. Cir. 1987). If the movant fails to meet its burden, the court may deny the motion in whole or in part and order that the movant provide or permit discovery. Fed. R. Civ. P. 26(c)(2).

## IV.    ARGUMENT

The Court should deny Mood Media's Motion because Mood Media failed to meet its burden to show that a protective order is required to prevent Mood Media from suffering a specific harm; Plaintiffs' requested discovery is relevant and necessary to its case; and the Court has already held that Plaintiffs identified their trade secrets with reasonable particularity.

### A.    Mood Media Failed to Meet its Burden to Show "Specific Harm"

As a threshold matter, Mood Media has not met its burden to show that "specific harm" would result from disclosure of its technical documents if the Court denies Mood Media's Motion.[2] The Court in this case has entered a Stipulated Protective Order that allows the parties to produce confidential and sensitive information subject to various restrictions on distribution. D.E. 213. For example, the Stipulated Protective Order provides for a "RESTRICTED – OUTSIDE ATTORNEYS' EYES ONLY" designation that limits disclosure of the designated document to

---

[2] Plaintiffs do not contest that Mood Media's technical documents may contain confidential information.

5

"(a) outside counsel of record in this Action for the Parties" and "(b) employees of such counsel assigned to and reasonably necessary to assist such counsel in the litigation of this Action," experts, consultants that are "reasonably necessary to assist counsel with the litigation of this Action," mediators, the author or owner of the document, and the Court.  D.E. 211-1 ¶¶ 6(a)–(b), (e)–(i), 11.  Thus, any document so designated cannot be disclosed to the parties in this action.  *See id.*  Mood Media never mentions the Stipulated Protective Order, let alone articulates how Mood Media will suffer harm from disclosure of its technical documents to the persons identified above, who are not Mood Media's competitors or customers.  *See generally* D.E. 243.

Mood Media's reliance on *American Standard Inc. v. Pfizer Inc.*, 828 F.2d 734 (Fed. Cir. 1987), *see* D.E. 243 at 12, is misplaced for this reason.  As Mood Media admits in its Motion, the defendant in *American Standard* sought a protective order to prevent disclosure of confidential information "to its competitors—***the parties in suit***."  D.E. 243 at 12 (citing *Am. Standard Inc.*, 828 F.2d at 740–41).  In fact, the Federal Circuit in *American Standard* recognized that they may not have granted the defendant a protective order if the plaintiff had shown that "disclosure would be restricted to counsel."  *Id.* at 741.

Therefore, Mood Media's assertion that "[t]he disclosure of Mood Media'[s] confidential technical documents to one of Mood Media's competitors or customers would significantly harm Mood Media's competitive position in the market place" (D.E. 243 at 11) is not an issue here because the Stipulated Protective Order allows Mood Media to restrict disclosure of its technical information to counsel and those persons reasonably necessary to assist counsel.  *See* D.E. 211-1 ¶¶ 6(a)–(b), (e)–(i), 11.

6

B.      **Plaintiffs' Requested Discovery is Relevant and Necessary to Plaintiffs' Case**

Even if the Court determines that Mood Media met its burden to establish specific harm, which it has not, the Court should still deny the Motion because Mood Media's technical documents are relevant and necessary to Plaintiffs' case. Pursuant to Federal Rule of Civil Procedure 26(b)(1), parties can obtain discovery regarding "any non-privileged matter that is relevant to any party's claim or defense." The Supreme Court has held that under "the notice-pleading system established by the Rules, discovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citing *Hickman v. Taylor*, 329 U.S. 495, 500–01 (1947)). Further, the Court in *DeRubeis v. Witten Technologies, Inc.*, which Mood Media relies on throughout its Motion, *see* D.E. 243 at 11, 15–16, held that "there is no talismanic procedure the Court may apply in order to obtain the best result in any given [trade secret] case" regarding the order and scope of discovery. 244 F.R.D. 676, 681 (N.D. Ga. 2007).

