IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:24-CV-21226-RAR

EDWIN A. HERNANDEZ, and EGLA CORP.,

    *Plaintiffs*,

v.

STINGRAY DIGITAL GROUP INC.
and STINGRAY MUSIC USA, INC.,
MOOD MEDIA CORPORATION,
AT&T, INC., MILLICOM, INC., and
DOES 1-700,

    *Defendants*.

**JURY TRIAL DEMANDED**

**MOOD MEDIA'S MOTION FOR THE POSTING OF A BOND
<u>FOR SECURITY OF COSTS</u>**

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | REQUEST FOR RELIEF ................................................................................................1 |
| II. | FACTUAL BACKGROUND ..........................................................................................1 |
| III. | LEGAL STANDARD......................................................................................................2 |
| IV. | ARGUMENT...................................................................................................................3 |
| | A. | Mood Media is likely to prevail in its defense of Plaintiffs' claims. .......................3 |
| | | 1. Plaintiffs' trade secret claims are barred......................................................4 |
| | | 2. Plaintiffs' trade-secrets claims will fail on the merits. ................................6 |
| | | 3. Plaintiffs' breach-of-contract claim is barred. .............................................8 |
| | | 4. Plaintiff's breach-of-contact claim fails on the merits................................9 |
| | B. | Mood Media will likely win attorneys' fees and costs. ...........................................9 |
| | C. | Plaintiffs' have demonstrated an unwillingness to pay costs incurred thus far. ............................................................................................................................11 |
| | D. | Defendants will incur significant expenses in this case..........................................11 |
| V. | CONCLUSION..............................................................................................................12 |

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ajuluchuku v. S. New Eng. School of L.*,
   No. CIVA1:05MI0251, 2006 WL 2661232 (N.D. Ga. Sept. 14, 2006) ....................................2

*Alamar Biosciences, Inc. v. Difco Labs., Inc.*,
   No. S-94-cv-01856-DFL-PAN, 1996 WL 784495 (E.D. Cal. Feb. 27, 1996)...................10, 11

*Avirgan v. Hull*,
   932 F.2d 1572 (11th Cir. 1991) ........................................................................................11

*Baker v. Urban Outfitters, Inc.*,
   No. 01 Civ. 5440(LAP), 2004 WL 2546805 (S.D.N.Y. Nov. 10, 2004) ............................3, 12

*Card Isle Corp. v. Farid*,
   689 F. Supp. 3d 1273 (N.D. Ga. 2023) .................................................................................7

*In re Chiquita Brands Intern., Inc. Alien Tort Stat. and Shareholder Derivative Litig.*,
   690 F. Supp. 2d 1296 (S.D. Fla. 2010) .................................................................................4

*EarthCam, Inc. v. OxBlue Corp.*,
   49 F. Supp. 3d 1210 (N.D. Ga. 2014), aff'd, 703 F. App'x. 803 (11th Cir. 2017) ....................................................................................................................................7

*Ehm v. Amtrak Bd. of Directors*,
   780 F.2d 516 (5th Cir. 1986) ................................................................................................2

*Gabriel Techs. Corp. v. Qualcomm Inc.*,
   No. 08 CV 1992 MMA (POR), 2010 WL 3718848 (S.D. Cal. Sept. 20, 2010) .....................12

*Gabriel Techs. Corp. v. Qualcomm Inc.*,
   No. 08-cv-01992-AJB-MDD, 2013 WL 410103 (S.D. Cal. Feb. 1, 2013) .............................10

*Knights Armament Co. v. Optical Sys. Tech., Inc.*,
   No. 6:07-cv-01323-ORL, 2012 WL 3932863 (M.D. Fla. Aug. 20, 2012) ...........................9, 10

*Medcorp, Inc. v. Pinpoint Techs., Inc.*,
   No. 08-cv-00867-MSK-KLM, 2010 WL 4932669 (D. Colo. Nov. 30, 2010) .....................3, 11

*In re Michael Wilson & Partners Ltd.*,
   No. 06-cv-02575-MSK-KMT, 2009 WL 1193874 (D. Colo. Apr. 30, 2009) ..........................3

