**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 24-cv-21226-RUIZ/TORRES

EDWIN A. HERNANDEZ and
EGLA CORP.,

Plaintiffs,

v.

STINGRAY GROUP INC., et al.,

Defendants.

_______________________________________________/

**REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This cause comes before the Court on Defendant, Mood Media's Motion for Summary Judgment [D.E. 304] against claims I, II, and VI of Plaintiffs', Dr. Hernandez and EGLA Corp., Fourth Amended Complaint, [D.E. 259] and in favor of Mood Media's counterclaim for breach of contract. Plaintiffs have filed a response to the Motion [D.E. 324], to which Mood Media has replied. [D.E. 331]. The Motion, therefore, is ripe for disposition.[1] After careful review of the briefing and relevant authorities, and for the reasons set forth below, we recommend that the Motion be **DENIED**.

[1] On March 10, 2025, the Honorable Rodolfo A. Ruiz II referred all dispositive matters to the Undersigned Magistrate Judge for a Report and Recommendation. [D.E. 203].

## *I. BACKGROUND*

This case, as it pertains to Mood Media,[2] centers on allegations of trade secret misappropriation and a breach of contract resulting from that misappropriation.

### *A. <u>The 2014 Term Sheet Between DMX (Mood Media) and EGLA</u>*

On January 1, 2013, EGLA Corp. and Mood Media's predecessor, DMX, entered into a Term Sheet. [D.E. 305 at ¶ 3]. In that agreement, EGLA was to provide certain media platforms to Mood Media, which "contained the source code implementation of [Plaintiffs'] trade secrets." [*Id.* at ¶ 5]. Thus, essentially, Mood Media and Plaintiffs agreed for Mood Media to use certain materials that incorporated Plaintiffs' proprietary information.

Then, in January of 2014, Mood Media entered into an Asset Purchase Agreement with co-Defendant, Stingray. [*Id.* at ¶ 7]. A few months later, in March of 2014, Dr. Hernandez learned that Mood Media (or at least certain of its assets) was being acquired by Stingray. [*Id.* at ¶ 8]. Subsequently, Dr. Hernandez contacted the Department of Homeland Security to express concerns that Stingray now gained access to his proprietary information (including access to his servers). [*Id.* at ¶ 9].

Specifically, Dr. Hernandez expressed that "the NDA in place with Mood Media has been breached" and Plaintiffs' trade secrets had been misappropriated. [*Id.* at ¶ 10]. He further stated that "Stingray effectively has been making use and gaining

[2] This case has several other Defendants and several other claims. But the only claims brought against Mood Media are two claims of trade secret misappropriation and one claim for breach of contract.

access of EGLA's intellectual property and trade secret assets without proper authorization." [*Id.*]. Mood Media responded to Dr. Hernandez and denied those allegations. Dr. Hernandez then alleged that Mood Media breached the term sheet and "confidentiality agreement"; Mood Media then denied these allegations as well. Shortly after, on April 24, 2014, a representative of Mood Media (Ms. McCool) sent Dr. Hernandez an email that "officially terminat[ed] the Term Sheet" between Mood Media and EGLA. [*Id.* at ¶ 17].

***B. <u>Settlement Agreement</u>***

In October of 2014, EGLA and DMX entered into a settlement agreement. That agreement settled "fully and finally, all differences between them," and more specifically "to settle and compromise the amounts in controversy between the parties hereto and to waive, release and discharge their respective claims, causes of actions, costs and demands …." [*Id.* at ¶¶ 20–21]. This included "any and all claims … based on or arising out of or in connection with, directly or indirectly, the Term Sheet … except … any claims … against DMX as a result of its breach or default hereunder." [*Id.* at ¶ 21]. Mood Media then paid Plaintiffs the full $59,890.00 contemplated by the settlement agreement. [*Id.* at ¶ 23].

***C. <u>The Pending Lawsuit</u>***

Now, over ten years removed from the termination of the Term Sheet and the execution of the settlement agreement, Plaintiffs are suing Mood Media for trade secret misappropriation and breach of contract. Essentially, Plaintiffs argue that Mood Media, when it agreed to an asset purchase agreement with Stingray,

impermissibly provided Plaintiffs' trade secrets to Stingray (and thus misappropriated those trade secrets). And in disclosing those trade secrets, Plaintiffs also allege that Mood Media violated the parties' term sheet and settlement agreement.

