**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

CASE NO. 1:24-CV-21226-ELA

DR. EDWIN A. HERNANDEZ and
EGLA CORP.,

JURY TRIAL DEMANDED

    *Plaintiffs*,

v.

STINGRAY GROUP, INC. f/k/a
STINGRAY DIGITAL GROUP, INC.,
STINGRAY MUSIC USA, INC.,
MOOD MEDIA LLC f/k/a MOOD
MEDIA CORPORATION, AT&T
ENTERPRISES, LLC f/k/a AT&T
CORP., MILLICOM
INTERNATIONAL SERVICES, LLC,
and BLUE STREAM
COMMUNICATIONS, LLC dba
BLUE STREAM FIBER,

    *Defendants*.

---

**DEFENDANT MOOD MEDIA'S MOTION FOR RECONSIDERATION OF ORDER
(D.I. 421) AFFIRMING THE MAGISTRATE'S REPORT AND RECOMMENDATION
(D.I. 350) DENYING MOOD MEDIA'S SUMMARY-JUDGMENT MOTION
<u>RELATING TO THE STATUTE-OF-LIMITATIONS ISSUES (D.I. 304)</u>**

**TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................................1

II.     BACKGROUND ....................................................................................................2

        A.      Plaintiffs allege that, in 2014, Mood Media breached confidentiality and
                gave Stingray access to their trade secrets, resulting in a technologically
                similar product. .......................................................................................................2

        B.      Magistrate Judge Torres recommends denying summary judgment because
                he treated the 2014 evidence as only suspicion and the 2021 Trello
                discovery as a potentially new misappropriation....................................................4

III.    LEGAL STANDARD.............................................................................................5

IV.     ARGUMENT..........................................................................................................7

        A.      *Insulet II* is the authority that Magistrate Judge Torres said was absent,
                and it squarely undermines the authority on which he relied. .................................7

                1.      *Insulet II* establishes that Plaintiffs' 2014 knowledge of access and
                        technological similarity was sufficient to trigger accrual. ..........................7

                2.      *Insulet II* establishes that the alleged 2014 and 2021 discoveries
                        form a single misappropriation claim with a single accrual date...............10

        B.      Under *Insulet II*, Plaintiffs' DTSA and FUTSA claims are time-barred as a
                matter of law. .........................................................................................................11

        C.      Plaintiffs' breach-of-contract claim is also time-barred as a matter of law...........12

V.      CONCLUSION......................................................................................................12

VI.     REQUEST FOR HEARING...................................................................................12

VII.    PRE-FILING CONFERENCE CERTIFICATION .................................................12

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Canaday v. Household Retail Servs., Inc.*,
119 F. Supp. 2d 1258 (M.D. Ala. 2000) ......................................................................6

*Equal Emp. Opportunity Comm'n v. Allstate Beverage Co.*,
No. 2:19-CV-657-WKW, 2023 WL 158211 (M.D. Ala. Jan. 11, 2023) ...................6

*Fernandez v. Bankers Nat'l Life Ins. Co.*,
906 F.2d 559 (11th Cir. 1990) ...................................................................................5

*Hornady v. Outokumpu Stainless USA, LLC*,
118 F.4th 1367 (11th Cir. 2024) ................................................................................5

*Insulet Corp. v. EOFlow Co.*,
176 F.4th 1347 (Fed. Cir. 2026) ...................................................................... *passim*

*Insulet Corp. v. EOFlow Co.*,
755 F. Supp. 3d 70 (D. Mass. 2024) ...................................................................1, 5, 7

*Iturralde v. Shaw Grp., Inc.*,
No. 05-cv-330, 2012 WL 1565356 (M.D. La. May 1, 2012) .....................................6

*Knights Armament Co. v. Optical Sys. Tech., Inc.*,
654 F.3d 1179 (11th Cir. 2011) ...............................................................................10

*Lockridge v. City of Oldsmar, Fla.*,
475 F. Supp. 2d 1240 (M.D. Fla. 2007) .....................................................................6