Plaintiffs here brought causes of action against Mood Media for misappropriation of Plaintiffs' trade secrets, *see* D.E. 259 ¶¶ 123–41, each of which has been defined with reasonable particularity. *See infra*, § C. Plaintiffs assert that Mood Media both commercialized Plaintiffs' trade secrets and disclosed and/or used them without Plaintiffs' consent. *See, e.g.*, *id.* ¶¶ 18, 46, 126, 138, 140. Plaintiffs' requests for production seek documents that would reveal the extent of Mood Media's misappropriation, which is directly relevant to Plaintiffs' claims and allegations in the Fourth Amended Complaint. *See, e.g.*, Ex. A at 7 ("REQUEST FOR PRODUCTION NO. 6: DOCUMENTS sufficient to show the operation of Mood Media's Harmony System, including but not limited to, the hardware components and software."). Mood Media does not cite to a single

7

case to support the argument that discovery is limited to a single *theory* of the claims asserted against it. *See generally* D.E. 243.

Even if the Court finds that Plaintiffs are limited to discovery on a theory of misappropriation by improper disclosure, Mood Media's technical documents are still relevant and necessary to this litigation. For example, Mood Media denies Plaintiffs' allegations that Mood Media improperly disclosed Plaintiffs' trade secrets to Stingray. *See, e.g.*, D.E. 234 ¶ 126. Plaintiffs cannot ascertain the extent of the confidential information disclosed to Stingray, which Plaintiffs allege contains their trade secrets, if Plaintiffs do not have access to the technical documents containing that information. Therefore, Mood Media's technical information is within the realm of relevant discovery because it pertains both to Plaintiffs' claims against Mood Media and Mood Media's defense, *see* Fed. R. Civ. P. 26(c), and is necessary at least to rebut Mood Media's denial of Plaintiff's claims.

Mood Media's argument that "[a]llowing discovery into such information would significantly expand the scope of this case and is therefore not necessary," D.E. 243 at 13, is exaggerated and unsupported. Further, the Court already cast doubt on this so-called expansion during the April 24 hearing. *See* Apr. 24, 2025 Tr. 38:13–39:19 ("So I don't know that you can make a leap that just / because they get that information all of the sudden the case / has been expanded."). The Court was right to cast doubt upon this argument. First, Mood Media's assertion that it will need an expert to review technical documents and source code from all Defendants, *see* D.E. 243 at 13–14, is flawed for at least three reasons: (1) Mood Media provides no explanation as to why this would be necessary; (2) Plaintiffs only assert misappropriation against Mood Media and Stingray and the only parties who have produced source code are Plaintiffs and Stingray; and (3) that Mood Media will, in theory, have to retain an expert to rebut Plaintiffs' technical expert

8

anyway. Second, Mood Media does not cite to a single case holding that information is not necessary if it allegedly expands the scope of the case. *See id.*

Further, contrary to Mood Media's argument that its technical documents are irrelevant because Plaintiffs do not name specific Mood Media products in their Complaints, *see* D.E. 243 at 11, "discovery is not limited to issues raised by the pleadings." *Oppenheimer Fund, Inc.*, 437 U.S. at 351.[3]

Therefore, the Court should deny Mood Media's Motion and compel Mood Media to produce technical documents in response to Plaintiffs' discovery requests.

## C.     The Court Already Determined that Plaintiffs Identified Their Trade Secrets with Reasonable Particularity

The Court has already determined that Plaintiffs identified their trade secrets with reasonable particularity. *See* Apr. 24, 2025 Tr. 50:12–14 ("I agree, [Plaintiffs' response to] interrogatory No. 1 is much / more specific in terms of what you are alleging are trade / secrets of value that he has" as compared to other cases holding that trade secrets were described with reasonable particularity"), 51:23–24 ("This is detailed enough at least to understand what it is that / he's claiming it is"); *see also Jabil Inc. v. Essentium, Inc.*, No. 8:19-cv-1567-T-23SPF, 2020 WL 708140, at *4 (M.D. Fla. Feb. 12, 2020) (holding plaintiff identified alleged trade secrets with reasonable particularity because it listed elements of trade secret, provided information of design elements, and identified documents containing trade secret); *FlexSteel Pipeline Technologies, Inc. v. Chen*, 5:16-cv-239-MCR-GRJ, 2017 WL 11672823, at *3 (N.D. Fla. Nov. 30, 2017) (holding plaintiff identified trade secrets with reasonable particularity because description of trade secrets as "Pipe Designs as embodied in the '397 Patent and Chinese Patent" was "sufficient to place

---

[3] Mood Media's assertion that "[n]or have Plaintiffs alleged that any of Mood Media's products infringe any of Plaintiffs' patents in suit," D.E. 243 at 11, is irrelevant to this dispute.