*In re Michael Wilson & Partners Ltd.*,
   No. 06-cv-025757-MSK-KMT, 2011 WL 3608037 (D. Colo. Aug. 16, 2011)...................3, 12

*Motise v. Parrish*,
    No. 07-569, 2007 WL 9683851 (E.D. Pa. Dec. 31, 2007)..........................................3

*Rumbough v. Equifax Info. Servs., LLC*,
    464 F. App'x. 815 (11th Cir. 2012) ........................................................................2

*Sands v. Bauer Media Grp. USA, LLC*,
    No. 17-cv-9215 (LAK), 2019 WL 5395602 (S.D.N.Y. Oct. 22, 2019)..................12

*Selletti v. Carey*,
    173 F.R.D. 96 (S.D.N.Y.,1997) ......................................................................3, 4, 12

*Servicios de Almacen Fiscal Zona Franca Y Mandatos S.A. v. Ryder Intern., Inc.*,
    264 F. App'x. 878 (11th Cir. 2008) ........................................................................8

*THR Georgia LP v. Mann*,
    No. 1:14-CV-02335, 2014 WL 12860577 (N.D. Ga. July 29, 2014) ......................2

*Yellowfin Yachts, Inc. v. Barker Boatworks, LLC*,
    237 F. Supp. 3d 1230 (M.D. Fla. 2017), aff'd, 898 F.3d 1279 (11th Cir. 2018).......6

**Statutes**

18 U.S.C. § 1836(b)(3)(D)................................................................................................9

18 U.S.C. § 1836(d) ..........................................................................................................4

18 U.S.C. § 1839(3) ..........................................................................................................6

18 U.S.C. § 1839(5)(B)(ii)–(iii)........................................................................................6

Defend Trade Secrets Act .................................................................................4, 6, 7, 9

Fla. Stat. § 95.11(2)(b) (2023) .........................................................................................8

Fla. Stat. § 688.05 ............................................................................................................9

Fla. Stat. § 688.007 ..........................................................................................................4

Florida Uniform Trade Secret Act ...................................................................4, 6, 9, 10

**Other Authorities**

Local Rule 7.1(a)(3), I ...................................................................................................13

## I.     REQUEST FOR RELIEF

In accordance with the Court's inherent power to require a bond for the security of costs, Mood Media hereby seeks an order for Plaintiffs to post bond as security for Mood Media's costs and attorneys' fees which may be awarded against Plaintiffs.

## II.     FACTUAL BACKGROUND

Despite Plaintiffs knowing about the events that gave rise to their claims since April 2014 and despite signing a settlement agreement to release any and all claims against Mood Media in October 2014, Plaintiffs sued Mood Media in April 2024 on the precise claims that were released roughly a decade prior. One of these claims—Plaintiffs' fraud claim—has already been dismissed by this Court. ECF No. 197. And for the other claims, this Court expressed skepticism, noting that "the likelihood of any positive outcome in Plaintiffs' favor on these claims is in real doubt." ECF No. 202 at 14.

Faced with the difficulty of supporting such claims, Plaintiffs have used the discovery process to hunt for potential evidence, including submitting unreasonably broad discovery requests for Mood Media's confidential technical documents. This has required Mood Media to spend additional resources fighting unnecessary discovery disputes. Plaintiffs' delay in producing evidence to support their claims—despite Court orders to do so—has also imposed additional costs on Mood Media. For example, Plaintiffs claim that Mood Media disclosed Plaintiffs' alleged trade secrets and confidential information to Stingray but have entirely failed to identify the alleged trade secrets with particularity or to explain how those alleged trade secrets were supposedly disclosed to Stingray. *See* ECF No. 257. Plaintiffs have also failed to fully disclose their contentions regarding their breach-of-contract claim or their defense to Mood Media's counterclaim. *See, e.g.*, ECF No. 271. The identity of their trade secrets is information that is within Plaintiffs' control, and the basis for their misappropriation and breach-of-contract