Mood Media, meanwhile, seeks summary judgment on its counterclaim for breach of the settlement agreement, as well as the three claims pending against it: Count I (violation of Defend Trade Secrets Act, 18 U.S.C. § 1836), Count II (violation of Florida Uniform Trade Secret Act, § 688, Fla. Stat.), and Count VI (breach of contract). As to Plaintiffs' claims, Mood Media argues that (1) they are barred by the statute of limitations and (2) the claims are barred by the parties' settlement agreement. And as to its own counterclaim, Mood Media argues that Plaintiffs breached the parties' settlement agreement by suing Mood Media on claims that have been explicitly foreclosed by the release provisions.

Plaintiffs, in response, assert that the statute of limitations does not bar their claims, nor did Plaintiffs breach the settlement agreement, because the pending trade secret violations were not brought to Plaintiffs' attention until 2021.

## *II. APPLICABLE LAW AND PRINCIPLES*

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion

> only), admissions, interrogatory answers, or other materials; or (B) showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). On summary judgment, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *See Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 597 (1986) (quoting another source).

At the summary judgment stage, the Court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 243 (1986). In making this determination, the Court must decide which issues are material. A material fact is one that might affect the outcome of the case. See *id.* at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."). "Summary judgment will not lie if the dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

## ***III. ANALYSIS***

We will first address whether the statute of limitations bars Plaintiffs' trade secret claims. If not, we will analyze whether the parties' mutual release agreement encompasses (and thus bars) Plaintiffs' claims. And lastly, we will determine whether summary judgment is proper on Mood Media's counterclaim for breach of contract.

### A. ***Statute of Limitations***

Under the Defend Trade Secrets Act ("DTSA"), "[a] civil action [for misappropriation of a trade secret] may not be commenced later than 3 years after the date on which the misappropriation with respect to which the action would relate is discovered or by the exercise of reasonable diligence should have been discovered." 18 U.S.C. § 1836(d). The Florida Uniform Trade Secrets Act, meanwhile, imports materially identical language. *See* § 688.007, Fla. Stat. ("An action for misappropriation must be brought within 3 years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered. For the purposes of this section, a continuing misappropriation constitutes a single claim.").

Here, indisputably, Plaintiffs' initial suspicion of potential trade secret misappropriation (i.e., Dr. Hernandez's April 2014 email to the Department of Homeland Security) places Plaintiffs definitively outside the bounds of the statutes of limitation. But Plaintiffs allege that on April 7, 2021, Dr. Hernandez discovered a website (Trello.com) that features "unauthorized access to his proprietary technology." [D.E. 324 at 4]. Plaintiffs represent that while they had suspicions of misappropriation in 2014, that suspicion did not include Trello.com, which they did not discover until 2021. Further, Plaintiffs contend that the misappropriation was not discovered until 2021 because Plaintiffs' resources were stretched thin, and were allocated to pursuing other patent and trade secret infringers. [D.E. 305 at ¶ 25].

In reply, Mood Media argues that it is immaterial that Plaintiffs discovered Trello.com. That is because Plaintiffs had full knowledge of Mood Media's and Stingray's apparent access to Plaintiffs' proprietary information in 2014, so any alleged misappropriation past that time (i.e., Trello.com) should have been discovered prior to 2021.

At issue, then, is whether Plaintiffs, "by the exercise of reasonable diligence should have … discovered" the alleged trade secret misappropriation prior to 2021. 18 U.S.C. § 1836(d). If Plaintiffs raise a genuine dispute of material fact as to whether the misappropriation should have been discovered prior to 2021, the question is one for a jury.

Drawing all reasonable inferences in favor of Plaintiffs, we are persuaded that summary judgment should be denied. Mood Media—who of course holds the burden—provides no authority to suggest that we should ignore Plaintiffs' 2021 discovery of new trade secret misappropriation, or that we should immediately discredit Plaintiffs' excuse for delayed discovery. Rather, Mood Media focuses solely on Plaintiffs' 2014 knowledge. But a reasonable juror certainly could conclude that (1) in 2014, Plaintiffs had suspicions of trade secret misappropriation; (2) those suspicions did not result in the immediate discovery of any actual misappropriation; and (3) Plaintiffs, upon later investigation, discovered in 2021 that Mood Media did in fact misappropriate the trade secrets via Trello.com.