*Peyton v. Grant*,
No. 24-cv-21649, 2025 WL 2613472 (S.D. Fla. Sept. 10, 2025) .......................6, 12

*Robinson v. Parrish*,
720 F.2d 1548 (11th Cir. 1983) ..................................................................................6

*Servicios De Almacen Fiscal Zona Franca Y Mandatos S.A. v. Ryder Int'l, Inc.*,
264 F. App'x 878 (11th Cir. 2008) ...........................................................................12

*Solutia, Inc. v. McWane, Inc.*,
726 F. Supp. 2d 1316 (N.D. Ala. 2010) ......................................................................6

**Statutes**

18 U.S.C. § 1836(d) .......................................................................................................10

Fla. Stat. § 95.11(2)(b) ...................................................................................................................12

**Other Authorities**

Fed. R. Civ. P. 54(b) ........................................................................................................................5

Local Rule 5.2(a) ............................................................................................................................15

Local Rule 7.1(a)(3) ........................................................................................................................12

Local Rule 7.1(b)(2).........................................................................................................................12

## I.   INTRODUCTION

Mood Media respectfully requests reconsideration of the Court's Order (D.I. 421) affirming the Magistrate Judge's Report and Recommendation (D.I. 350, the "SJ Order") and denying Mood Media's motion for summary judgment (D.I. 304, "SJ Mot.") on statute-of-limitations grounds. Intervening authority from the Federal Circuit (the reviewing court in any appeal from this case) undermines the reasoning on which that Order rests and implicitly overrules the authority on which the Order relied. In light of this intervening authority, the Court's summary-judgment ruling cannot stand.

Magistrate Judge Torres recommended denying summary judgment because, in his view, a factual dispute remained as to when Plaintiffs' federal and state trade-secret claims accrued. Relying in part on a district court's summary-judgment decision in *Insulet Corp. v. EOFlow Co.*, 755 F. Supp. 3d 70 (D. Mass. 2024) ("*Insulet I*"), Judge Torres viewed 2014 evidence as giving rise to mere suspicion of misappropriation, which he found was insufficient to start the three-year limitations clock of the Defend Trade Secrets Act ("DTSA") and Florida's Uniform Trade Secrets Act ("FUTSA"). SJ Order at 6–7. Further, he treated Plaintiffs' 2021 discovery of so-called "Trello" material as possible evidence of "new misappropriation" that restarted the limitations clock, rather than merely later-discovered evidence of the same alleged misconduct that allegedly occurred back in 2014. *Id*. And, while Judge Torres did not discuss the statute of limitations for Plaintiffs' contract claim, he ostensibly used the same logic to deny Mood Media's summary-judgment motion on that claim. *Id*.

Last month, the Federal Circuit issued its decision in *Insulet Corp. v. EOFlow Co.*, 176 F.4th 1347 (Fed. Cir. 2026) ("*Insulet II*"), which rejects the reasoning underlying both *Insulet I* and Judge Torres' decision. *Insulet II* holds that a trade-secret claim can be properly pled (and thus that the statute of limitations begins to run) based on "the defendants' access to the trade

1

secret and the similarity of the trade secret to the defendant's design." *Id.* at 1354. And later-discovered acts tied to the same breach in a confidential relationship remain part of a single misappropriation claim. *Id.* at 1356–1357.[1]

As Plaintiffs acknowledge, by 2014, they were in possession of facts they say show that Mood Media had access to the alleged trade secrets and that the accused products allegedly shared key similarities. Under *Insulet II*, that started the clock. 176 F.4th at 1356–1359. The later-discovered Trello material is merely additional evidence of the same alleged breach, not a new act of misappropriation. The undisputed facts thus confirm that Plaintiffs' DTSA, FUTSA, and contract claims are untimely. The Court should reconsider its prior ruling and, upon reconsideration, grant summary judgment in Mood Media's favor.

## II.     BACKGROUND

### A.     Plaintiffs allege that, in 2014, Mood Media breached confidentiality and gave Stingray access to their trade secrets, resulting in a technologically similar product.