9

[defendant] on notice of the nature of [plaintiff's] claims"); *Arthrex, Inc. v. Parcus Med., LLC*, No. 210CV151FTM36DNF, 2010 WL 11622727, at *2 (M.D. Fla. Dec. 16, 2010) (holding plaintiff identified trade secrets with reasonable particularity where plaintiff stated its trade secrets included "confidential cost information, pricing information, volume information, and profit margin information").

Mood Media misrepresents the Court's directive to the Parties during the April 24 hearing. Mood Media cites to page 91, lines 22 to 23 of the hearing transcript for its contention that the Court "ordered Plaintiffs to identify each alleged trade secret with reasonable particularity." D.E. 243 at 7. Page 91, lines 22 to 23 of the transcript provides, "[s]o we have three supplementations. [Plaintiffs' response to Stingray's] Interrogatory 2 / and then 1 and 2 to Stingray Music." Apr. 24, 2025 Tr. 91:22–23. Stingray Music's Interrogatory Nos. 1 and 2 request identification and circumstances surrounding disclosure of "Alleged ***Non-Trade Secret*** Confidential and Proprietary Information," Exs. D-E (emphasis added), not Plaintiffs' trade secrets.[4]

Further, after the hearing, Plaintiffs supplemented their responses to Stingray's Interrogatory No. 2 and Mood Media's Interrogatory No. 2 to include "[w]hen was that [trade secret] disclosed, how was it disclosed, and to whom was / it disclosed to." Apr. 24, 2025 Tr. 52:4–5; *see* Ex. B. Plaintiffs' responses to Stingray and Mood Media's Interrogatory No. 2 now includes information regarding and documents showing when each trade secret was disclosed, where Plaintiffs' servers were shipped, when and how Mood Media representatives accessed Plaintiffs' servers, which of Mood Media's employees knew where the servers were being shipped, when Plaintiffs, and how Mood Media learned of the architecture of Plaintiffs' trade secret systems. *See* Ex. B.

---

[4] These interrogatories sought information in connection with Plaintiffs' claim for unjust enrichment, which has since been dismissed. *See* D.E. 259.

10

Mood Media's other arguments also fail to establish that Plaintiffs have not identified their trade secrets with reasonable particularity because they rely on case law already reviewed and considered by this Court before the Court determined that Plaintiffs met the burden of identifying their trade secrets.

## V. CONCLUSION

Mood Media failed to meet its burden to justify a protective order. The company cannot demonstrate any specific harm from producing its technical documents under the existing Stipulated Protective Order.  Further, the documents requested are essential to Plaintiffs' ability to prove their trade secret misappropriation claims and rebut Mood Media's defenses.  Finally, Plaintiffs have identified their trade secrets with reasonable particularity.

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Mood Media's Motion for Protective Order and compel Mood Media to produce the requested technical documents in response to Plaintiffs' discovery requests, subject to the protections already established in the Stipulated Protective Order.

DATED: May 22, 2025    Respectfully submitted,

 /s/ *Elio F. Martinez, Jr.*
Elio F. Martinez, Jr.
Florida Bar No. 501158
Elio.martinez@gray-robinson.com
Francesca Russo
Florida Bar No. 174912
francesca.russo@gray-robinson.com
**GRAY|ROBINSON, P.A.**
333 S.E. 2nd Avenue, Suite 3200
Miami, Florida 33131
Tel: (305) 416-6880

/s/ *Gregory S. Cordrey*
 Gregory S. Cordrey (*admitted pro hac vice*)
 Stanley M. Gibson (*admitted pro hac vice*)
sgibson@jmbm.com

11

        Lena Streisand (*admitted pro hac vice*)
        lstreisand@jmbm.com
        Celine Ohanian (*admitted pro hac vice*)
        cohanian@jmbm.com
        **JEFFER MANGELS BUTLER & MITCHELL LLP**
        1900 Avenue of the Stars, 7th Floor
        Los Angeles, California 90067
        Telephone: (310) 203-8080

        *Counsel for Plaintiffs Dr. Edwin A. Hernandez and EGLA CORP.*

**CERTIFICATE OF SERVICE**

      I hereby certify that on May 22, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

      By: */s/ Elio F. Martinez, Jr.*
      Elio F. Martinez