1

claims is something that Plaintiffs should have had substantive evidence for before filing their suit. The lack of evidence at this point in discovery is telling. Additionally, Plaintiffs are further delaying disclosure of evidence by failing to provide the availability of their witnesses for deposition. ECF No. 266. As evidenced by their own counsel's request for withdrawal, Plaintiffs' improper behavior and unreasonable positions are causing chaos and undue expense on Defendants. *Id.*

As further articulated below, a bond is warranted to ensure Mood Media will receive the attorneys' fees and costs it is entitled to in the likely event that Mood Media prevails in defending against Plaintiffs' claims. Heavily weighing in favor of granting this request is the fact that Plaintiffs are unwilling to pay costs already incurred in the litigation. *Id*. As Mood Media continues to expend its own resources and money to defend itself against Plaintiffs' claims, it should have the security of being able to recover attorneys' fees and costs in the future.

### III.   LEGAL STANDARD

District courts have inherent power to require a bond for the security of costs when warranted by the circumstances of the case, even in the absence of a local rule. *Ehm v. Amtrak Bd. of Directors*, 780 F.2d 516, 517 (5th Cir. 1986). The Eleventh Circuit Court of Appeals, along with district courts within this circuit, has reiterated this long-standing precedent. *See Rumbough v. Equifax Info. Servs., LLC*, 464 F. App'x. 815, 817 (11th Cir. 2012) (finding the district court acted within its discretion and inherent powers by imposing a bond for security of costs upon a *pro se* plaintiff); *see also Ajuluchuku v. S. New Eng. School of L.*, No. CIVA1:05MI0251, 2006 WL 2661232, at *7 (N.D. Ga. Sept. 14, 2006) (requiring the plaintiff to post a bond to "to cover the likely award of costs and attorneys' fees to the next defendant"); *THR Georgia LP v. Mann*, No. 1:14-CV-02335, 2014 WL 12860577, at *3 (N.D. Ga. July 29, 2014), R. & R. adopted, No. 1:14-CV-2335, 2014 WL 12860564 (N.D. Ga. Aug. 21, 2014)

(requiring movant to post a bond to cover an award of attorney's fees or sanctions should he seek to file another motion on relief he was already made aware was not available). Thus, the Court has discretion to impose a bond for the security of costs.

Factors courts have considered when assessing whether to impose a pre-judgment bond include: (1) the merits of the plaintiff's claims; (2) the willingness of a plaintiff to pay any costs which may be assessed; (3) substantial costs which might be incurred by the defendant; and (4) evidence that the plaintiff has failed to diligently prosecute its case. *See e.g. In re Michael Wilson & Partners Ltd.*, No. 06-cv-025757-MSK-KMT, 2011 WL 3608037, at *2 (D. Colo. Aug. 16, 2011). With regard to the second factor, courts have found that evidence of a plaintiff's unwillingness to pay expenses *already* incurred during the instant litigation, such as expenses owed to an expert, weighs in favor of a bond. *See Medcorp, Inc. v. Pinpoint Techs., Inc.*, No. 08-cv-00867-MSK-KLM, 2010 WL 4932669, at *3 (D. Colo. Nov. 30, 2010). Additionally, with regard to the fourth factor noted above, evidence that a plaintiff has delayed by failing to comply with discovery obligations, has disregarded court orders, has failed to offer concrete evidence to support its claims, or has substantially publicized the litigation (while failing to diligently prosecute the case), weighs in favor of a bond. *Selletti v. Carey*, 173 F.R.D. 96, 97 (S.D.N.Y.,1997); *see also Baker v. Urban Outfitters, Inc.*, No. 01 Civ. 5440(LAP), 2004 WL 2546805, *2 (S.D.N.Y. Nov. 10, 2004).