Mood Media offers no authority to show why we should ignore that break in the chain, or that requires us to wholly disregard Plaintiffs' excuse for delay. Had, for

example, Mood Media provided evidence that it received a license to use Plaintiffs' proprietary information, then perhaps the 2021 discovery would be a non-issue. Or, if Mood Media provided evidence that Plaintiffs knew about Trello.com (and/or the proprietary information that ostensibly supports Trello.com) in 2014 and chose not to act, then maybe Mood Media could carry its burden. But all Mood Media presents is that Plaintiffs had suspicions in 2014. Absent evidence or legal support to show that suspicions of misappropriation are conclusive under the DTSA (or its Florida corollary), Plaintiffs have raised a genuine dispute of fact as to whether they reasonably should have discovered the alleged misappropriation before 2021. *See Knights Armament Co. v. Optical Sys. Tech., Inc.*, 654 F.3d 1179, 1185, n.12 (11th Cir. 2011) ("We have found no published case to date holding that, while suspicion alone does not start the statute of limitations running, if suspicion is present, and, a reasonable investigation would have confirmed this suspicion, then the limitation period begins, whether or not an investigation was ever conducted."); *Insulet Corp. v. EOFlow Co.*, 755 F. Supp. 3d 70, 88 (D. Mass. 2024), *motion to certify appeal denied*, 2024 WL 5442419 (D. Mass. Nov. 1, 2024) (denying motion for summary judgment as to statute of limitations argument because "there are genuine disputes of material fact as to when a reasonably diligent company, standing in plaintiff's shoes, should have discovered the alleged misappropriation").

To be clear, we do not squarely hold that Plaintiffs have succeeded as a matter of law against Mood Media's statute of limitations defense. We find only that Plaintiff has raised a genuine dispute of fact as to whether the statute of limitations has been

violated, and thus, a factfinder must decide the question. On this score, then, summary judgment should be denied.

### *B. Settlement Agreement*

Further, Mood Media argues that the parties' 2014 settlement agreement bars Plaintiffs' pending claims. That agreement, Mood Media contends, bars Plaintiffs' claims because the "complained-of conduct" (i.e., the trade secret misappropriation) occurred before the settlement agreement was entered into.

Plaintiffs, meanwhile, argue that the parties' settlement agreement aimed to resolve a dispute for services already provided by EGLA to Mood Media as indicated by the Term Sheet. Consequently, Mood Media made a one-time $59,890.00 payment to EGLA, to satisfy that obligation. But the terms of the settlement agreement, argue Plaintiffs, do not contemplate a "blanket pardon for all present and future wrongdoing." [D.E. 324 at 7].

We agree with Plaintiffs that, drawing all reasonable inferences in their favor, a reasonable juror could conclude that the parties' settlement agreement did not encompass future discoveries of trade secret misappropriation. The agreement states that "the purpose of [the] Agreement is to settle and compromise the amounts in controversy between the parties." [D.E. 305-7 at ¶ 1]. Subsequently, the agreement provides that "[t]he parties have agreed to resolve all issues related to *amounts owed*," and required payment in "the amount of $59,890.00 in full and complete satisfaction of the Term Sheet." [*Id.* at ¶ 2] (emphasis added).

Based on this language, we have no basis to conclude—as a matter of law at summary judgment—that the settlement agreement contemplates or encompasses the pending trade secret misappropriation claims. Mood Media points to the settlement agreement's broad release language; specifically, that "EGLA hereby voluntarily and knowingly, forever and fully, finally and completely, releases, acquits, forever discharges and holds harmless DMX … from any and all claims, demands, or suits … which are based on or arising out of or in connection with, directly or indirectly, the Term Sheet …." [*Id.* at ¶ 3].

No doubt, this release uses broad language. But the Court is unclear why that language, as matter of law at summary judgment, encompasses a 2021 trade secret misappropriation claim, when the express purpose of the settlement agreement is to resolve unpaid invoices under the 2014 Term Sheet. *See Mazzoni Farms, Inc. v. E.I. DuPont De Nemours & Co.*, 761 So. 2d 306, 315 (Fla. 2000) ("[T]he courts' willingness to enforce general releases is not absolute. Rather, enforcement is premised upon the assumption that the released claims are those that were contemplated by the agreement.").

In other words, Mood Media does not argue, let alone convincingly, that the agreement relates to misappropriation of Plaintiffs' proprietary information, licensing of Plaintiffs' technology or trade secrets, purchase of the right to use Plaintiffs' technology, or anything of the like. Rather, Mood Media points to a broad release embedded in a contract that relates to unpaid services owed on 2014. Hence,

there exists a genuine dispute of fact or law as to whether Plaintiffs' 2021 misappropriation claim is encompassed by that release.