From 2012 to 2014, Plaintiffs contracted with Mood Media and its predecessor, subject to a non-disclosure agreement ("NDA"), to provide media-distribution servers for cable operators in Latin America. *See* Mood Media's Statement of Undisputed Material Facts ("SUMF") ¶ 1–4, D.I. 305; *id.* at Ex. 1, 119:22–120:10. Separately, in January 2014, Mood Media entered into an unrelated agreement with co-defendant Stingray to transfer certain customer contracts, but not Plaintiffs' contract or servers. *Id.* at Ex. 1, 152:21–153:12, 218:3–10, 219:3–6. Plaintiffs allege that, through this deal, Mood Media breached the NDA with Plaintiffs and misappropriated their trade secrets by giving Stingray access to servers containing those trade secrets. 2d Am. Compl.

---

[1] On June 3, 2026, co-defendant Stingray filed a Notice of Supplemental Authority, citing *Insulet II* in support of its pending summary-judgment motion. D.I. 422. On June 8, 2026, Plaintiffs filed a response. D.I. 423. Stingray has also submitted a supplemental brief discussing *Insulet II*.

¶¶ 56, 84, D.I. 82.[2] Plaintiffs further allege that Mood Media's former employees—who, "by virtue of their former employment," would have had access to the servers—joined Stingray at that time. *Id.* ¶ 63.

It is undisputed that those allegations date back to 2014. Once Plaintiffs learned of Mood Media's transaction with Stingray, Plaintiff Hernandez emailed the Department of Homeland Security in April 2014, claiming that the deal had given Stingray access to Plaintiffs' trade secrets:

> We have notified STINGRAY MEDIA, a company from Canada, that they are illegally using our software and technology located in Encompass / TIA in Argentina, and have access to our trade secrets, thru [sic] their staff in Miami, FL.
>
> STINGRAY however has access to our software in a server hostage [sic] in a location in Argentina at, this was taken over illegally after a transaction made by Mood Media. This server is required so Mood Media and STINGRAY can complete a $16,000,000 dollars deal[.]

2d Am. Compl. ¶ 65, Ex. 17; SUMF ¶ 9. Given this email to the DHS back in April 2014, Judge Torres previously concluded that "[t]here is no dispute that Plaintiffs 'discovered' the alleged misappropriation as of that date." D.I. 202 at 14.

It is similarly undisputed that, in April 2014, Hernandez made the same accusation directly to Mood Media, asserting that "the NDA in place with Mood Media has been breached" and that Plaintiff "EGLA's Intellectual Property has been exposed." 2d Am. Compl., Ex. 13 at 4; SUMF ¶¶ 10–11. Hernandez insisted that "Mood Media is in breach of our confidentiality agreement," explaining that "Mood Media executives" who "hold confidential and proprietary information" were "now employed by Stingray." 2d Am. Comp., Ex. 11 at 3; SUMF ¶ 14. And,

---

[2] Citations are to the Second Amended Complaint—the last complaint filed before discovery kicked off in this case—because it reflects Plaintiffs' account of what they already knew, rather than any "information secured through discovery." *Insulet II*, 176 F.4th at 1365.

as later deposition testimony confirms, EGLA's CEO believed "Stingray had gained access to EGLA's Trade Secrets." Stingray SUMF ¶¶ 57–58, 66–67, D.I. 397; Alcides Hernandez Tr. at 75:4–13, D.I. 397-02; *see also id*. at 69:9–70:13. That concern was reinforced by Plaintiffs' contemporaneous belief that Stingray's product employed "very similar technology" to Plaintiffs' trade secrets. Stingray SUMF ¶ 18; Edwin Hernandez Day 1 Tr. at 374:21–24, D.I. 397-03; Edwin Hernandez Exhibit 34 at 1, D.I. 397-07. As Plaintiffs acknowledged in their Statement of Material Facts responding to Stingray's summary-judgment motion, "Stingray's music service appeared similar to the music service EGLA CORP provided in the platform to Mood Media/DMX." D.I. 408 ¶ 18 (citing Edwin Hernandez Day 1 Tr. at 374:14–375:10). Yet Plaintiffs did not then sue Mood Media for trade-secret misappropriation or breach of the NDA.

In April 2021, Plaintiffs discovered postings on Trello.com dated between 2015 and 2019 that Plaintiffs say reflected Stingray's ongoing development work. 2d Am. Compl. ¶¶ 91, 93. Plaintiffs contend that those postings confirm Stingray had access to source code stored on the servers and thus proved misappropriation. *Id*. ¶¶95–96. But even then, Plaintiffs did not sue immediately. They waited until April 2, 2024, to bring suit. Mood Media moved for summary judgment, arguing that Plaintiffs' FUTSA and DTSA claims (Counts I and II) were barred by the applicable three-year statute of limitations. SJ Mot. at 9–10. Mood Media separately argued that Plaintiffs' contract claim (Count VI) was barred by Florida's five-year statute of limitations, which Mood Media argued began to run at the time of the alleged breach in 2014. *See id.* at 10.

**B.**     **Magistrate Judge Torres recommends denying summary judgment because he treated the 2014 evidence as only suspicion and the 2021 Trello discovery as a potentially new misappropriation.**

Magistrate Judge Torres recommended denying the motion. SJ Order at 6–9. He acknowledged that "Plaintiffs' initial suspicion of potential trade secret misappropriation" in 2014 placed them "definitively outside the bounds of the statutes of limitation." *Id.* at 6. That

4

suspicion, however, was insufficient in Judge Torres' mind to start the statute-of-limitations clock. *Id.* at 8. Instead, he concluded that, "[a]bsent evidence or legal support to show that suspicions of misappropriation are conclusive under the DTSA (or its Florida corollary)," fact issues remained as to whether the statute of limitations had accrued. *Id.* at 6, 8. To reach this conclusion, Judge Torres relied in part on *Insulet I*, which likewise denied summary judgment by treating the plaintiff's emails identifying potential misappropriation as demonstrating no more than a "mere cause for concern." *Id*. at 8 (citing *Insulet I*, 755 F. Supp. 3d at 88). He further held that a "genuine dispute of facts" remained as to whether Plaintiffs reasonably should have discovered the alleged misappropriation before 2021. *Id*. at 6, 8. In his view, Mood Media offered "no authority" requiring the Court to disregard Plaintiffs' 2021 discovery of the Trello material or to ignore the asserted "break in the chain" between Plaintiffs' 2014 suspicions and the later discovery. *Id*. at 7–8. Judge Torres did not address Mood Media's statute-of-limitations arguments as to the contract claims. *Id*. at 7–9 (discussing only the misappropriation claims).

Mood Media objected to the Report and Recommendation, D.I. 354, and, on March 30, 2026, the Court summarily affirmed, D.I. 421. Shortly thereafter, the Federal Circuit issued *Insulet II*, which undermines the reasoning set forth in the *Insulet I* decision on which Judge Torres relied.

### III.    LEGAL STANDARD

A district court "may . . . revise" its interlocutory orders "at any time before the entry of a judgment," Fed. R. Civ. P. 54(b), and has plenary authority to "reconsider, revise, alter or amend" prior rulings to reach the correct result, *Hornady v. Outokumpu Stainless USA, LLC*, 118 F.4th 1367, 1380 (11th Cir. 2024) (cleaned up). Although reconsideration is often granted based on an intervening change in controlling law, the availability of new evidence or an expanded factual record, or the need to correct a clear error or prevent manifest injustice, *Fernandez v.*

*Bankers Nat'l Life Ins. Co.*, 906 F.2d 559, 569 (11th Cir. 1990) (cleaned up), those categories are not exhaustive. Rather, because the denial of a motion for summary judgment is an interlocutory order, a court "may reconsider or reverse its decision for any reason it deems sufficient." *Canaday v. Household Retail Servs., Inc.*, 119 F. Supp. 2d 1258, 1260 (M.D. Ala. 2000), *aff'd sub nom. Perry v. Household Retail*, 268 F.3d 1067 (11th Cir. 2001).

Reconsideration is appropriate, for example, when "additional legal authority" alters the governing analysis, even absent a new "'controlling' case from the Supreme Court or the Eleventh Circuit." *Solutia, Inc. v. McWane, Inc.*, 726 F. Supp. 2d 1316, 1329 (N.D. Ala. 2010); *accord Robinson v. Parrish*, 720 F.2d 1548, 1550 (11th Cir. 1983) (a court need not adhere to an earlier decision once "[n]ew developments or further research" show it to be wrong). Indeed, courts regularly grant reconsideration in light of intervening authority that undermines the basis for a prior ruling. *See, e.g.*, *Equal Emp. Opportunity Comm'n v. Allstate Beverage Co.*, No. 2:19-CV-657-WKW, 2023 WL 158211 (M.D. Ala. Jan. 11, 2023) (granting motion for reconsideration based on subsequent authority notwithstanding that the defendant had "not pointed to a binding decision from this circuit"); *Iturralde v. Shaw Grp., Inc.*, No. 05-cv-330, 2012 WL 1565356 (M.D. La. May 1, 2012) (granting reconsideration of a magistrate judge's decision, "which may be entitled to less deference," based on a "judicial development"); *Lockridge v. City of Oldsmar, Fla.*, 475 F. Supp. 2d 1240, 1244–45 (M.D. Fla. 2007) (granting reconsideration "based on an intervening change in controlling law"); *Canaday*, 119 F. Supp. 2d at 1260. Reconsideration is also appropriate where, as here, a decision is "silent" on an issue that is squarely raised by the movant. *See, e.g.*, *Peyton v. Grant*, No. 24-cv-21649, 2025 WL 2613472, *7 (S.D. Fla. Sept. 10, 2025) (granting reconsideration where "the Court did not address in its R&R" plaintiff's requested relief).

## IV.   ARGUMENT

**A.**   ***Insulet II* is the authority that Magistrate Judge Torres said was absent, and it squarely undermines the authority on which he relied.**

Magistrate Judge Torres denied summary judgment because he found a fact issue as to whether Plaintiffs' DTSA and FUTSA claims reasonably should have been discovered before 2021. He concluded that Mood Media had offered no "legal support" showing that Plaintiffs' 2014 "suspicions of misappropriation" were sufficiently "conclusive" to start the clock. SJ Order at 7–8. At the same time, Judge Torres found that Plaintiffs' 2021 discovery of the Trello material could reflect "new trade secret misappropriation," restarting the limitations clock. *Id.* at 7. Thus, relying in part on *Insulet I*, he ruled the issue had to go to a jury. *Id.* at 8 (citing *Insulet I*, 755 F. Supp. 3d at 88).

Judge Torres' view of the law was incorrect, and *Insulet II* confirms why. Indeed, the Federal Circuit supplied the very legal support Judge Torres found missing and, in so doing, implicitly overruled the *Insulet I* case on which he relied. Specifically, *Insulet II* establishes that: (1) Plaintiffs' 2014 knowledge of alleged access and technological similarity was enough on its own to start the statute of limitations; and (2) the alleged 2021 discovery of the Trello material belongs to the same 2014 claim.

**1.**   ***Insulet II* establishes that Plaintiffs' 2014 knowledge of access and technological similarity was sufficient to trigger accrual.**

*Insulet II* undermines the notion that Plaintiffs' "suspicions in 2014" of trade-secret misappropriation were insufficient to start the limitations period. SJ Order at 7–8. The Federal Circuit emphasized that the relevant question is "*not* whether [a plaintiff] had sufficient evidence to prove misappropriation of its trade secrets" and that "detailed knowledge of all of the relevant facts underlying the misappropriation is *not* required." *Insulet II*, 176 F.4th at 1355–1356 (emphases added). Instead, the question is whether the plaintiff knew (or should have known)

enough to allege "access to the trade secret and the similarity of the trade secret to the defendant's design." *Id.* at 1354. Once the plaintiff is aware (or should be aware) of access and similarity, it is able to state a claim, and the statute of limitations begins to run.

That rule defeats Plaintiffs' timeliness theory. By April 2014, Plaintiffs contend they knew both access and similarity.

a.       As to access, Plaintiffs allege that Stingray accessed the trade secrets in 2014 through Mood Media's earlier possession and control of the servers and source code. For example, in April 2014, Hernandez told the DHS that "STINGRAY MEDIA . . . ha[s] access to our trade secrets" and that "this was taken over illegally after a transaction made by Mood Media." 2d Am. Compl. ¶ 65, Ex. 17; SUMF ¶ 9. Around the same time, Plaintiffs made the same accusation directly to Mood Media, alleging that the servers contained their trade secrets and that Mood Media facilitated Stingray's access. 2d Am. Compl. ¶¶ 56, 84. Judge Torres understood those allegations the same way. *See* SJ Order at 2–3 ("Dr. Hernandez . . . express[ed] concerns that Stingray now gained . . . access to his servers," that "the NDA in place with Mood Media had been breached," and that "Plaintiffs' trade secrets had been misappropriated"). And post-motion deposition testimony confirms the point: EGLA's CEO testified that, around "April 12th of 2014," he believed "Stingray had gained access to EGLA's Trade Secrets." Stingray SUMF ¶¶ 57–58, 66–67; Alcides Hernandez Tr. at 75:4–13; *see also id.* at 69:9–70:13.

Plaintiffs reaffirmed the same theory in opposing summary judgment, arguing that "Mood [Media], having dominion and control over the servers, facilitated accessing Dr. Hernandez's source code by breaking into the server." Opp. to SJ Mot. at 9, D.I. 324. They likewise alleged that former Mood Media employees with knowledge of Plaintiffs' trade secrets had joined Stingray in early 2014, reinforcing Plaintiffs' position that Stingray had access at that time, and

8

that any such access necessarily flowed through Mood Media's earlier possession and control. *See* 2d Am. Compl. ¶ 13; Opp. to SJ Mot. at 9; Opp. to Stingray's SJ Mot. at 9–10, D.I. 407; *see Insulet II*, 176 F.4th at 1350, 1359 ("[I]nternal Insulet emails show[ing] that Insulet knew" former employee with "detailed technical information" now worked on accused product for defendant "satisfies the access prong as a matter of law"). Plaintiffs' own allegations thus establish knowledge of access back in 2014.

      b.     As to similarity, Plaintiffs' evidence shows that, in 2014, they recognized the alleged similarity between their trade secrets and Stingray's technology. By April 8, 2014, Plaintiffs believed Stingray's servers employed a "very similar technology." Stingray SUMF ¶ 18; Edwin Hernandez Day 1 Tr. at 374:21–24; Edwin Hernandez Exhibit 34 at 1. And, in opposing Stingray's summary-judgment motion, Plaintiffs confirmed that they were aware of the alleged technological similarity (and access) in 2014:

> *The timing and circumstances of Stingray's acquisition of Mood Media's customer contracts in January 2014, followed by Stingray providing services to these customers by April 2014 (that Plaintiffs claim were similar to their proprietary technology)*, create a genuine issue of material fact regarding whether Stingray had access to and used Plaintiffs' trade secrets.

D.I. 407 at 7 (emphasis added). Under *Insulet II*, that alleged knowledge was enough to start the running of the statute of limitations. Plaintiffs did not need conclusive proof that Stingray had used every trade secret or technical confirmation of each downstream use. *See Insulet II*, 176 F.4th at 1355–1356 ("[D]etailed and specific knowledge of the misappropriation" or "of all of the relevant facts underlying the misappropriation is not required"). Nor did they need proof that Stingray's technology was so similar to the trade secrets as to conclusively establish misappropriation. *Id*. (standard for evaluating similarity is "sufficient knowledge," not "sufficient evidence").

9

Once Plaintiffs believed in 2014 that Mood Media had given Stingray access to Plaintiffs' trade secrets and that Stingray's technology was similar to those trade secrets, Plaintiffs had enough to state a claim. Under *Insulet II*, those facts, and Plaintiffs' "admitted conclusions," "amount to more than 'mere suspicion of misappropriation.'" *See id.* at 1360; *accord Knights Armament Co. v. Optical Sys. Tech., Inc.*, 654 F.3d 1179, 1186 (11th Cir. 2011) (clock ran where executives admittedly "knew or suspected [the] alleged misappropriation"). That was enough to start the statute-of-limitations clock.

**2.      *Insulet II* establishes that the alleged 2014 and 2021 discoveries form a single misappropriation claim with a single accrual date.**

*Insulet II* also undermines the notion that Plaintiffs' 2021 discovery of Trello material reflected "new trade secret misappropriation" that triggers a new DTSA limitations analysis. SJ Order at 7. Collecting pre-DTSA authority from other circuits, the Federal Circuit held that a DTSA claim accrues when the plaintiff first discovers, or reasonably should have discovered, the "breach of the relationship between the parties at the time the secret is disclosed." 176 F.4th at 1357 (quoting *Kehoe Component Sales Inc. v. Best Lighting Prods., Inc.*, 796 F.3d 576, 583 (6th Cir. 2015)). Later-discovered acts tied to that same breach remain part of a single claim and are therefore "subject to the same statute of limitations analysis." *Id.* at 1358.

That rule follows from the DTSA itself, which provides that "a continuing misappropriation constitutes a *single* claim of misappropriation." 18 U.S.C. § 1836(d) (emphasis added); *Insulet II*, 176 F.4th at 1357. Indeed, the "protected interest" in a trade-secret case is the original confidential relationship itself. *Id.* at 1356 (citing *Monolith Portland Midwest Co. v. Kaiser Aluminum & Chem. Corp.*, 407 F.2d 288, 293 (9th Cir. 1969)). Once a plaintiff detects "a fracture in a once confidential relationship," it must "take prompt and assertive corrective action with respect to all of plaintiffs' interests." *Id*. at 1357 (cleaned up).

10

Applying that rule here, the 2021 Trello material did not create a new claim; it was additional evidence tied to the same alleged misappropriation Plaintiffs admittedly knew about in 2014. By Plaintiffs' own account, the parties' confidential relationship had already fractured by April 2014, when Hernandez told Mood Media that "the NDA in place with MOOD MEDIA has been breached" and that EGLA's trade secrets had been misappropriated. 2d Am. Compl., Ex. 13 at 4; SUMF ¶¶ 10–11. So strong were Hernandez's concerns that he conveyed them to the DHS. 2d Am. Compl. ¶ 65, Ex. 17; SUMF ¶ 9. And, as Judge Torres recognized, Hernandez's accusations gave rise to Plaintiffs' "initial suspicion of potential trade secret misappropriation." SJ Order at 3, 6–8. That is when the parties' confidential relationship was allegedly breached.

Importantly, Plaintiffs' own allegations tie Trello to the same asserted breach. The discovery of the Trello material was part of Hernandez's "investigation into the possible unauthorized access to his proprietary technology." 2d Am. Compl. ¶ 91. Thus, under *Insulet II*, the later-discovered Trello activity remained part of the same misappropriation claim for statute-of-limitations purposes. *See* 176 F.4th at 1363 (the statute begins to run for "all trade secrets disclosed during substantially the same time to that defendant by the same person for the same purpose"). In short, the statute of limitations began to run in 2014, not 2021.

## B. Under *Insulet II*, Plaintiffs' DTSA and FUTSA claims are time-barred as a matter of law.

Plaintiffs' DTSA and FUTSA claims are thus untimely. Plaintiffs knew enough by 2014 to plead access and similarity, which is also when the parties' confidential relationship was allegedly breached. The Trello material did not create a new claim in 2021; it merely supplied later-discovered evidence of that same alleged breach. Thus, as in *Insulet II*, "the undisputed evidence shows that" Plaintiffs "knew or should have known before the critical date the facts it

11

needed to sufficiently plead a trade secret misappropriation claim" against Mood Media. 176 F.4th at 1354. Plaintiffs' DTSA and FUTSA claims (Counts I and II) are time-barred.

**C.      Plaintiffs' breach-of-contract claim is also time-barred as a matter of law.**

Further, to the extent the Court implicitly concluded that Plaintiffs' state-law contract claim (Count VI) was timely for the same reasons as the DTSA and FUTSA claims, that, too, was error for the same reasons as described above. Even beyond that, reconsideration is warranted because, unlike trade-secret misappropriation, "Florida does not apply the discovery rule"; the statute of limitations runs from breach. *See Servicios De Almacen Fiscal Zona Franca Y Mandatos S.A. v. Ryder Int'l, Inc.*, 264 F. App'x 878, 880 (11th Cir. 2008); Fla. Stat. § 95.11(2)(b). Thus, the contract claim accrued when the alleged breach occurred in 2014, and the five-year limitations period expired long before suit was filed. Mood Media raised that point in its summary-judgment motion, SJ Mot. at 10, but Judge Torres did not address it at all. This omission is clear error warranting reconsideration. *See Peyton*, 2025 WL 2613472, at *7.

## V.      CONCLUSION

Mood Media respectfully requests that the Court grant this motion for reconsideration and, upon reconsideration, enter summary judgment in Mood Media's favor on Plaintiffs' claims as barred by the statute of limitations.

## VI.      REQUEST FOR HEARING

Per Local Rule 7.1(b)(2), Mood Media requests a hearing on the issues raised in this motion. This hearing would assist the Court in understanding how *Insulet II* applies to the undisputed facts in this case. Mood Media estimates that the time required for argument would be no more than sixty (60) minutes per side.

## VII.      PRE-FILING CONFERENCE CERTIFICATION

Per Local Rule 7.1(a)(3), counsel for Mood Media certifies they have conferred with all

12

parties who may be affected by the relief sought in this motion in a good-faith effort to resolve the issues raised in this motion. Specifically, on June 18, 2026, Mood Media's counsel emailed counsel for all other parties regarding its intent to file this motion. That same day, Defendant AT&T Enterprises, LLC's counsel, Matthew Yungwirth, responded via email to say that they did not plan to participate in any meet and confer as "this issue does not involve [them]." On June 19, 2026, Mood Media's counsel, Jonathan Tuminaro, had a video conference with Plaintiffs' counsel, Rob Drolet, and counsel for all other Defendants ("Stingray"), Mike McBride, in a good-faith effort to resolve the issues raised in this motion, but was unable to do so. Plaintiffs indicated that they would oppose Mood Media's motion. Stingray indicated that they would not take a position on Mood Media's motion.

13

Dated:  June 23, 2026

Respectfully submitted,

/s/  David C. Banker
Michael Specht
Jonathan Tuminaro
Uma Everett
Lauren Watt
Tyler Dutton
Paige Cloud
Madisyn Richards
STERNE, KESSLER, GOLDSTEIN & FOX PLLC
1101 K St. NW, 10th Floor
Washington, D.C. 20005
Telephone: (202) 371-2600
mspecht@sternekessler.com
jtuminar@sternekessler.com
ueverett@sternekessler.com
lwatt@sternekessler.com
tdutton@sternekessler.com
pcloud@sternekessler.com
mrichards@sternekessler.com

David C. Banker
Florida Bar No. 35977
BUSH ROSS, P.A.
1801 North Highland Avenue
Tampa, Florida 33602-2656
Telephone: (813) 224-9255
Fax: (813) 223-9620
dbanker@bushross.com

*Counsel for Defendant Mood Media LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on June 23, 2026, a true and correct copy of the foregoing document was filed electronically in compliance with Local Rule 5.2(a). As such, this document was served on all counsel of record pursuant to Local Rule 5.2(a) and the Federal Rules of Civil Procedure.

/s/   *David C. Banker*

David C. Banker

15