## IV.   ARGUMENT

### A.   Mood Media is likely to prevail in its defense of Plaintiffs' claims.

A pre-judgment cost bond is warranted where the Plaintiffs' claims are likely to fail. *See In re Michael Wilson & Partners Ltd.*, No. 06-cv-02575-MSK-KMT, 2009 WL 1193874, at *8 (D. Colo. Apr. 30, 2009) (finding a cost bond "appropriate when the claims presented are of dubious merit"); *Motise v. Parrish*, No. 07-569, 2007 WL 9683851, at *1 (E.D. Pa. Dec. 31, 2007)

3

(granting a cost bond based on evaluation of plaintiff's "ultimate success"); *Selletti*, 173 F.R.D. at 102 (stating cost bonds are appropriate where the "merits of a plaintiff's case are questionable"). At this stage in the litigation, it is clear that Plaintiffs' claims are insufficiently supported and are likely to fail.

### 1. Plaintiffs' trade secret claims are barred.

Plaintiffs' trade-secret-misappropriation claims under the Defend Trade Secrets Act ("DTSA") and the Florida Uniform Trade Secret Act ("FUTSA") are both barred for two reasons. First, Plaintiffs' trade-secret-misappropriation claims are barred by the statute of limitations. Claims under the DTSA "may not be commenced later than 3 years after the date on which the misappropriation with respect to which the action would relate is discovered or by the exercise of reasonable diligence should have been discovered." 18 U.S.C. § 1836(d). Similarly, the FUTSA has a three-year statute of limitations. Fla. Stat. § 688.007. By his own admission, Mr. Hernandez discovered the alleged misappropriation by March or April 2014. *See* ECF No. 259 ¶¶ 57–61, 65. Thus, the time period to pursue Plaintiffs' claims expired mid-2017.

Moreover, Plaintiffs have no equitable-tolling defense, which would require a showing of some inequitable circumstance that barred Plaintiffs from filing the suit sooner. *See In re Chiquita Brands Intern., Inc. Alien Tort Stat. and Shareholder Derivative Litig.*, 690 F. Supp. 2d 1296, 1305 (S.D. Fla. 2010) (citing *Ellis v. Gen. Motors Acceptance Corp.*, 160 F.3d 703, 706 (11th Cir. 1998)). Typically, "[e]quitable tolling is appropriate where a plaintiff 'remain[s] in the dark without any fault or want of diligence or care on his part'" or "[w]hen a defendant's fraudulent deceptions leave a plaintiff ignorant of the facts or even existence of his claim, the limitations period is tolled until discovery of the fraud." *In re Chiquita*, 690 F. Supp. 2d at 1306. This is Plaintiffs' burden, and they have yet to provide any evidence to support such a defense. *See* Ex. A, Plaintiffs' Suppl. Resp. to Interrogatory No. 5. Instead, their own allegations indicate

4

that Plaintiffs remained suspicious of potential misappropriation but failed to take further steps to investigate. As Plaintiffs allege in their complaint, they contacted the Department of Homeland Security (ECF No. 259 ¶ 65) and maintained "concerns" after discussing the matter with Mood Media employees (ECF No. 259 ¶ 67). But Plaintiffs never took any further steps to assess who had access to their servers.

Second, Plaintiffs' trade-secret-misappropriation claims are precluded by their October 2014 Settlement and Release Agreement with Mood Media ("Settlement Agreement"). *See* ECF No. 148-3. Pursuant to this agreement, EGLA released DMX and its successors, including Mood Media, from any claims in connection with the Term Sheet. Specifically, the term reads:

> (b) EGLA's Release. As a material inducement to OMX to enter into this Agreement, and effective upon the execution of this Agreement, and in consideration of mutual promises and considerations contained herein, EGLA hereby voluntarily and knowingly, forever and fully, finally and completely, **RELEASES, ACQUITS, FOREVER DISCHARGES AND HOLDS HARMLESS DMX** and its respective shareholders and its respective affiliates, including for purposes herein the shareholders, directors, officers, employees, agents, successors and assigns of any of such affiliates, from any and all claims, demands, or suits, known or unknown, fixed or contingent, liquidated or unliquidated, whether now or hereafter asserted, which EGlA may have against any of the DMX Released Parties) and which are based on or arising out of or in connection with, directly or indirectly, the Term Sheet, but save and except, however, any claims, demands or causes of action which arise against DMX as a result of its breach or default hereunder.

*Id*. at 1. Plaintiffs assert that the Settlement Agreement does not apply to any breach of the Term Sheet. But this contradicts Plaintiffs' own allegation that the Term Sheet incorporated an End User License Agreement, which provided that Mood Media would not "disclose, provide, or otherwise make available trade secrets contained within the Software and Documentation." *See* Ex. B, Plaintiffs' Suppl. Resp. to Interrogatory No. 2 at 7. Thus, Plaintiffs' misappropriation claim is a dispute that "aris[es] out of or is in connection with, directly or indirectly, the Term

5

Sheet" and thus is preempted by the Settlement Agreement.

### 2. Plaintiffs' trade-secrets claims will fail on the merits.

Plaintiffs' trade-secret-misappropriation claims will fail on the merits because there is no evidence that Plaintiffs have a valid trade secret that Mood Media misappropriated. Under the DTSA, a trade secret is information for which: "(A) the owner thereof has taken reasonable measures to keep such information secret; and (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1839(3). A trade secret is "misappropriated" under the DTSA by "disclosure or use of a trade secret of another without express or implied consent by a person who . . . at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was . . . acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret; or . . . derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret." 18 U.S.C. § 1839(5)(B)(ii)–(iii). Similarly, to prevail on a trade secret misappropriation claim under Florida's Uniform Trade Secrets Act, the plaintiff "must show that [the defendant] misappropriated information that derives independent economic value from the fact that others lack, and cannot easily ascertain, the information. Also, [Plaintiffs] must show reasonable protection of the secrecy of the information." *Yellowfin Yachts, Inc. v. Barker Boatworks, LLC*, 237 F. Supp. 3d 1230, 1241–42 (M.D. Fla. 2017), aff'd, 898 F.3d 1279 (11th Cir. 2018).

Plaintiffs have failed to identify with particularity information that qualifies as a trade secret. Ex. C, Plaintiffs' Resp. to Interrogatory No. 1. Their responses identify only general categories of information that incorporate, rather than distinguish, information that was publicly

6

known or available. *Id*. For example, Plaintiffs describe their alleged trade secrets in terms of publicly-available software. *See id.* at 6–15, 19. Where a plaintiff fails to "articulate the concrete elements of the trade secret with reasonable particularity," a Court will deny the claim. *Card Isle Corp. v. Farid*, 689 F. Supp. 3d 1273, 1290 (N.D. Ga. 2023) (granting defendant's motion for summary judgment as to misappropriation claim under DTSA).

Even if Plaintiffs had sufficiently identified a valid trade secret—which they have not—there is no evidence that Mood Media actually misappropriated any information belonging to Plaintiffs. It is undisputed that under the terms of the parties' NDA and Term Sheet, Mood Media was granted access to certain information belonging to Plaintiffs. Plaintiffs claim that Mood Media improperly disclosed said information to Stingray, but they fail to point to any actual evidence that Mood Media provided any of Plaintiffs' confidential information to Stingray. In response to Mood Media's interrogatory request on this point, Plaintiffs fail to point to evidence or even a theory of how their information was disclosed to Stingray. Ex. B, Plaintiffs' Suppl. Resp. to Interrogatory No. 2. Plaintiffs only proffered evidence has been that they discovered Trello tickets relating to Stingray's products, but Plaintiffs fail to articulate how this incorporates their alleged trade secrets or how this indicates that Mood Media shared that information with Stingray. Ex. C, Plaintiffs' Resp. to Interrogatory No. 1 at 34. Notably, one of Mood Media's corporate witnesses has already been deposed, and he was designated for topics related to information that was shared with Stingray. Plaintiffs failed to uncover any evidence during that deposition that Mood Media disclosed Plaintiffs' confidential information to Stingray. Ex. E, Dep. Tr. of Trey Courtney. Courts grant summary judgment in favor of defendant when a plaintiff fails to identify sufficient evidence of misappropriation. *See EarthCam, Inc. v. OxBlue Corp.*, 49 F. Supp. 3d 1210, 1230 (N.D. Ga. 2014), aff'd, 703 F.

7

App'x. 803 (11th Cir. 2017). At this stage of discovery, Plaintiffs are still lacking critical evidence to support their misappropriation claim.

### 3. Plaintiffs' breach-of-contract claim is barred.

Plaintiffs' breach-of-contract claim is also barred by the statute of limitations and the parties' settlement agreement. Under Florida law, the statute of limitations is five years from when the contract was allegedly breached. § 95.11(2)(b), Fla. Stat. (2023); *see Servicios de Almacen Fiscal Zona Franca Y Mandatos S.A. v. Ryder Intern., Inc.*, 264 F. App'x. 878, 880 (11th Cir. 2008) (noting date of accrual is the date of the first breach). Plaintiffs allege that a breach of contract occurred in April 2014. For example, Plaintiffs allege that in April 2014, Dr. Hernandez was concerned that his server asserts had been compromised. ECF No. 259 ¶ 61. They allege that at that point, Stingray "appeared to be controlling head-ends and customers previously licensed by Mood Media." *Id*. Plaintiffs also allege that by April 2014, Mood Media employees that allegedly had access to trade secrets were Stingray employees. *Id*. ¶¶ 62, 63. In April 2014, Dr. Hernandez contacted the Department of Homeland Security to report his concern that Stingray had access to his servers. *Id*. ¶ 65. Plaintiffs further allege that "Dr. Hernandez's remote access via Dr. Hernandez's pre-established IP Tunnels, was severed by Stingray or Mood Media" on April 15, 2014 and that "all of his servers at all cable operators were unlawfully stolen by Stingray." *Id.* ¶ 68. Additionally, Plaintiffs allege that "[o]nce Mood Media completed its transaction with Stingray, and provided Stingray access to Dr. Hernandez's technology, it terminated the agreement with Plaintiff in or around April 24, 2014." *Id.* ¶ 72. Thus, it is clear from Plaintiffs' own pleading that the alleged breach occurred by April 2014, meaning the statute of limitations for breach of contract expired by April 2019.

Additionally, Plaintiffs' breach-of-contract claim for the Term Sheet is preempted by the terms of the Settlement Agreement. Pursuant to the terms of that agreement, EGLA released all

8

claims against DMX and affiliates relating to the Term Sheet. *See* ECF No. 148-3. Thus, any claims of breach of the Term Sheet are preempted by the parties' prior agreement.

### 4. Plaintiff's breach-of-contact claim fails on the merits.

Plaintiffs assert that Mood Media violated the NDA and Term Sheet by "disclosing, transferring, or allowing Stingray access to Dr. Hernandez's confidential information and trade secrets" and that Mood Media violated the Settlement Agreement by "continuing to use Dr. Hernandez's and EGLA Corp.'s trade secrets and confidential information in breach of the agreement whereby it was understood that Mood Media no longer was using any of Dr. Hernandez's and EGLA Corp.'s trade secrets and confidential information." Ex. A, Plaintiffs' Suppl. Resp. to Interrogatory No. 6 at 7–8. But Plaintiffs have yet to provide any factual evidence identifying what confidential information was shared with Stingray or how it was shared. *Id*. Again, Plaintiffs have already deposed Mood Media's corporate witness on the topics related to information shared with Stingray. Ex. E, Dep. Tr. of Trey Courtney. Moreover, Plaintiffs have failed to articulate a theory of breach of the Settlement Agreement and have not even identified a clause they believe Mood Media breached. *See* Ex. A at 6-8. Plaintiffs' lack of evidence at this stage of the litigation is indicative of their inability to prove their claims at trial.

### B. Mood Media will likely win attorneys' fees and costs.

Mood Media has a strong basis for recovering its attorney's fees in this case. Its fees are recoverable by statute for the trade-secret claims. Under the FUTSA, "[i]f a claim of misappropriation is made in bad faith . . . the court may award reasonable attorney's fees to the prevailing party." Fla. Stat. § 688.05. The DTSA includes a similar provision. *See* 18 U.S.C. § 1836(b)(3)(D). Courts have repeatedly awarded attorneys' fees where, as here, a plaintiff asserts a trade-secret-misappropriation claim that "is clearly time-barred" and thus "frivolous and sanctionable." *Knights Armament Co. v. Optical Sys. Tech., Inc.*, No. 6:07-cv-01323-ORL, 2012

9

WL 3932863, at *8 (M.D. Fla. Aug. 20, 2012); *see also Gabriel Techs. Corp. v. Qualcomm Inc.*, No. 08-cv-01992-AJB-MDD, 2013 WL 410103, at *8 (S.D. Cal. Feb. 1, 2013), order aff'd, 560 F. App'x. 966 (Fed. Cir. 2014); *Alamar Biosciences, Inc. v. Difco Labs., Inc.*, No. S-94-cv-01856-DFL-PAN, 1996 WL 784495, at *3 (E.D. Cal. Feb. 27, 1996). In *Knights Armament,* the magistrate judge recommended awarding attorneys' fees under the FUTSA where the plaintiff "knowingly persisted in its untimely misappropriation claim which demonstrates its subjective bad faith." 2012 WL 3932863, at *8, *10. Similarly, in *Alamar Biosciences*, the district court awarded attorneys' fees where plaintiffs made the decision to go forward with a time-barred trade-secret-misappropriation claim, despite the fact that "[t]he statute of limitations bar was explained in detail in letters from [defendant's] counsel to [plaintiff's]." 1996 WL 784495, at *3. Moreover, in *Gabriel Technologies*, the district court awarded over twelve million dollars in attorneys' fees where "Plaintiffs made the decision to go forward despite their inability to sufficiently articulate the alleged trade secrets or overcome [d]efendants' statute of limitations argument." 2013 WL 410403, at *8.

Plaintiffs have been on notice of the weaknesses of their case and the consequent risk of attorneys' fees since early in the case. Counsel for Mood Media sent letters on July 18, 2024, August 2, 2024, and April 21, 2025 on this issue. Moreover, this Court has already acknowledged the "Herculean effort" required for Plaintiffs to succeed on their "equitable estoppel theory to oppose the [statute of] limitations affirmative defense." ECF No. 202 at 14. "Bad faith may be inferred," therefore, because "the specific shortcomings of [Plaintiffs'] case [have been] identified by opposing counsel, and the decision [has been] made to go forward despite the inability to respond to the arguments raised." *Knights Armament*, 2012 WL 3932863, at *12; *Gabriel Techs*., 2013 WL 410103, at *8 n.6; *Alamar Biosciences*, 1996 WL 784495, at

10

*1. In addition, "[a] court may assess attorney's fees against litigants, counsel, and law firms who willfully abuse judicial process by conduct tantamount to bad faith." *Avirgan v. Hull*, 932 F.2d 1572, 1582 (11th Cir. 1991) (citing *Roadway Express Inc. v. Piper*, 447 U.S. 752 (1980)). And "continuing to prosecute a frivolous case may be evidence of such bad faith." *Alamar Biosciences*, 1996 WL 784495, at *1.

Mood Media has also counterclaimed for Plaintiffs' breach of the Mutual Release. The damages resulting from that breach will at least include the attorneys' fees—as well as other potential fees, costs, and expenses—incurred by Mood Media in defending against this frivolous case.

### C. Plaintiffs' have demonstrated an unwillingness to pay costs incurred thus far.

A pre-judgment cost bond is necessary to secure any future award of attorneys' fees where Plaintiffs have proven unwilling to pay incurred costs. *See Medcorp*, 2010 WL 4932669, at *3 (imposing a cost bond where it could not be "reasonably disputed that Plaintiff's ability to pay costs incurred in this lawsuit is sufficiently in doubt"). Here, Plaintiffs are refusing to pay the mediator fee for the Court-ordered, scheduled mediation and have not paid their own counsel's fees. ECF No. 266 at 1. If Plaintiffs intend to continue with their claims, a bond is required to protect Mood Media's ability to recover fees.

### D. Defendants will incur significant expenses in this case.

Mood Media has already expended significant resources on its defense in this case, which has been increased by discovery disputes and Plaintiffs' delays in disclosing its evidence. *See Medcorp*, 2010 WL 4932669, at *4 ("The discovery and trial preparation necessary to defend against such an aggressive litigation strategy is extensive and has been complicated throughout this case by verbose and largely baseless discovery motions filed by Plaintiff."). Courts have granted sizeable cost bonds where the anticipated expenses are significant. *See e.g.*, *Gabriel*

11

*Techs. Corp. v. Qualcomm Inc.*, No. 08 CV 1992 MMA (POR), 2010 WL 3718848, at *15 (S.D. Cal. Sept. 20, 2010)(ordering plaintiffs to post a $800,000 cost bond, reduced from $1.29M); *In re Michael Wilson*, 2011 WL 3608037, at *8–9 (granting $500,000 cost bond where threshold showing supported determination that defendant's discovery costs had been and would continue to be substantial); *Baker*, 2004 WL 2546805, at *2 (granting $450,000 cost bond where plaintiff objected to discovery requests related to "central" issues in the case); *Sands v. Bauer Media Grp. USA, LLC*, No. 17-cv-9215 (LAK), 2019 WL 5395602 (S.D.N.Y. Oct. 22, 2019) (granting $50,000 cost bond where plaintiff's discovery violation "obscured important facts" and created the need for additional discovery and thus increased costs); *Selletti*, 173 F.R.D. at 102 (finding $50,000 cost bond appropriate where plaintiff "failed to adduce any concrete evidence to support his claims").

Mood Media has served an expert report by Dana Trexler, who calculated that between April 4, 2024 and April 30, 2025, Mood Media has already incurred $628,768.00 in attorneys' fees. Ex. D, Opening Report by Trexler at 11–12. This was prior to the taking of depositions and completion of document review. Mood Media expects that as this case advances through summary judgment motions, it will incur a total of $1,879,750.00 in attorney's fees. Should this case continue to trial, Mood Media expects this total to reach at least $3.7 million with a total of $135,000 in costs.

In light of Mood Media's incurred and expected costs, Mood Media requests a bond in the amount of $1,879,750.00 to cover its reasonably anticipated expenses through summary judgment. This is half of the total expenses anticipated should the case proceed to trial.

### V.   CONCLUSION

For these reasons, this motion for the posting of a bond for the security of costs should be granted.

## CERTIFICATE OF CONFERRAL

Pursuant to Local Rule 7.1(a)(3), I hereby certify that counsel for Mood Media has conferred in good faith in-person with Plaintiffs on May 30, 2025, Plaintiffs oppose this motion, and that the parties have been unable to resolve the issues in this motion. Additionally, I hereby certify that counsel for Mood Media has conferred in good-faith by telephone with Co-Defendants on June 3, 2025 and that Co-Defendants do not oppose this motion.

Dated:  June 3, 2025                                           Respectfully submitted,

/s/*David C. Banker*
Jonathan Tuminaro, Ph.D.
(admitted pro hac vice)
Uma Everett (admitted pro hac vice)
Michael Specht (admitted pro hac vice)
STERNE, KESSLER, GOLDSTEIN
 & FOX P.L.L.C.
1101 K Street NW, 10th Floor
Washington, DC 20005
(202) 371-2600
jtuminar@sternekessler.com
ueverett@sternekessler.com
mspecht@sternekessler.com

David C. Banker (FBN #35977)
Bush Ross, P.A.
1801 North Highland Avenue
Tampa, Florida 33602-2656
Telephone: (813) 224-9255
Fax: (813) 223-9620
dbanker@bushross.com

*Counsel for Defendant Mood Media, LLC*

## CERTIFICATE OF SERVICE

I certify that on June 3, 2025, I electronically filed this document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all CM/ECF participants.

/s/*David Banker*
David C. Banker