Short of demonstrating that the agreement (including the release provision) contemplates future use of Plaintiffs' trade secrets, a reasonable juror surely could conclude that the agreement does not bar Plaintiffs' claims. *See United States v. Robertson*, 477 F.2d 882, 884 (5th Cir. 1973) (affirming district court's finding that a release provision, while broad, did not encompass unrelated claims, and reasoning that "[t]he taxpayer argued and the district court found, that the stipulation constituted a very broad release" that "was specifically limited to the [$40,000] fund referred to" in the agreement, and thus the release provision, even though it was broad, "had no bearing upon any claims unrelated to the $40,000"); *see also Alderman v. BCI Eng'rs & Scientists, Inc.*, 68 So. 3d 396, 402 (Fla. 2d DCA 2011) ("Mr. Alderman's negligence claim against BCI is for its alleged negligence in supervising CFI's remediation work on the property. BCI's performance of its engineering work on the Alderman residence is unrelated to Mr. Alderman's insurance coverage with State Farm, his decision to make a claim under the policy, or State Farm's handling of the claim. The circumstance that Mr. Alderman had insurance coverage with State Farm that provided a source for the payment of BCI's fees does not make the cause of action for negligence a claim that arises "in relation to the filing of insurance claims" by Mr. Alderman. … It follows that BCI was not entitled to a summary judgment on the negligence claim. The trial court erred in ruling to the contrary.").

Mood Media also argues that, because the trade secret claims accrued before the settlement agreement, the claims are subject to the release provision. In support, Mood Media points to the fact that Mood Media ostensibly provided Stingray with the proprietary information in 2014, and thus, that is the date of accrual for the trade secret claims. But Plaintiffs aver that they did not discover actual (alleged) misappropriation of the trade secrets until 2021. At least this controversy raises a fact issue as to why that delay in discovery occurred (i.e., that they had limited resources and were pursuing other infringers).

Perhaps Mood Media can show that Plaintiffs' excuse for delay is thinly-veiled—but Plaintiffs still raise a genuine factual dispute that must be decided by a jury. Consequently, the Court cannot find as a matter of law that the date of accrual for Plaintiffs' pending claims is 2014. *See Floyd v. Homes Beautiful Const. Co.*, 710 So. 2d 177, 179 (Fla. 1st DCA 1998) (reversing the district court's granting of summary judgment based on a general release provision because, in part, "there is a question as to when the instant cause of action accrued"); *see also Caballero v. Phoenix Am. Holdings, Inc.*, 79 So. 3d 106, 108 (Fla. 3d DCA 2012) ("Because the allegations in this count are alleged to have occurred after the release was executed and pertain to actions outside of Caballero's employment with Phoenix American Warranty Company, Inc., we reverse the final summary judgment for further proceedings on this count alone."); *In re Weeks Landing, LLC*, 439 B.R. 897, 915 (M.D. Fla. 2010) ("The Adversary Complaint alleges that the misconduct of defendants included the filing of the proposed reorganization plan by RCMP and efforts

culminating in having that plan confirmed. That plan was filed on July 31, 2007, after the July 18, 2007 execution of the General Release. Since a portion of the alleged conduct took place after the General Release was signed, and the General Release does not apply to that conduct, summary judgment as to that conduct cannot be premised on the General Release.").

Consequently, as to this argument, summary judgment should be denied.

### ***C. Mood Media's Breach of Contract Claim***

Lastly, we decide whether summary judgment is proper on Mood Media's counterclaim for breach of contract. On that front, Mood Media argues that "[b]ecause the complained-of conduct giving rise to the now-asserted claims occurred before the execution of the Mutual release …, the now-asserted claims are barred by the Mutual Release." [D.E. 304 at 10].

Of course, we have already concluded *supra* that there exists a genuine dispute of material fact as to whether Plaintiffs' pending claims accrued before the general release was formed and executed. *See* Sec. III(B). Consequently, summary judgment should be denied as to this claim as well.

## ***IV. CONCLUSION***

For the reasons set forth above, we recommend that Mood Media's Motion for Summary Judgment [D.E. 304] be **DENIED**.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, to the District Judge. Failure to timely file objections

shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE and SUBMITTED** in Chambers at Miami, Florida this 16th day of September, 2025.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge